

FILED IN CHAMBERS
U.S.D.C. Atlanta
JUN 2 8 2016
JAMES N. HATTEN, Clerk
By: \_\_\_\_\_ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES G. MALONEY | Criminal No.<br><br>**1:16-CR-0237** |

## INDICTMENT

The Grand Jury charges that:

### COUNT 1

### CONSPIRACY

1. From in or about February 2007 through in or about November 2013, in the Northern District of Georgia and elsewhere, the defendant,

JAMES G. MALONEY,

knowingly and willfully combined, conspired, confederated, agreed, and had a tacit understanding with James J. Acree ("Acree") and James D. Fraley, III ("Fraley") to commit mail fraud and wire fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, defendant MALONEY and his co-conspirators, for the purpose of executing such scheme and artifice, knowingly caused certain matters and things to be delivered by mail and by private and commercial interstate carrier, according to the directions thereon, in violation of the mail fraud statute, Title 18,

United States Code, Section 1341, and knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds, in violation of the wire fraud statute, Title 18, United States Code, Section 1343.

## Background

2. At all times relevant to this Indictment, defendant MALONEY and his co-conspirators were employed by the Georgia Institute of Technology ("Georgia Tech") and were members of the research faculty at the Georgia Tech Research Institute ("GTRI") in Atlanta, Georgia.

3. Defendant MALONEY and his co-conspirators are experts in electromagnetic analysis and measurements and were assigned to GTRI's Advanced Concepts Laboratory, where they worked on projects funded by the United States Department of Defense, various intelligence agencies, and private industry.

4. One of the projects defendant MALONEY and Fraley worked on at GTRI, which was funded by the United States, was known as contract D6308.

5. Defendant MALONEY was the Project Director on D6308 and was responsible for all charges billed to that contract during the time he worked at GTRI.

## Object of the Conspiracy

6. The object of the conspiracy was for defendant MALONEY and his co-conspirators to unjustly and unlawfully enrich themselves at the expense of the United States and Georgia Tech.

7. Defendant MALONEY and his co-conspirators sought to accomplish the object of the conspiracy in two ways: by using a Georgia Tech corporate purchasing card (also known as a "PCard") to pay for personal expenses; and by engaging in fraudulent consulting activity.

## PCard Fraud

8. As part of his duties and responsibilities at GTRI, Fraley was allowed to use a Georgia Tech PCard to purchase materials and supplies for official Georgia Tech business purposes.

9. Fraley's Georgia Tech PCard was issued by Bank of America. Approximately every 30 days, Bank of America mailed an account statement to Fraley, listing all new charges on the account. Fraley was required to provide documentation to Georgia Tech to justify each charge on the account.

10. Defendant MALONEY and his co-conspirators were not allowed to use a Georgia Tech PCard to pay for personal expenses.

11. Defendant MALONEY and his co-conspirators charged more than $250,000 worth of personal expenses to Fraley's Georgia Tech PCard, including

two four-wheelers and a trailer, two Sony 52-inch flat-screen televisions, Apple computers, iPads, OtterBox protective cases, iPods, Kindle E-readers (some with lighted leather covers), Leica and Nikon digital cameras, video cameras, a mini micro pinhole video camcorder pen, a night vision monocular, two pairs of binoculars, Bose headphones, a 3D printer, sports watches with heart-rate monitors, sunglasses, materials used to perform private consulting contracts, computer monitors and solar panels for a private hunting club, a personal video network for home use, and an uninterruptible power supply for a tennis ball machine. Defendant MALONEY and his co-conspirators purchased some of these items online through Amazon.com and others from the Georgia Tech bookstore. These purchases generated interstate wire communications, and the items purchased online were delivered by mail and by private and commercial interstate carrier.

12. At all times relevant to the Indictment, defendant MALONEY and Fraley owned a Georgia corporation called J's Services, Inc.

13. Defendant MALONEY and Fraley used Fraley's Georgia Tech PCard to pay for remodeling and maintenance expenses related to six rental properties owned by J's Services.

14. Defendant MALONEY caused payments for the benefit of J's Services to be charged to the United States on contract D6308, even though defendant

MALONEY knew and had reason to know that such payments were not related to D6308.

15. Fraley also used his Georgia Tech PCard to make PayPal payments to friends and relatives who "kicked back" some of the money to him.

16. To make their personal PCard charges look like legitimate Georgia Tech business expenses, defendant MALONEY and his co-conspirators provided and caused others to provide false information and fraudulent documents to Georgia Tech and the United States.

