1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF GEORGIA
2              ATLANTA DIVISION

3  UNITED STATES OF AMERICA,        :
                                    :
4  vs.                             :   DOCKET NUMBER
                                    :   1:16-CR-0237
5  JAMES G. MALONEY,                :
                                    :   ATLANTA, GEORGIA
6          DEFENDANT.               :   OCTOBER 5, 2016

7


8    **TRANSCRIPT OF AUDIOTAPED PRETRIAL CONFERENCE PROCEEDINGS**

9            **BEFORE THE HONORABLE JUSTIN ANAND**

10              **UNITED STATES MAGISTRATE JUDGE**


11  APPEARANCES OF COUNSEL:

12        **FOR THE GOVERNMENT:**

13        STEPHEN H. MCCLAIN
14        JOHN RUSSELL PHILLIPS
          UNITED STATES ATTORNEY'S OFFICE
15

16        **FOR THE DEFENDANT:**

17        CRAIG C. GILLEN
          ANTHONY C. LAKE
18        GILLEN WITHERS & LAKE LLC

19

20

21

22    *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*
               *TRANSCRIPT PRODUCED BY:*
23
   *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
24                                   *1949 UNITED STATES COURTHOUSE*
                                     *75 TED TURNER DRIVE, SOUTHWEST*
25                                   *ATLANTA, GEORGIA  30303*
                                     *(404) 215-1383*

**P R O C E E D I N G S**

**(Atlanta, Fulton County, Georgia; October 5, 2016.)**

THE COURT:  All right.  We're on the record.  This is the case of the *United States of America vs. James Maloney*, 1:16-CR-237.  We have the counsel for the Government, Mr. Phillips and Mr. McClain, here, as well as counsel for the defendant, Mr. Gillen and Mr. Lake.

I asked for the parties to come in to speak further about the procedures going forward about the Classified Information Procedures Act and in particular the Government's response to the defendant's notice of intent, which is Document Number 23.

The -- I expressed my view -- we talked in chambers but came out here to put my rulings here on the record.  I expressed my view that upon reviewing the Government's response and the authority that was cited that I did think that the defendant's initial notice was somewhat insufficiently precise and a further particularization was warranted.

The defendant, therefore, I'm ordering to perfect the notice, Document Number 22, with more precise identification of the information obviously without disclosing actual classified information but to describe the information that the defendant already is aware of and would seek to disclose at trial and also to tee up any disputes about information in the Government's possession that the defendant does not already

1    have by making precise requests -- Brady requests and, if

2    necessary, motions to compel to the Court for the -- for

3    obtaining discovery not already in his possession and to do

4    those things within 30 days to further identify the potential

5    areas of classified information that the defendant is raising.

6           So I think in sum we're talking about identifying to

7    the extent possible specific statements the defendant would

8    make or would otherwise elicit from others as to the -- as to,

9    for example, whether specific transactions or purchases that

10   are otherwise charged in the indictment were for the purposes

11   of the contract and any conversations, meetings, or documents

12   that the defendant believes exist that may memorialize those

13   discussions.

14          But it is understood that the defendant's

15   particularized response would not go so far as to actually

16   explain the purposes of the contract, that being classified.

17   But to further particularize the information that would be

18   shared as to specific transactions and that were for purposes

19   of the contract and whether there were conversations,

20   memoranda, or documents that may exist in support.

21          So that would be due within 30 days.  And then the

22   Government independently was already going to submit -- and I

23   understand is still going to do that -- a brief to the Court --

24   a brief outlining the procedures, the CIPA procedures for

25   proposal for how we would go forward.

1     And based on the proposal -- I'm sorry -- the notice

2 that is submitted, I will call for a Government response within

3 30 days of that as to reacting specifically to the items that

4 are noticed.

5     Okay.  Anything further that either side -- that

6 y'all want to put on the record here?

7     UNIDENTIFIED MALE:  Just for clarification, Your

8 Honor, I understood that the response that we filed to the

9 notice of intent to disclose classified information was the

10 brief that you wanted us to file.