17. In or about June 2013 — after defendant MALONEY and his co-conspirators learned that they were being investigated by Georgia Tech's Internal Auditing Department — defendant MALONEY attempted to delete from Fraley's cell phone incriminating text messages concerning the PCard fraud.

18. In or about July 2013, defendant MALONEY and his co-conspirators met to discuss their PCard fraud, get their stories straight, and plan a cover-up. Fraley recorded these conversations on his phone and later turned the recordings over to the FBI.

19. Defendant MALONEY then gathered up many of the items he had acquired through the PCard fraud, took them to his office at GTRI, and left them there to make it appear that they had been purchased for official Georgia Tech business purposes rather than for his personal use.

## Fraudulent Consulting Activity

20. In or about February 2007, defendant MALONEY and Acree were reprimanded by GTRI for engaging in outside consulting activity that violated Georgia Tech's conflict-of-interest policy.

21. In response, on or about February 22, 2007, defendant MALONEY and Acree sent a letter to their supervisor at GTRI, acknowledging that they had used facilities and equipment owned by Georgia Tech for their own personal gain and benefit.

22. In that letter, defendant MALONEY and Acree also said:

> We deeply regret our failure to properly report this consulting activity in a timely fashion. . . . All parties understand that this is unacceptable . . . . No further consulting arrangements are in-play or under consideration. . . . This activity was initiated without the consent or prior knowledge of GTRI . . . , and we understand that this was contrary to policy. We truly regret any potential harm this may cause to the image of GTRI . . . and won't let this happen again in the future.

23. Nevertheless, defendant MALONEY and Acree continued to engage in outside consulting activity that harmed Georgia Tech, and they were soon joined by Fraley.

24. Beginning in or about December 2007, and continuing through at least in or about March 2013, defendant MALONEY and his co-conspirators

moonlighted as consultants for Picatinny Arsenal, SRA International, and the U.S. Air Force, while they were employed by Georgia Tech.

25. Defendant MALONEY and his co-conspirators were paid a combined total of approximately $500,000 for the consulting work they did for Picatinny Arsenal, SRA International, and the U.S. Air Force.

26. Defendant MALONEY and his co-conspirators obtained this outside consulting work from Picatinny Arsenal, SRA International, and the U.S. Air Force by falsely leading the customers to believe that the work would be done by GTRI. Defendant MALONEY and his co-conspirators furthered this false impression by using their official GTRI telephone numbers and GTRI email addresses in their communications with the customers. In addition, defendant MALONEY and his co-conspirators met with the customers at GTRI's headquarters on the Georgia Tech campus and gave the customers tours of GTRI's labs and other facilities. At no time did defendant MALONEY or his co-conspirators reveal to the customers that GTRI was not involved in, or even aware of, the work they were doing.

27. Defendant MALONEY and his co-conspirators used Acree's former employer, Tec-Masters, as a billing pass-through on these consulting jobs. Tec-Masters is a defense contractor located in Huntsville, Alabama. Tec-Masters performed no labor on any of these consulting jobs but facilitated the transfer of money from the customers to defendant MALONEY and his co-conspirators.

28. Beginning in or about December 2010, and continuing through in or about July 2013, defendant MALONEY and Fraley also moonlighted as consultants for Spectra Research, Inc., while they were employed by Georgia Tech.

29. Defendant MALONEY and Fraley were paid a combined total of approximately $196,000 for the consulting work they did for Spectra.

30. Defendant MALONEY and Fraley caused and directed Georgia Tech employees and students who were under their supervision at GTRI to help perform this consulting work for Spectra.

31. Defendant MALONEY and Fraley also caused and directed those Georgia Tech employees and students to bill their time for the Spectra work to the United States on contract D6308, even though defendant MALONEY and Fraley knew and had reason to know that the Spectra work was not related to D6308.

32. In competing for, performing, and billing for the outside consulting work described in this Indictment, defendant MALONEY and his co-conspirators:

    a. violated Georgia Tech's conflict-of-interest policy and code of business conduct;

    b. diverted customers and revenue away from Georgia Tech for their own personal gain and benefit;

    c. used Georgia Tech facilities and equipment for their own personal gain and benefit;

    d. used and caused others to use interstate wire communications, including email and electronic funds transfers; and

    e. caused checks and documents to be delivered by U.S. mail and by FedEx.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2 THROUGH 12
## MAIL FRAUD

33. The Grand Jury re-alleges and the factual allegations contained in paragraphs 2 through 5 and 8 through 32 of this Indictment and all subparts thereof, as if fully set forth herein.