11     Are you saying now there is something else you want

12 us to brief on the CIPA issue outlining the procedures?

13     THE COURT:  Well, I thought you were going to get to

14 me a -- a more nuts-and-bolts explanation of what the

15 procedures would be, what we would have to do.

16     And if there was discovery review of classified

17 information or if I had to do in-camera review of classified

18 information or we had to have hearings where the content was

19 disclosed, what the procedures would be, who and how would --

20 who we would have to clear and how that would -- how that would

21 occur, whether that would include court staff and at what

22 levels.  A facility -- is there an appropriate facility here in

23 this courthouse where we would have such a hearing?

24     I thought we were going to -- I was going to get a

25 little more nuts-and-bolts information on those sort of things

1    is what I was envisioning.

2              UNIDENTIFIED MALE:  Okay.  I was not aware of that.

3    That is not what I included in my previous brief.  I mean, all

4    of those procedures are outlined in CIPA.  Each section talks

5    about a different stage and what happens.  And I can certainly

6    outline that for the Court if you would like me to.

7              THE COURT:  That would be helpful.

8              UNIDENTIFIED MALE:  Okay.  I'll do that.

9              UNIDENTIFIED MALE:  I mean -- and I heard you just

10   say this, which is in response to their renewed notice we could

11   file something like that because -- and Mr. Phillips

12   understands CIPA better than I do.

13             But I think our response to what the appropriate

14   procedures should be will depend and could depend on what

15   information they are noticing up.  Because we may say, let's

16   have a hearing.  We may say, fine, it can be disclosed.  We may

17   say -- you know, so I think -- and that is why we filed the

18   brief we did.  Because we think that is insufficient, there was

19   no need for a hearing, there was no need for further procedure

20   at this point, given what had been done in the notice.  That

21   the appropriate response under *Collins* was it is insufficient;

22   we're done.  Obviously, the ball is in their court.  They can

23   change that.

24             And then our view of what the appropriate procedure

25   is can then be altered if they then meet what in our view is an

1    insufficient or a *Collins* compliant notice.

2         But I mean, I think Your Honor saying let us file

3    something after they file their amended notice and we would

4    propose that in that response that us propose procedures to the

5    Court or at least -- I'm sort of thinking out loud.  But that

6    is how I think that we would like to handle those proposed

7    procedures to the Court in light of what they say.

8         And in that notice we can -- if it was sufficient

9    here, it would be appropriate.  Our view is it is not

10   sufficient.  Therefore, here is the procedure that is

11   appropriate.

12        So I think we can cover the sort of -- the entirety

13   of it of what the appropriate procedures are and then take a

14   position on, you know, which of those avenues should be taken

15   in light of their amended notice.

16        THE COURT:  Well, I guess that is what I thought your

17   current response lacked.  So if it has that, then that is fine

18   with me.  If, in other words, it gives me -- if I disagree with

19   the position you're articulating, then what is the road we go

20   down and what do we need to do?

21        What are the different -- depending on what doors are

22   opened, where do we go, notwithstanding which door you think I

23   should open, if that makes sense.  But, otherwise, that is

24   fine.

25        Mr. Gillen?

1          MR. GILLEN:  Yes, Your Honor.  First, my recollection

2   is when we met here before that there were two deadlines.  One,

3   the deadline they said they wanted to file a written response

4   to our notice, which they did.  But they were also to file, as

5   the Court remembers, an outline in terms of they were going to

6   speak with Washington in terms of the national security folks

7   to get a procedure in terms of how to go forward.

8          At that time in our previous hearing, my recollection

9   was that we were talking about trying to get something where

10  there would be an expedited review -- a background review for

11  defense counsel to have a clearance.  So that if the Court

12  deemed it necessary to have a more specialized or

13  particularized *Collins* filing, then that would be -- it could

14  be done with the knowledge of the defendant giving to his

15  lawyers all the information that he had such that we could then

16  go forward and let the Government know what we think is

17  relevant and necessary and material to a defense of Dr. Maloney

18  in a federal criminal indictment they brought on the very

19  project that their own indictment says -- references

20  Dr. Maloney's dealings with the intelligence agencies.

21          This is not some drug dealer who says, oh, yeah, the

22  CIA said that I could bring -- like the *Rosenthal* case we

23  talked about back there.