34. From in or about February 2007 through in or about November 2013, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant,

JAMES G. MALONEY,

aided and abetted by James J. Acree ("Acree") and James D. Fraley, III ("Fraley"), and by other persons known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

35. The object of the scheme was for defendant MALONEY to unjustly and unlawfully enrich himself, at the expense of the United States and Georgia Tech, by engaging in PCard fraud and by engaging in fraudulent consulting activity.

36. On or about the dates set forth below, for the purpose of executing and attempting to execute the above-described scheme and artifice, defendant MALONEY, aided and abetted by Acree and Fraley, and by other persons known and unknown to the Grand Jury, knowingly caused the following matters and things to be delivered by mail and by private and commercial interstate carrier, according to the directions thereon:

| Count | Date | Matter or Thing | Delivered to |
|---|---|---|---|
| 2 | 01/26/12 | Check from Tec-Masters for $7,880, payable to James Maloney | James Maloney Marietta, GA by U.S. mail |
| 3 | 03/28/13 | Check from Tec-Masters for $21,000, payable to James Maloney | James Acree Smyrna, GA by FedEx |
| 4 | 12/28/12 | Check from Spectra Research for $11,000, payable to J's Services | J's Services Acworth, GA by U.S. mail |
| 5 | 03/22/13 | Check from Spectra Research for $15,000, payable to J's Services | J's Services Acworth, GA by U.S. mail |
| 6 | 06/28/13 | Check from Spectra Research for $20,000, payable to J's Services | J's Services in Canton, GA by U.S. mail |

| Count | Date | Matter or Thing | Delivered to |
|---|---|---|---|
| 7 | 07/27/11 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |
| 8 | 10/27/11 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |
| 9 | 01/27/12 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |
| 10 | 06/27/12 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |
| 11 | 07/27/12 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |
| 12 | 10/27/12 | PCard account statement with charges incurred for the personal use and benefit of James G. Maloney | James D. Fraley, III in Atlanta, GA by U.S. mail |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 13 THROUGH 15
## WIRE FRAUD

37. The Grand Jury re-alleges and incorporates herein by reference the factual allegations contained in paragraphs 2 through 5 and 20 through 32 of this Indictment and all subparts thereof, as if fully set forth herein.

38. From in or about February 2007 through in or about November 2013, in the Northern District of Georgia and elsewhere, the defendant,

JAMES G. MALONEY,

aided and abetted by James J. Acree ("Acree") and James D. Fraley, III ("Fraley"), and by other persons known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

39. The object of the scheme was for defendant MALONEY to unjustly and unlawfully enrich himself, at the expense of the United States and Georgia Tech, by engaging in fraudulent consulting activity.

40. On or about the dates set forth below, for the purpose of executing the above-described scheme and artifice, defendant MALONEY, aided and abetted by Acree and Fraley, and by other persons known and unknown to the Grand Jury, knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description of interstate wire communication |
|-------|------|----------------------------------------------|
| 13 | 03/08/12 | Electronic funds transfer in the amount of $25,000 from the 519th CBSS/FM DoDAAC 1QLPAY in Utah to the account of Tec-Masters at First Commercial Bank in Georgia |
| 14 | 12/11/12 | Email from J's Services in Georgia to Spectra Research in Ohio, attaching Invoice #18 for services rendered in the amount of $11,000 |
| 15 | 03/15/13 | Email from J's Services in Georgia to Spectra Research in Ohio, attaching Invoice #21 for services rendered in the amount of $5,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE PROVISION

41. Upon conviction of one or more of the offenses alleged in Counts 1 through 15 of this Indictment, defendant MALONEY shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of said violation(s), including, but not limited to, the following:

   a. Money Judgment: A sum of money in United States currency representing the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable.

   b. Real Property known as 126 Artie Lane, Rossville, GA 30741, Parcel Tax Identification Number 0125-051, together with all appurtenances thereto, improvements thereon, furnishings and fixtures.

   c. Real Property known as 2271 Johnson Road, Chickamauga, GA 30707, Parcel Tax Identification Number 0-163-017A, together with all appurtenances thereto, improvements thereon, furnishings and fixtures;

   d. Real Property known as 640 Mission Ridge Road, Rossville, GA 30741, together with all appurtenances thereto, improvements thereon, furnishings and fixtures;

   e. Real Property located in Walker County, Georgia, together with all appurtenances thereto, improvements thereon, furnishings and fixtures, more particularly described as follows: All that tract or parcel of land lying and being in Original Land Lot Nos. 136 and 137, in the 9th District and 4th Section of Walker County, Georgia, being known and designated as Lot No. 7, WARREN TERRACE SUBDIVISION, as shown on plat of said subdivision of record in Plat Book 5, Page 75, in the Office of the Clerk of the Superior Court of Walker County,