24          In their own indictment, they acknowledge

25  Dr. Maloney's dealings with the intelligence agencies.  So my

1    recollection was that the process was going to be that.  They

2    were going to file some response, which they have done.  And

3    that subsequent -- that subsequently they were going to be

4    filing something regarding procedure and I thought also in

5    expediting for background checks for defense counsel.

6              Now, that is what I thought.  The record will speak

7    for itself.  The Court can modify obviously its initial

8    position.  But in the modification that the Court has given

9    today, this is the -- one of the issues that I have.

10             We will comply.  We will try to get -- we will try to

11   walk that -- the razor's edge of saying here, Your Honor, we're

12   trying to be more specific and more detailed but yet not

13   disclosing classified information.

14             All of this could easily be handled.  With a

15   background check or a waiver from the Department of Justice, we

16   could give the court everything right now so that we can make a

17   determination.

18             CIPA is about the balancing of a citizen's right to a

19   fair trial in the United States of America when charged with

20   felonies and the nation's concerns about keeping safe and

21   secret its classified information.  That is the balancing test.

22             In our review, respectfully, the process presently

23   articulated by the Court throws that out of balance.  What

24   you're asking us to do is to file something without knowing the

25   full picture or without knowing all the details.  And yet the

1   defense is saying -- excuse me -- the Government is saying we

2   don't think under *Collins* it is specific enough.

3        We will be more than happy to make sure that the

4   Court gets all of the data and information that it deems to be

5   relevant in detail from the defense.  We just want to make sure

6   that Dr. Maloney doesn't have to say, gee, can I tell

7   Mr. Gillen this or can I not tell him that, so that we can

8   trigger the mechanism of being specific enough to warrant

9   background checks so that we can supplement our notice with

10  even more detail.  Or is he going to run the risk -- we have

11  already been threatened once by the Government in an e-mail

12  concerning whether or not Dr. Maloney would be giving any

13  classified information to his own lawyers.

14        Now, we believe that we have got Sixth Amendment

15  issues here.  Dr. Maloney has a right under the Sixth Amendment

16  to the right of counsel.  Not somebody who is wearing

17  blindfolds and trying to guess about the specificity necessary

18  to defend -- to defend him in a case where they specifically

19  name the very project that he wants to tell the jury about --

20  the very project.

21        So we will do what the Court says.  We will -- within

22  30 days.  And I appreciate the Court's indulgence on the 30

23  days.  I did mention in chambers we have this matter up in Cobb

24  County that we're focusing a lot of our energies on.  So we do

25  need that time.

1          The other matter is that when we were last here we

2    talked about problems with Rule 16.  Subsequent to that hearing

3    then, we received a hard drive from the Government, which has

4    taken apparently four or five days to actually copy.  I haven't

5    even had a chance to look at it yet.

6          I would like the Court at that time -- the last time

7    we were before the Court, you said, all right, well, look at

8    the supplemental Rule 16; and if there are any additional

9    motions that you need to file regarding the discovery or

10   regarding Rule 16 material, then file that at the time that the

11   Government is to file their CIPA procedure notice, which is --

12   I forget -- would be in two weeks or something like that or

13   whenever it was -- ten days.

14         I would ask the Court to allow us the 30 days that we

15   will have for the supplementation of our CIPA notice to also

16   file any additional Rule 16 motions that we would have.  I have

17   not had time to review the discovery material, which has been

18   presented to the defense after the last hearing that we had.

19         THE COURT:  Any objection to that?

20         UNIDENTIFIED MALE:  I'm not sure I understand what he

21   says.  I mean, if he's asking for more time to file more

22   motions, then I don't know that the Court really cares what I

23   think about that.

24         THE COURT:  Well, I care -- I mean, in the sense that

25   you have a right to object to anything.  That is what I mean.