Georgia. Being the same property described in Deed Book 1735, Page 480, in the Office of the Clerk of the Superior Court of Walker County, Georgia;

f. Real Property located in Walker County, Georgia, together with all appurtenances thereto, improvements thereon, furnishings and fixtures, more particularly described as follows:

TRACT I: ALL THAT TRACT OR PARCEL of land lying and being in Original Land Lot No. 246, in the 9th District and 4th Section of Walker County, Georgia, and being more particularly described as follows: BEGINNING at a point on the Old Road, which beginning point is 100 feet measured along the Old Road from the Northeast corner of the Mamie Buckland Tract; thence with and along the Old Road in a Northeasterly direction a distance of 100 feet; thence in a Southerly direction a distance of 105 feet to a point; thence in a Westerly direction a distance of 100 feet to the Southeast corner of other property deeded to Romaince Ellison and wife, Carrie Dozier Ellison, and Tony Higgin, as described in Deed Book 319, Page 46, in the Office of the Clerk of the Superior Court of Walker County, Georgia; thence with and along the East line of the aforementioned Ellison and Higgin property, in a Northerly direction, a distance of 105 feet to the POINT OF BEGINNING. And being a lot of land 100 feet wide by 105 feet deep fronting on the Old Road.

TRACT II: ALL THAT TRACT OR PARCEL of land lying and being in Original Land Lot No. 246, in the 9th District and 4th Section of Walker County, Georgia, and being more particularly described as follows: BEGINNING at a point on the Old Road, which beginning point is the Northeast corner of the Mamie Buckland tract; thence continuing with and along the Old Road as it meanders in a Northeasterly direction a distance of 100 feet to a point; thence in a Southerly direction and running parallel with the East line of the Buckland tract a distance of 105 feet to a point; thence in a Westerly direction a distance of 100 feet to the East line of the Buckland tract; thence with and along the West line of the Buckland tract in a Northerly direction a distance of 105 feet to the POINT OF

BEGINNING. And being a lot of land 100 feet wide by 105 feet deep fronting on the Old Road.

Tracts I and II being further described as 0.48 acres in a Survey for David Clark prepared by Max Randal Compton (GRLS No. 2584) dated November 5, 2009 (Job No 9 – 140) and, according to said survey, being more particularly described as follows: BEGINNING at a point of the Southeastern right of way line of Lail Sawmill Road at a point which is a distance of 179.2 feet Northeast of the intersection of the Southeastern right of way line of Lail Sawmill Road and the Northern right of way line of GA Hwy. No. 341; thence along and with the Southeastern right of way line of Lail Sawmill Road, North 31 degrees 02 minutes 33 seconds East, a distance of 200 feet to a one inch pipe; thence leaving said right of way line, South 63 degrees 13 minutes 52 seconds East, a distance of 105 feet to a point; thence South 31 degrees 02 minutes 33 seconds West, a distance of 200 feet to a point; thence North 63 degrees 13 minutes 52 seconds West, a distance of 105 feet to a point on the Southeastern right of way line of Lail Sawmill Road, the POINT OF BEGINNING. A copy of said survey is attached as Exhibit "A" to that certain Quitclaim Deed Recorded in Deed Book recorded in Deed Book 1644, Page 414, in the Office of the Clerk of the Superior Court of Walker County, Georgia and is hereby incorporated herein by specific reference thereto. BEING the same real estate described in Deed Book 1644, Page 414, in the Office of the Clerk of Superior Court of Walker county, Georgia, Parcel Tax Identification Number 0-146 058;

g. Real Property located in Chattanooga, Tennessee, together with all appurtenances thereto, improvements thereon, furnishings and fixtures, more particularly described as follows: LOCATED IN THE CITY OF CHATTANOOGA, HAMILTON COUNTY, TENNESSEE BEING the South one-half of Lot 28, BLOCK 16, D.F. SHAUF'S ADDITION, fronting 48 feet, more or less, on the West line of St. Elmo Avenue, and running between parallel lines, a distance of 175 feet to the East line of the Shauf Place. BEING the same real estate described Deed Book 3884, Page 579, in the Register's Office of Hamilton County, Tennessee, Parcel Tax Identification Number 167"O"-B-015.

42. If any of the above described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A _____ True _____ BILL

_____
FOREPERSON

JOHN A. HORN
United States Attorney

J. RUSSELL PHILLIPS
*Assistant United States Attorney*
Georgia Bar No. 576335

STEPHEN H. MCCLAIN
*Assistant United States Attorney*
Georgia Bar No. 143186

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303