1        Any objection to --

2        UNIDENTIFIED MALE:  Well, I would just like to note

3   for the record that the Government filed its response to the

4   CIPA notice at least two weeks before the deadline that the

5   Court gave us.  We didn't take the whole time that the Court

6   had allowed us to do that.  So we were very prompt in doing

7   that.

8        And when we left the previous pretrial conference and

9   I represented to the Court that we were going to be providing

10  additional discovery to the defense, we did that promptly.

11       As soon as we received the blank hard drive that they

12  gave us to copy the -- or to image the laptops that the

13  defendant had had access to at Georgia Tech, we immediately

14  gave that to the FBI.  And they immediately copied those hard

15  drives.  And we immediately gave them back to the defense.

16  And --

17       THE COURT:  Well, I mean, I'm not sure if I'm hearing

18  anything otherwise from Mr. Gillen.  I think he's just saying,

19  I've got a whole lot of stuff.  It took a few days to copy.  It

20  is -- and can I have 30 days to file motions that may come

21  relevant as a result of this?

22       I'm not hearing you object to that.

23       UNIDENTIFIED MALE:  I don't object to that.

24       THE COURT:  Okay.  Okay.  So that is what I'm getting

25  at.

1          UNIDENTIFIED MALE:  I just wanted to make clear,

2   though, the Government hasn't done anything to delay the

3   process or prevent him from being able to file under the

4   previous deadline that he had.

5          THE COURT:  Okay.  Understood.

6          All right.  So that is fine.  The 30 days will

7   include leave to file any new Rule 16 motions that may be

8   necessitated by the review of the newly received discovery.

9          The -- the only thing I would say in response to what

10  you said, Mr. Gillen, is the -- all I'm ordering here is

11  further perfection of the notice of intent and any issues that

12  arise from the filing of your perfected notice.  In other

13  words, any dispute at that point about what should be permitted

14  to be shared, what should not be permitted, how to deal with

15  any disputes would be at that point to discuss.

16         So nothing that you've described in my view is ripe

17  right now to discuss.  You identify the information that you're

18  intending to get into at trial.  And it could be the

19  Government doesn't dispute the disclosure of that information

20  or it does on relevance grounds and we can hash that out.

21         Ultimately, you have requested a procedure where you

22  get cleared now.  I'm not sure that is not the best way to go.

23  But I don't believe and I've not been presented with authority

24  under CIPA that allows me -- allows the Court to order the

25  Government to clear someone for national security clearance.

1          It may be the better way to go here, the more

2    efficient way to go.  But I don't see it as my authority under

3    the statute to order that procedure.

4          Ultimately, the Court has the authority to give a

5    defendant appropriate relief if they are being denied a fair

6    trial or fair access to the right of counsel.  And you haven't

7    made that motion right now.  And I don't know -- that will

8    ultimately be necessary.  But that is ultimately a right you

9    have to request.  That is the authority the Court has.  I don't

10   have the authority to order them to clear you.

11          So we're going to take this in steps.  We're going to

12   have you perfect the motion as best you can.  We're going to

13   get the Government's response.  And I'm hopeful that will at

14   least narrow issues and deal with whatever remaining disputes

15   exist at that point.

16          I don't know what else to do at this point.  That is

17   my best way of proceeding at this juncture.

18          UNIDENTIFIED MALE:  If I may just say one more thing,

19   Your Honor --

20          THE COURT:  Okay.

21          UNIDENTIFIED MALE:  Thank you -- as it relates to the

22   Court's ability to direct them.  I would suggest that the Court

23   does have the ability to order them under the Sixth Amendment

24   to provide the clearances necessary for a full and complete

25   defense of Dr. Maloney.

1          So my position -- I know that you said it might be
2   premature.  It is not premature to us because we're going to
3   have to sit down with him and begin that razor's edge walk
4   regarding classified and unclassified to make sure it is
5   specific enough but not containing classified information.
6          I think it can be solved by the Court under the Sixth
7   Amendment ordering the Government to do what we have asked.
8          THE COURT:  Okay.  Well, I'm going to leave the
9   schedule as I have stated it.  I don't believe -- well, I
10  mean -- I interpret -- you haven't made a motion.  You've just
11  asked me to make an order here.  I'm not sort of accustomed
12  to --
13         UNIDENTIFIED MALE:  Well, I was responding to the
14  Court saying he doesn't believe the Court -- the Court doesn't
15  believe it has the authority.  I will look at the issue, and
16  perhaps we might file a written motion in that regard.  So
17  I'll, you know --
18         THE COURT:  Fair enough.
19         UNIDENTIFIED MALE:  Rather than simply doing
20  something orally, I just wanted the Court to know and have the
21  record reflect --
22         THE COURT:  Fair enough.
23         UNIDENTIFIED MALE:  -- what our position is today.
24         THE COURT:  Fair enough.  It is my view -- I haven't
25  studied this, and maybe you can point me to something.  I do

1   not have the authority, including under the Sixth Amendment, to

2   order the executive branch to clear private citizens for

3   classified information.

4        Ultimately, my authority under the Sixth Amendment or

5   more accurately the district court's authority under the Sixth

6   Amendment is perhaps greater, which is to say, I can't tell

7   them to give it to you, but if ultimately you can't fairly

8   represent your client without getting that information, it

9   would be for dismissal; not for ordering them to give you

10  clearance.

11       My inclination is to think that is my authority, not

12  to order clearance.  But you can teach me otherwise.

13       UNIDENTIFIED MALE:  I don't think that I can teach

14  the Court anything.  But I can state my position.

15       THE COURT:  That is not the right word, I guess.  But

16  point me to something because I haven't really researched it.

17       UNIDENTIFIED MALE:  My -- to refine my point, it is

18  not necessarily saying you go ahead and you give today blanket

19  security top secret clearance for Mr. Gillen and Mr. Lake.  But

20  to order the process to begin is something else.

21       I have had top secret clearance, and I had it for a

22  number of years when I was with the Attorney General's Office

23  and I believe I had security or secret level when I was with

24  the U.S. Attorney's Office.

25       Now, again that is the way it is.  I'm not saying

1    that the Court can say -- to give -- maybe he can; maybe he

2    can't -- to make the Government give somebody that they don't

3    believe should have any clearance at all or access to their

4    secrets access to their secrets.  It is the process that we're

5    talking about here.

6              And then if they were to come back and say, we don't

7    want to give Mr. -- in spite of the fact Mr. Gillen might have

8    had top secret code word clearance, we don't want to let him

9    see any of our secrets any more, then was that an arbitrary

10   decision?  Was that a strategic decision made?

11             That is when we would deal with Sixth Amendment

12   issues.  But I'm saying the process we would hope would go

13   forward so that we can get this thing under speed.

14             But I understand.  I just wanted to state my

15   position.

16             THE COURT:  Understood.  Okay.  All right.  Well, I

17   think we'll leave it at that, and I'll look for your

18   submissions.  And what I will likely do is -- let me pull up my

19   calendar here.

20             Let me go ahead and set a conference so we can talk

21   about the submissions as they are submitted.  I don't have my

22   calendar handy in front me.

23             Bel, do you have your calendar so that I can just

24   look over your shoulder?

25             So with the schedule that I just stated, 30 days and

1   30 days, this would be approximately teed up in mid November.

2   So how are y'all that first week in December, the week of the

3   5th?

4           We're not on duty then; right?

5           It looks like we're fairly wide open that week.  For

6   lack of anything else, I'll propose Tuesday the 6th at

7   10:00 A.M.

8           MR. PHILLIPS:  Your Honor, Mr. McClain and I are

9   supposed to be at a conference at the NAC learning about CIPA

10  and national security procedures that week.

11          THE COURT:  All right.  Well, then we definitely will

12  benefit from waiting.

13          UNIDENTIFIED MALE:  Let's all go.

14          MR. PHILLIPS:  The 6th and 7th.  And then there is

15  the SEC conference in Atlanta at the end of the week.  So every

16  day that week we're supposed to be in a seminar.

17          THE COURT:  The problem is the next two weeks we're

18  on duty and --

19          UNIDENTIFIED MALE:  Could we do it the week before

20  that then?

21          THE COURT:  Before you have the advantage of all this

22  training?  That is the Thanksgiving week, isn't it?  No.  That

23  is after Thanksgiving.  Is that right?  Okay.

24          UNIDENTIFIED MALE:  How about the week after the 6th,

25  whatever -- the week of the 13th?

```
 1              THE COURT:  The problem is we're on duty then.  And,
 2   you know, I don't know how long it is going to take.  And
 3   let's -- I mean, the week of the 28th looks okay, if that is
 4   doable for y'all.  November 28th.
 5              UNIDENTIFIED MALE:  Well, actually --
 6              THE COURT:  I hate to give up all this great training
 7   you're going to get the following week.
 8              UNIDENTIFIED MALE:  Can we do it after the Court has
 9   duty in December?  Because I think it would be helpful for us
10   to go to that training.  I mean, otherwise, we're --
11              THE COURT:  Well, we are really probably talking
12   about January unless folks are going to be around that week of
13   Christmas week, which I guess -- I don't know -- I have no
14   specific plans myself.  But I don't normally set things that
15   week.
16              UNIDENTIFIED MALE:  Can we do January then?
17              THE COURT:  January -- the week of the 2nd?
18              UNIDENTIFIED MALE:  Yes.
19              THE COURT:  That looks pretty good.  Okay.  All
20   right.  So let's say Tuesday the 3rd -- for those of us who
21   have taken some time off, it gives us at least a day to
22   acclimate -- at 10:00 A.M.
23              Sound good?
24              UNIDENTIFIED MALE:  Yes, sir.
25              THE COURT:  All right.
```

1          UNIDENTIFIED MALE:  And the purpose of that hearing

2    would be just so we're clear --

3          THE COURT:  Well, at that point, I'm going to have

4    their notice.  I'm going to have your response and your

5    response that may include -- I don't know what it is going to

6    say.

7          But my hope is it is going to tee up the relevancy

8    or -- I mean, if there are things that, as you have been

9    hypothesizing, you might see from the notice and come back and

10   say, we don't think -- we think that is made up.  It didn't

11   exist.  Therefore, we're not taking any position that it is

12   classified, you can testify to that.  You can say all you want

13   about that because that is not classified.  We think it is made

14   up.  But it is not -- in any event, because we think it is made

15   up, therefore, by definition it is not classified.  Therefore,

16   there is no restriction.

17         So there may be categories of information that you

18   respond that way.  Then we at least know where we are.  There

19   may be categories of information where you respond and say

20   we -- that does implicate classified.  But we don't believe it

21   is -- we're going to pose relevance.  And here is our argument.

22   And there may be other responses.

23         It is my hope we get closure -- I mean, we get it all

24   teed up at that point.  And the purpose of this hearing,

25   therefore, would as best I can to go through that all with you.

1          I think under CIPA to the extent I'm making rulings

2   on disputed issues there needs to be a written ruling.  So I

3   don't know if I can give oral rulings on the record.  But at

4   least to have argument about the pleadings at that point.

5          UNIDENTIFIED MALE:  Right.

6          THE COURT:  And to see where, if anything, we go from

7   there.  Perhaps your response will be as to some of these

8   things, we still don't know enough.  It is still too vague.

9          Mr. Gillen then will say, well, look, I tried my

10  best.  How am I supposed to get -- I -- and how am I supposed

11  to get farther without clearance?  We'll have to -- then we

12  discuss that again.  The -- and where we go from there and how

13  to break through that chicken and egg.

14         I don't know what all the issues will be.  But my

15  hope is that hearing will be where we go through item by item

16  and figure out where we are.  And at a minimum hopefully narrow

17  things because, for example, maybe there are things that the --

18  y'all come back with and say for whatever reason either it is

19  not classified or technically it is classified but the -- we're

20  going to see clear to declassify it because we don't want to

21  fight this and it is not necessary any more.  Or we have a

22  relevance objection.  And maybe I'm able to rule on the

23  relevance objection with what I have.

24         And it perhaps narrows the information and the issues

25  in dispute.  I don't know.  That is my hope for this here.

1          Does that make sense?

2          UNIDENTIFIED MALE:  It does.  Thank you.

3          THE COURT:  All right.  I think that is all I had.  I

4    mean, I'll just leave it with this.  The -- you know, to the

5    extent, you know, you all as you're looking through this -- and

6    I'm looking at the Government -- you know, you're free to

7    take -- and I don't know right now what any rulings will be

8    because I don't know enough.

9          But I mean, if you -- I can't order you I don't think

10   to clear Mr. Gillen let's say.  But it -- and I can't tell you

11   how to prosecute or manage the case from your standpoint.

12         From what I've heard so far, I am skeptical that at

13   some level he won't be entitled to know and help his client

14   prepare for trial with regard to the basics of what the project

15   was about.

16         Perhaps the notice will, you know, assist a little

17   more and get to a little bit more detail.  But I'm skeptical

18   that he would have to go to trial and defend on an indictment

19   that is fundamentally about alleging that various transactions

20   were not for the purposes of the contract without being able to

21   talk to his client about what the contract was about and

22   without getting his client's assistance in preparing a defense

23   for trial purposes.

24         So I guess I'll urge you and suggest as you get his

25   notice and review his theory of defense as it gets perhaps

1    explained in a little more detail in that notice, you know,

2    reconsider whether that is something -- I mean, in the end, I

3    can't order it I don't think.  And I don't know whether -- I'm

4    not saying this would be dismissed or not ultimately because

5    that is not before me.  Although, I do think that would be the

6    ultimate remedy if we do find he is unable to go to trial and

7    adequately defend his client.

8              Because these procedures likely take a lot of time, I

9    would urge you to think about it as you get the notice and

10   whether it is something that may make sense to just go ahead

11   and start now.

12             But all I can do at this point is, I guess, make that

13   suggestion.  I can't order it.  I can, though, express from

14   what I've heard some skepticism that at the end of the day the

15   lawyers would not be permitted to know what the project is

16   fundamentally about in order to defend the charges that

17   specific transactions were not related to the project, if that

18   makes sense.

19             That is not an evidentiary ruling right now.  I don't

20   know enough about this case, and I haven't been presented with

21   enough to -- it is a reaction -- it is a first blush reaction

22   to the extent that may be helpful if for nothing else than you

23   being able to address to me arguments to explain why that sort

24   of information is irrelevant and should go no farther in

25   discovery or even defense consultations.

1          But you will have to maybe explain that to me.

2   Because my inclination is to think there is a basic right to

3   discuss and understand what the contract that was the subject

4   of the fraud charges was about.  Because what I'm hearing is

5   the proffer that at least as to some, perhaps not all, of these

6   transactions the defendant believes he has a defense that he --

7   the transactions were relevant under the contract, perhaps even

8   specifically discussed with security personnel.  I don't know.

9   But at least relevant under the contract goes to his intent.

10          That may not explain everything, including tennis

11   ball machines.  But there may be other defenses as to those

12   things.  And I'm just skeptical that Mr. Gillen and Mr. Lake

13   can't discuss that with their client a little bit in advising

14   him and formulating and preparing a defense.

15          But I -- that is at this point the most I can say I

16   think at this point.  Okay.

17          UNIDENTIFIED MALE:  Thank you, sir.

18          THE COURT:  We'll be in recess.

19          UNIDENTIFIED MALE:  Thank you.

20          **(The proceedings were thereby concluded at**

21          **3:47 P.M..)**

22

23

24

25

1                    C E R T I F I C A T E

2

3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5

6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    23 pages constitute a true transcript of the audiotaped

10   proceedings had before the said Court, held in the City of

11   Atlanta, Georgia, in the matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   8th day of November, 2016.

14

15

16

17   _____
     SHANNON R. WELCH, RMR, CRR
18   OFFICIAL COURT REPORTER
     UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25