```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3   UNITED STATES OF AMERICA,      )
                                    )
 4              Plaintiff,          )  CRIMINAL ACTION FILE
          v.                        )  NO. 1:16-CR-00237
 5                                  )
     JAMES G. MALONEY,              )
 6                                  )
                Defendant.          )
 7   _____)

 8

 9
     ----------------------------------------------------------
10
                 BEFORE THE HONORABLE JUSTIN S. ANAND
11              TRANSCRIPT OF AUDIOTAPED PROCEEDINGS
                        SEPTEMBER 14, 2016
12
     ----------------------------------------------------------
13
     APPEARANCES:
14
     For the Plaintiff:       OFFICE OF THE U.S. ATTORNEY
15                            (By:  JOHN RUSSELL PHILLIPS.
                               STEPHEN H. McCLAIN)
16
     For the Defendant:       GILLEN WITHERS & LAKE, LLC
17                            (By:  CRAIG A. GILLEN
                               ANTHONY C. LAKE)
18
             Proceedings recorded by mechanical stenography
19            and computer-aided transcript produced by

20                 JANA B. COLTER, RMR, CRR, CRC
                   Realtime Systems Administrator
21                    Official Court Reporter
                      2394 U.S. Courthouse
22                    75 Ted Turner Drive, SW
                      Atlanta, Georgia  30303
23                       (404) 215-1456

24

25
```

```
1                        _  _  _

2                   P R O C E E D I N G S

3   (Atlanta, Fulton County, Georgia, SEPTEMBER 14, 2016, in open

4   court.)

5            THE COURT:  -- the United States of America versus

6   James Maloney 1:16-CR-237.  Representing the United States are

7   Assistant U.S. Attorneys Russell Phillips and Steve McClain.

8   Representing the defendant are Craig Gillen and Anthony Lake.

9   So we're here for a pretrial conference.  And I've received

10  the motions that the defense has filed.  And before we get to

11  them, though, let me ask the government has all Rule 16

12  discovery been produced at this point?

13           MR. PHILLIPS:  Your Honor, it has.  In fact, we've

14  turned over more than we were required to.  We've turned over

15  all of the 302s at the time of the initial discovery

16  production.

17           Defense counsel notified us last week though that

18  there was a problem with one of the disks that we produced,

19  that some of the information was not readable.  So we're in

20  the process of getting that fixed.  They've also provided us

21  with a portable hard drive to copy some computer hard drives

22  that we obtained from Georgia Tech and the FBI is taking care

23  of that right now.  We'll get those things to them as soon as

24  possible.

25           THE COURT:  Is there any -- any searches that were
```

1   done here or any statements obtained from the defendant?

2           MR. PHILLIPS:  No, no.

3           THE COURT:  Okay.  All right.

4           MR. GILLEN:  Your Honor, may I just address briefly

5   the Rule 16?

6           THE COURT:  You may.

7           MR. GILLEN:  What happened is, is that at

8   arraignment, we were given disks.  And then as the Court may

9   remember, I had a bad back, a sciatic nerve issue, and was out

10  of the game for a while.  When we began looking at the

11  discovery, we -- and I have, you know, looked at virtually --

12  you know, there are tens of thousands, I believe, of pages

13  that we have -- that we have looked at.  We -- certain things

14  were obviously missing, and, for example, a recording that we

15  had actually listened to prior to indictment that the

16  government was kind enough to allow us to listen to, and that

17  was not contained in the material that we had.

18          Other documents, which we then -- we then sent an

19  email either last week or ten days ago, whenever it was,

20  Mr. Lake sent an email saying, you know, we don't seem to have

21  this.  And then Mr. Phillips was kind enough to respond back

22  and said, well, you should check out serial number so-and-so

23  and so-and-so, which we don't have.

24          Now, what we actually had is it seems like they gave

25  us on some disks that we reviewed the same thing twice, so

1    we -- you know, either we don't have it -- certainly I can

2    state this.  I have done my very best and spent days and days

3    looking at the material that they have provided that we can

4    read.  We don't have a lot of the Rule 16, which is why we

5    were asking for additional time to file motions because --

6    we're not saying it's anybody's fault.  We're just saying the

7    reality is that we don't have it in a way that we can read it

8    and review it, so we would ask for additional time.

9               THE COURT:  Okay.

10              MR. GILLEN:  Subject to getting it and being able to

11   review it.  It's just something that happens in the course of

12   electronic discovery in our day and age, so we would ask the

13   Court's indulgence in that respect.

14              THE COURT:  And I don't have a problem with the

15   additional time.  I know how things work in that regard.  I

16   was trying to make sure that that process was underway and --

17   but for, it sounds like, technical difficulties or working

18   through technical issues, it sounds like -- at least the

19   government's view is the discovery has been produced or has

20   been made available?

21              MR. PHILLIPS:  Absolutely.

22              THE COURT:  Okay.

23              MR. PHILLIPS:  And we're not trying to keep them from

24   having it.  We're -- if they say they didn't get it in the

25   first production, we're doing everything we can to assist them

1   in getting it as soon as possible.

2          THE COURT:  Okay.  So we'll get to the motions for

3   new -- or to file new motions and we'll set a schedule in a

4   minute.  But let me go through some of the other things that

5   we have here.  I have the notice that is to be filed under

6   seal, which I take it there's no opposition to filing it under

7   seal?

8          MR. PHILLIPS:  Actually, there is, Your Honor.

9          THE COURT:  Oh, there is.  Okay.

10         MR. PHILLIPS:  We did not consent to that.  They

11  asked us ahead of time if we would.  We did not consent to

12  that because we checked with the national security coordinator

13  in our office and we were instructed not to do that.

14         First of all, you know, with respect to defense

15  counsel and the Court, we believe this is a red herring.  This

16  is a classic case of graymail where the defendant is

17  threatening the United States with revealing classified

18  information that he obtained in the course of his job if we

19  don't stop the prosecution.  We believe that's what it's

20  about.  And so by consenting to filing it under seal, we

21  believe that -- that makes it appear that the government

22  thinks that there's something that needs to be hidden.

23         The information that the defendant claims that he

24  intends to rely on in his defense, we believe, is completely

25  irrelevant.  The fact that the defendant had a top-secret

1  security clearance, which he was required to have to perform
2  his job at GTRI, doesn't mean that the information that he
3  obtained through the holding of that top-secret security
4  clearance is automatically relevant to this criminal case.

5      The indictment that we filed in this case is very
6  specific and it talks about the defendant obtaining money
7  illegally by engaging in two different types of fraud:  One is
8  using a Georgia Tech credit card, called a P-Card, to charge
9  personal expenses.  And the other is by engaging in private
10  consulting contracts while he was working for Georgia Tech.
11  And part of that has to do with depriving Georgia Tech of the
12  income that it should have had from that consulting.

13      And then, to add insult to injury, he billed his
14  private consulting work to the government on this classified
15  contract.  And so the fact that he did those things is not
16  classified.  And as I understand it from the defendant's
17  motion, what he seeks to do is to, you know, basically hold
18  the government hostage and say if you don't stop prosecuting
19  me, I'm going to tell the world what this classified contract
20  was about.  And that's not appropriate.

21      THE COURT:  All right.  So, well, there's a couple of
22  matters, as a perhaps ministerial matter, I have the motion to
23  file under seal.  The government is not -- it sounds like --

24      MR. PHILLIPS:  We do oppose that.

25      THE COURT:  -- is not taking the position that

1  anything that is within the four corners of the notice of
2  intent reveals anything that requires sealing, and that --
3  that, of course, doesn't -- doesn't get to the next level of
4  questions, which is the intent to get into classified
5  information, but it sounds like there's no need, at least from
6  the government's perspective, to seal this.  This can be filed
7  in the normal course.
8           MR. PHILLIPS:  Not from our perspective, with one
9  possible exception, and that is that the defendant has
10 identified by name the sponsor of the classified contract.
11 And I've reviewed the contract.  The contract does not say on
12 its face who the sponsor is, it just says the United States,
13 but in the notice of intent, the defendant has identified that
14 government agency by name.
15          THE COURT:  Okay.  And that would be something
16 that --
17          MR. PHILLIPS:  I'm not -- I'm not sure about that,
18 Your Honor.
19          THE COURT:  Okay.
20          MR. PHILLIPS:  I've asked the agents to find out
21 about that, whether they believe that in itself is classified.
22 I'm just flagging that issue for the Court.
23          THE COURT:  All right.
24          MR. PHILLIPS:  I don't know the answer.  But we are
25 in the process of trying to consult with the National Security

1   Division.  Obviously, this is an unusual matter for us.  And

2   we're going to be getting some guidance from some experts

3   about that.  But as we understand it, the issue now is a

4   procedural one.  What do we do from this point.  How do we

5   bring this matter to a head and get it resolved.  And it's my

6   understanding, Your Honor, that the Classified Information

7   Procedures Act, CIPA, says that the prosecutor remains

8   responsible for taking reasonable precautions against the

9   unauthorized disclosure of classified information during the

10  case.  And that responsibility applies whether it's the

11  government seeking to use that information in its case in

12  chief or whether the defendant has notified the government

13  that he plans to rely on that in his defense.

14          So we -- we understand that it's our burden to go

15  forward.  And the *Moussaoui* case says -- that's a case from

16  the Fourth Circuit in 2003 -- that once the defendant has

17  indicated that he plans to disclose classified information,

18  the government may then request a hearing at which the

19  district court must determine whether the classified

20  information in question is relevant and admissible.  So I

21  think that's the next step.  The Court is going to have to

22  find out what it is the defendant plans to disclose --

23          THE COURT:  Right.

24          MR. PHILLIPS:  -- and make a determination as to

25  whether he should be allowed to proceed or whether the

1    information, as the government contends, is irrelevant.

2    Obviously that brings about some other procedural problems.

3    The information that the defendant claims he's going to rely

4    on is, according to him, classified.  And so who are the

5    people who are allowed to hear that?  Do defense counsel have

6    security clearances that allow them to be party to that?  If

7    not, that's an issue that needs to be resolved.

8         THE COURT:  Right.  Well, I was going to -- the

9    immediate step is, you know, what do I do with this motion.

10   So I'm going to hold it in abeyance for a period while it

11   sounds like you look into whether there's anything in here

12   that needs to be filed under seal or not.

13        MR. PHILLIPS:  And we're doing that immediately.

14        THE COURT:  Okay.  All right.  So I'll just hold on

15   to it.  And the -- if there's something in there that warrants

16   sealing, then -- and it sounds like you think at most it may

17   be minimal, then we would simply -- what I would suggest is

18   redact that, file the rest under -- in the regular docket, and

19   file the unredacted version under seal.  That would be how I

20   would think we would handle it, like we would with anything

21   that has mostly non -- mostly public but some nonpublic

22   information in it, whether -- including personal

23   identification information of witnesses and the like.  That's

24   how I think we would handle it, but --

25        MR. PHILLIPS:  I think that's an appropriate

1  response.

2          THE COURT:  Okay.

3          MR. PHILLIPS:  That's what we would suggest.

4          THE COURT:  But in a moment -- I'll hold on to it.

5  And I think as part of a schedule we need to talk about, but

6  let's -- that would, I think, be the next step.  Your position

7  is, it sounds like graymail.  What they're going to say, I

8  believe, is to justify or explain the relations of certain

9  expenses to the contract, we need to get into what the

10  contract was about and what we were doing, whether it's flat

11  screen TVs or the ATVs or whatever it is, I'm just throwing

12  out examples of some of the items, these may or may not have

13  been part of the work we were doing and here's why and that

14  might get into classified information.  Does that -- does that

15  sort of summarize what your position is?

16          MR. GILLEN:  Thank you, Your Honor.  I'll briefly

17  sort of respond in part to what Mr. Phillips said, and then

18  explain further what (indiscernible) to the Court.

19          In their indictment they talk about Dr. Maloney

20  working for intelligence agencies.  In their indictment they

21  specifically mention by letter and number this contract.  And

22  they specifically say that fraud was committed under that

23  contract.  Two years ago, we told the United States Attorney's

24  Office about the sensitive nature of this contract and

25  Dr. Maloney's work on behalf of the United States and one of

1   its agencies.  Two years ago.  Now, this is no surprise to

2   them.  Now, what they are saying here and what they fail to

3   understand is the very purpose and nature of the work done,

4   and even in the contract that they provided in discovery, as

5   we mention in our notice, there is reference to how the

6   material is to be handled, some of the material is to be

7   handled at top secret.

8           Now, this is isn't graymail.  This is -- they chose

9   to take this project, that number, and claim fraud.  And

10  Dr. Maloney has every right to explain exactly why that

11  allegation is absolutely meritless.  So it's not graymail.

12  And I don't -- I don't know if anybody in this courtroom has

13  been involved in CIPA before, but I've had multiple days of

14  CIPA hearings.  In Iran-Contra, that's all we did prior to the

15  CIA trials is hold CIPA hearings.  So I understand the purpose

16  of CIPA and I understand the purpose of the statute.  And the

17  purpose of the statute, we're not trying to graymail the

18  United States.  They started this fight.  What we're trying to

19  do, using the process and using the statute is to, in an

20  organized way -- and it's going to take time.  If security

21  clearances have to be obtained, then security clearances have

22  to be obtained for court personnel, for all attorneys

23  involved, whatever.  But we -- the process allows then for the

24  Court to look through the material, to look through exactly

25  what our position would be.  And frankly, when we get to the

1    end of the CIPA hearings, we're going to be asking the Court

2    to produce, from the United States agencies, information that

3    would support what we assert.  Because we believe that they

4    have information that would be directly relevant and

5    supportive of our position.  So it's not graymail.  It is --

6    it is an explanation to a defense of their precise charges in

7    this indictment.

8            Now, so having said that, the reason why -- and

9    frankly, you know, we took an abundance of caution in seeking

10   to have it filed under seal.  To us, if they want to have it

11   public, that's their business, and that's fine with us.  We

12   did that and we wanted to structure that notice in a way that

13   triggered the elements under *Collins*, alerted the Court to

14   what was about -- you know, to our defense, which is what we

15   do under the CIPA Act, or under CIPA, and then begin the

16   process of working through this.  It's a cumbersome,

17   time-consuming process.  But this statute was specifically

18   made in order to handle situations like this, in order to take

19   criminal cases and deal with people who had, either from the

20   intelligence community or who would access the information

21   that was classified, and then make determinations about

22   relevance, and in the end, if the Court believes that

23   narratives, defense narratives are necessary -- you know, in

24   Iran-Contra, we had virtually ever representative of nearly

25   every intelligence agency in the courtroom making on-the-spot

1  determinations about declassification.  We're not going to

2  need that here.  But we will need, in our review, a CIPA

3  hearing, thus the notice that triggered alerting the Court

4  we're not running around and saying things inappropriately in

5  open court or on the public record that should not be there.

6  That's the reason why we did it the way we did it.

7            THE COURT:  Okay.

8            MR. PHILLIPS:  Your Honor, may I respond just

9  briefly?

10            THE COURT:  You may.

11            MR. PHILLIPS:  Mr. Gillen makes it sound like he's

12  already in possession of this classified information.  He's

13  representing to the Court that this is a valid defense.  I

14  don't know how he can do that without already being in

15  possession of the facts.  And if Mr. Maloney, the defendant,

16  revealed classified information to his attorneys, that --

17  that's a problem.  And it's not a problem that can be swept

18  under the rug by filing the notice of intent under seal.  So I

19  don't know whether that information has already been provided

20  to Mr. Gillen or he's just assuming that his client has a

21  valid defense because his client says he has a valid defense,

22  but I think that's -- that's a problem.

23            THE COURT:  Well --

24            MR. PHILLIPS:  And the second thing, just briefly --

25            THE COURT:  Um-hmm.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

1            MR. PHILLIPS:  -- back to the issue of whether it

2   should be sealed, I notice on Page 4 of the notice in the

3   footnote that the defendant says that the association of the

4   sponsor with the contractor is classified unclassified, so --

5            THE COURT:  Okay.

6            MR. PHILLIPS:  I assume that means that the identity

7   of the sponsor is itself unclassified.

8            THE COURT:  Okay.

9            MR. PHILLIPS:  If that's the case, then our position

10  is that the motion or the notice of intent should be filed as

11  is and not under seal.

12            THE COURT:  Well, there's two -- again, the issue

13  here is, first, a motion to file under seal, I'm going to rule

14  on that.  The way I interpreted the notice was that it did not

15  itself reveal the content of classified information but just

16  flagged the fact that that's going to be a subject of inquiry

17  in this case for the defense's position, and therefore, sort

18  of triggering the procedures to start getting into place to

19  get into that further.

20            I mean, my reaction to what I'm hearing here is that,

21  like a lot of discovery disputes -- and I don't know,

22  Mr. Phillips, if this is what you're proposing, I don't know,

23  I can't, based on what I have here in front of me, really say

24  one way or the other that the information is or would not be

25  potentially discoverable or Brady or not Brady or relevant or

1    admissible.  I mean, that's something -- because I don't know

2    what we're talking about here, I don't know -- are we talking

3    about specific expenditures that have a specific justification

4    that need to get into the details of the agreement?  That's

5    what I've interpreted is the issue.

6            MR. GILLEN:  What the notice allows the Court to see,

7    and we think, frankly, that the notice itself, you know -- if

8    they want to have an agency redaction, that's fine with us.

9    We did that in an abundance of caution.

10           THE COURT:  Um-hmm.

11           MR. GILLEN:  But we -- frankly, in looking at it, I

12   don't think there is anything classified in there, frankly.

13   But in reference to Mr. Phillips' remark, if the government

14   would read their discovery and would read the contract that is

15   the basis for this project that they name specifically in

16   their indictment, then they would understand what we meant in

17   the footnote.  Because the nature of the contract itself in

18   terms of sort of the generic relationship, that is something

19   that the contract deems to be, my recollection from reading

20   them, is not classified.

21           However, then we get into the point where in terms

22   of -- in terms of what it's done, in terms of how certain

23   things are handled, then I think we have two classifications,

24   one top secret and the other secret.  The bottom line is, it

25   would be astounding to me if the government took the position

1    that the -- that a discovery about the details of the

2    interaction between Dr. Maloney and the United States agency

3    would not be classified, it would be astounding.

4            What we need to do is we've triggered the statute,

5    we've put sufficient information to the Court to allow the

6    Court to understand the nature of our intent to proceed along

7    these lines and then let's follow the statute, let's follow

8    the regs on this and let's -- let's have our hearing and then

9    let the Court decide.

10           THE COURT:  I mean, I think my reaction to this is

11   I'm going to need it to be teed up, and if it's a -- if it's a

12   motion/hearing that's protected under CIPA, then so be it, but

13   I'm going to need it to be teed up as a motion to compel of

14   sorts, to say this is the specific information or category of

15   information that I'm looking for and here's why.  Do you

16   understand what I'm saying?

17           To say this is what they have that I need and/or this

18   is the specific information that I'm looking to reveal and

19   here's why, because I can't -- I mean, this is obviously --

20   this is not concrete enough for me to make a determination,

21   that's the level of detail, and it sounds like that's maybe

22   something that has to be under the auspices of CIPA.

23           MR. GILLEN:  Yes, that's correct.

24           THE COURT:  But I'm going to need it to be more

25   concrete than anything we have here.

```
1              MR. GILLEN:  Which is the purpose for the hearing.
2    This notice is like, hey, Court, government, this is what we
3    intend, we need to address this and let's get under the rubric
4    of CIPA.  That's all we're saying.  And we need to do that.
5    Now -- and once everything is covered, once everything is
6    protected, then -- then Dr. Maloney will have the opportunity
7    to be -- to be a lot more specific and will be a lot -- will
8    be able to be a lot more specific about what we're asking for
9    from the government.
10             There are two phases here, what Dr. Maloney can and
11   cannot say himself, and what Dr. Maloney would seek from the
12   United States agency to produce information which would be
13   relevant to and supportive of his position.  And so it seems
14   to me, Your Honor, and I understand that we have to have the
15   details, we're going to do whatever the Court directs us to
16   do, but we need to do it under the umbrella of CIPA and we
17   will do whatever the Court directs us to do.
18             THE COURT:  I mean, my guess is there's going to be
19   categories of expenditures, I mean, just looking at the
20   indictment, that it would be surprising to me if there is
21   truly confidential -- I mean classified information that is
22   relevant for, like, for example, you know, if the government
23   has proof that there was a video network installed at the
24   defendant's home that was paid for with the P-Card or a tennis
25   ball machine or -- you know, I mean some of these things would
```

```
1   strike me as not likely to have -- and there may be other
2   defenses, but not a -- although you may surprise me and it may
3   be that a tennis ball machine has a classified justification,
4   but there may be other things, just looking at this, that, you
5   know, it could be that what you're saying has -- that there
6   was a contractual justification for that required getting into
7   the details of what was being done, computers and Otter Box
8   cases, digital cameras, pin hole cameras, that's the sort of
9   thing -- maybe that's what you're saying, that that would be
10  justified by virtue of what the contract was all about.
11         And I don't think I can make a determination on that
12  without getting into it a little bit more and hearing -- and
13  so it sounds like that's a procedure we have to start -- we
14  have to contemplate here.
15         So how do you want to proceed, I guess, Mr. Phillips,
16  in terms of -- because I don't think I can, you know, reacting
17  to what I'm seeing here, just say that there's not a
18  prima facie need for at least inquiring about whether there is
19  classified information that's implicated here.  And I'll
20  confess I've not personally had a CIPA case before, on the
21  bench or as an AUSA.  So what -- or do you -- do you need time
22  to consult with the national security folks to sort of propose
23  a procedure or schedule, both in terms of, you know, what
24  personnel would have to get cleared, including, you know,
25  Mr. Gillen and Mr. Lake and my staff.  I think CIPA doesn't
```

```
 1   require me to, but if I have to, that's fine, too.  I guess
 2   those would be the questions, who needs to be cleared.  I
 3   believe, if I'm not mistaken, we have a facility, I know we've
 4   had CIPA cases here in the courthouse, and I'm assuming we
 5   have a facility in the building, or other appropriate
 6   facility, but I'll need a little guidance, I guess, from you
 7   all about procedurally and scheduling-wise what we do from
 8   here.
 9             MR. PHILLIPS:  Well, Your Honor, I confess, this is
10   my first CIPA case as well.  So I'm going to rely on advice
11   from people who are experts.  And we've started the process of
12   reaching out to those folks in Washington and trying to get
13   them involved and trying to get some guidance from them.  We
14   don't have that yet, but we're in the process of trying to
15   make that happen as soon as possible.
16             THE COURT:  So why don't, for purposes of today, I'll
17   just say -- I mean, you can give me an estimate now, but
18   obviously if you need to change it, that's fine.  How long do
19   you think you'll need to submit a plan, a scheduling order
20   plan, I guess, proposed procedures?
21             MR. PHILLIPS:  I think 30 days, Your Honor.
22             THE COURT:  Okay.  All right.  So that's fine.  So in
23   30 days or earlier, if you can do it, and if for whatever
24   reason you need an extension, you can apply for that, too, but
25   we'll expect a memorandum plan, I guess I'll call it a
```

1   scheduling order, so to speak.  I don't know if it will

2   literally have dates, but a schedule for the steps that will

3   need to be taken and what the procedures will be for dealing

4   with the -- you know, it sounds to me like

5   discovery/admissibility determinations and --

6           MR. GILLEN:  Well, Your Honor, if I'm reading this

7   correctly, it's my understanding that, as I said from the case

8   a minute ago, once the government requests a hearing, then the

9   Court will be required to make a determination about whether

10  the information the defendant says he intends to rely on is

11  relevant.

12          THE COURT:  Right, right.

13          MR. GILLEN:  And so at that point, I would think, the

14  Court would decide either this is not relevant, that's the end

15  of it, or I'm going to allow you to proceed and request

16  discovery from these, you know, various government entities.

17          THE COURT:  Well, I guess that's --

18          MR. GILLEN:  So I don't know how we can do that.

19          THE COURT:  That would be helpful to lay out in your

20  30-day submission, in other words, you know, a brief, if you

21  will, on the application of statute and the determinations

22  that I'll have to make and/or Judge Totenberg will have to

23  make.

24          MR. GILLEN:  Does the Court still want the defendant

25  to file a motion to compel or something along that line that

1  identifies with more particularity the kind of information

2  that he's seeking and why he's seeking it so that we can

3  respond to that?  Or is that all to just come out at the

4  hearing?  Because if it is, it's going to be hard for us to be

5  prepared to respond to that at the hearing if we're not

6  hearing about it prior to that.

7         THE COURT:  Yeah, I mean, my opinion is I think we

8  need to get a little bit more concreteness in terms of the

9  specific information, which may require you getting cleared

10  first, because, you know, there could be details that you

11  don't have access to yet.

12         MR. PHILLIPS:  Mr. McClain was already cleared and my

13  request for clearance was sent up today.

14         MR. GILLEN:  Well, Your Honor, this is what I would

15  suggest.  We need to follow this procedure.  And the act

16  has -- and there are regs that deal with this process, they

17  follow right after the act.  And so let them get their -- the

18  direction, it doesn't make sense for us to file a motion to

19  compel before we get into -- under the umbrella of CIPA.

20         Once we get under the umbrella of CIPA, they're

21  cleared, we're cleared, then we can, one, obtain information

22  that we can then give in more detail to the Court and also to

23  say we think that the government has A, B, C and D and it

24  should provide it.

25         Now, this isn't -- you know, a CIPA process isn't

```
 1    something where you say, well, you know, gee, you should have
 2    had this material for the CIPA hearing, we only had one day.
 3    It's a process.  It's a process that, if done correctly, the
 4    act handles issues concerning the conflict between the
 5    criminal prosecution and defense involving classified
 6    information.  So once we get under the -- under the umbrella
 7    of CIPA, then we're going to be better served by saying with
 8    some sort of specificity, okay, we're all under the umbrella,
 9    take a deep breath, now let's -- we're going to tell you what
10    we -- we think --
11              THE COURT:  Right.
12              MR. GILLEN:  -- is the defense and what we think you
13    have that you haven't given us that you should.  That's the
14    way that I think we should do it.
15              THE COURT:  And I agree with that.  I think -- I
16    think while Mr. Phillips, I interpreted, is saying is for them
17    to start getting into it and responding in substance and
18    sharing information, they need to be -- have a little bit more
19    granularity, as I feel like I do, to the sort of information
20    you are contending you either need to get discovery of or use
21    at trial.  And so whether that's referred to as a motion to
22    compel or in some other way, I think the first step would be,
23    to put to you, to file something more specific, but not yet,
24    once we're under CIPA --
25              MR. GILLEN:  Yes.
```

1          THE COURT:  -- what it is you're looking for, and

2     then I can, you know, if necessary, look at it.  They can

3     respond, we can get into detail for -- but it may -- I'm

4     anticipating, it sounds like, possibly, requiring you to get

5     cleared first.  Because, I don't know, there may be

6     information that your client has that I'm interpreting from

7     what you said before that the basis for you in filing the

8     notice came from the discovery that perhaps your client has

9     more information that he'd be able to share with you that

10    says, well, the mini micro pinhole video camera was necessary

11    because of this, that he can't yet share with you because

12    you're not cleared.  So that's the sort of thing that I think

13    we need to do first.

14          But once we have all of that happening, including any

15    clearances that are necessary, I think the first step in

16    teeing up this dispute of relevancy and discoverability would

17    be to get from you all a more particularized, I guess,

18    perfected motion, whether it's a motion to compel or solved in

19    some other way, but that's what I'm thinking.

20          MR. GILLEN:  Well, there are two phases to what I see

21    in the CIPA, what Dr. Maloney may say himself that he knows

22    himself, and that's Phase I.  Phase II is what the United

23    States government has that it knows and that it may have in

24    terms of documentation or testimony that would support

25    Dr. Maloney's position, which we believe is contrary to what

1   the United States attorney's office has indicted and put

2   specifically in this indictment.

3         What I would suggest is give them 30 days to file

4   their requested procedure.  We would like 15 days after that

5   to respond, if we -- if we choose to respond to their proposed

6   procedure.  And then once that's done, then we would be off

7   and running hopefully.

8         THE COURT:  Okay.  And that's fine.  So let's do

9   that.  So then 30 days from today, and I'll just give a

10  specific date, just for clarity, that's easy, October 14th,

11  the same number of day as today.  And then 15 days would be --

12  it would basically be over a weekend, so we'll make it the

13  next Monday, which will be a Halloween response, October 31st,

14  which may be appropriate here.

15        UNIDENTIFIED SPEAKER:  Can I wear a costume and hand

16  deliver my response, Your Honor?

17        THE COURT:  You may.  You may.

18        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

19        THE COURT:  And let me go ahead and schedule another

20  conference for to us discuss where we go.  How about -- how

21  about Friday the 4th of November?  Does that work?

22        MR. GILLEN:  Yes, sir.

23        THE COURT:  I'm sure there will be nothing going on

24  in the country that's of interest that day, but -- all right.

25  So let's say 10:00 a.m. on the 4th.  If you don't think you're

1  going to respond once you see it, maybe reach out and let us

2  know.  Maybe we can move that up, even if it's just by phone.

3  We just don't want to still have to wait three weeks if

4  there's not actually a dispute, for example, about the

5  procedures.  But we'll also make clear that this is not, I

6  guess, a motion specifically, but I am continuing the pretrial

7  conference to that date, and in doing so, finding that the

8  interest of justice in making sure that we balance the --

9  because there's a prima facie applicability of potential

10  classified information, the ends of justice in making sure

11  that we are in compliance with the Classified Information

12  Procedures Act and in balancing the national security interest

13  of the United States, but also against the defendant's rights

14  to a fair trial, to make sure that that balance is handled in

15  the correct way under the statute.  So the need to do that is

16  what's justifying or requiring this continuance and that

17  obviously outweighs the defendant's rights otherwise to a

18  speedy trial as well as the public's.

19        So time, if it weren't already tolled by virtue of

20  everything else that's been filed here, we'll make sure is

21  tolled from now through November 4th and likely later, but we

22  will handle that in a separate order at that point.

23        All right.  I'll still hold on to this.  And let me

24  know if you just email Ms. Graves and CC the defense whether

25  there's anything in here that requires sealing from the

1  government's position or not.  It sounds like not and that's

2  fine.  But just let us know.

3       All right.  So we have a few other motions.  So

4  the -- we've got the bill of particulars motion.  I think I'll

5  just ask for a response on that unless there's anything that

6  you want to comment on, Mr. Phillips?  And in the response, it

7  would be helpful if -- you know, there may be things in here

8  that you don't have a problem with, such as identifying known

9  co-conspirators.

10       MR. PHILLIPS:  Well, Your Honor, the indictment

11  doesn't allege that there are any unknown co-conspirators, it

12  identifies the co-conspirators by name.

13       THE COURT:  Okay.  And maybe that's all he's looking

14  for is a confirmation that there's no one else, but it sounds

15  like you just made that confirmation.  And I don't know, maybe

16  there are other things in here that you would see clear to

17  clarifying or not, but it would be helpful if you could

18  provide a response.  So why don't we use the same 30-day mark,

19  since we're going to have some delays here anyway, and that's

20  easier for all of our calendar purposes to not have multiple

21  days.

22       The motion for access to witnesses, you know, I have

23  to say I was a little -- you know, without an allegation that

24  the government is causing or is in any way responsible for

25  your difficulties in getting access to these witnesses, it

1   struck me as -- somehow I was skeptical for -- it's

2   obviously -- and you're not proposing that I have -- that I

3   issue Georgia Tech an order or these witnesses an order,

4   and --

5          MR. GILLEN:  That would be fine as well.  All I care

6   about, Your Honor, I don't think Georgia Tech, and I'm not --

7   we specifically said we're not suggesting the United States

8   attorney's office or the Department of Justice is doing this,

9   but we have, you know, deep concerns about Georgia Tech as an

10  institution saying, no, you know, you don't -- you don't deal

11  with or speak with the defense or defense witnesses.

12         An order simply directing to Georgia Tech's general

13  counsel, Patrick McKenna, simply saying, you know, be advised

14  that Georgia Tech should be aware of the following, that is

15  that in this case they cannot instruct any of their employees

16  or officers to not speak with the defense counsel, but the

17  choice is simply theirs, they can speak to us or not.  A lot

18  of them probably wouldn't want to speak to us even if they

19  weren't under some sort of restriction.  But that would be a

20  simple order to the general counsel of Georgia Tech.  His name

21  is Patrick McKenna.

22         MR. PHILLIPS:  Your Honor, there is no such

23  restriction that I'm aware of.  And Georgia Tech's counsel has

24  not been involved in any of the interviews that we've done.

25  In every single interview that I participated in, we told

```
 1  every witness the defense may try to contact you, it is
 2  totally up to you whether you speak with them, we're not
 3  telling you not to, we can't do that, we wouldn't do that if
 4  we could.  It's totally up to you.  And they all acknowledged
 5  that they understood that.  So we think it would be
 6  inappropriate for the Court to order the government to get
 7  Georgia Tech's general counsel involved and then have them
 8  reach out to witnesses on behalf of the defendant.  We don't
 9  think that's appropriate.  We've done nothing to restrict
10  their right to talk to the witnesses.  We've paved the way for
11  them.  And I do that as a matter of course in every interview
12  that I participate in, in every case I've ever had, we want to
13  make it clear that the government isn't trying to prevent them
14  from talking to defense counsel.
15          THE COURT:  And of course they're not alleging
16  otherwise.  I think that's been clear.
17          MR. GILLEN:  That's right.
18          THE COURT:  And I do appreciate that.
19          MR. PHILLIPS:  In addition, Your Honor, as
20  Mr. McClain just pointed out to me, there's been no authority
21  provided that Georgia Tech couldn't tell its employees not to
22  speak to the defendant's attorneys, if they chose to do that.
23  I'm not saying that they could.  The defendant hasn't made any
24  showing that that would be improper.  I don't know that they
25  would do anything like that, and I've certainly received no
```

1    information that they have.  No witness has told us in any

2    shape, form or fashion that they were instructed by anybody on

3    behalf of Georgia Tech not to cooperate and not to talk to the

4    defendant.  That has not happened.

5           THE COURT:  Okay.  I'm going to take this under

6    advisement.  I'm going to look at the cases that have been

7    cited.  And if I need a response from the government, I will

8    order it.  I'm not -- I haven't determined whether I'll need

9    that yet.  So let me take this under advisement and consider

10   it.  And I will either issue a ruling or ask for a response

11   and then issue a ruling and we'll take it from there.

12          We've got the motion for identification of documents,

13   of Document Number 18.

14          Mr. Phillips, any response to that that you are able

15   to make?

16          MR. PHILLIPS:  Just in the brief research that I've

17   been able to conduct so far into that, I don't -- I don't

18   think that is appropriate.  I know that there's a published

19   opinion by Judge Thrash, Judge Schofield, where they looked at

20   that and they said I'm not going to order the government to do

21   that.  I think it's pretty close to being on point with what

22   we have here.  I don't have the name of the case in front of

23   me.

24          THE COURT:  I thought -- I don't know if that's the

25   same one that was cited here.  Was it the Curranza case?  You

1    know, I haven't had a chance, and this is one thing I need to

2    do is look through the cases.  Obviously, I've just received

3    these motions as well.  But I thought it was -- I thought,

4    according to the defense, in that case they did order an index

5    of documents, not under Rule 16, but under concepts of due

6    process and fairness, given the complexity and the voluminous

7    of the production in that case.

8         MR. PHILLIPS:  That's a different issue, though, than

9    requiring the government to identify the documents that it

10   intends to rely on at trial.  As part of our normal practice,

11   and we've tried cases against Mr. Gillen and Mr. Lake,

12   Mr. McClain and I have, we've had no problems working with

13   them.  And our standard practice is to agree to exchange

14   document lists and exhibit lists and witness lists with the

15   defense.  And we try to work with them and we try to give them

16   as much information as we can.  We're not playing hide the

17   ball with them.  We're going to be very cooperative in working

18   with them as long as there's a two-way street, and we will

19   continue to do that.

20        THE COURT:  Why don't you give me a response on this

21   that if you want me to consider some of the things you just

22   said, offer some of the things you're preparing to give so I

23   have some concrete understanding of what it is you have given

24   or would be prepared to give or are willing to offer in order

25   to assist their analysis of the discovery.  And that may help

1    me here a little bit as well.  But obviously, the assurance,

2    don't worry, we'll work it out, just like I need some more

3    concreteness from them on what they need, I'll need some more

4    concreteness from you as to what you are giving them in

5    addition to just the mounds of CDs or whatever it is.

6              MR. GILLEN:  Just to clarify, Your Honor.

7              THE COURT:  Um-hmm.

8              MR. GILLEN:  This motion, which I call the Poindexter

9    motion, because it emanated from the Poindexter Constitution

10   in Washington where just a sea of documents were produced.

11   And it's like that's really not Rule 16 at all if you can't --

12   you know, going through all these documents.  We're not asking

13   to freeze the government at, you know, gee, you gave us this,

14   if this motion were to be granted and pursuant to that you

15   gave us this binder and now you want to add another thing,

16   that's not what we -- what we are trying to do.  This has to

17   do with good faith, identification of case-in-chief documents

18   to whittle through all of the thousands upon thousands upon

19   thousands of invoices and documents that I have personally

20   reviewed in this case.

21             Now, recently, I know it's not -- this office is not

22   the Department of Justice antitrust division, but in two

23   pending cases, one before this Court, the Department of

24   Justice in Washington has been more than willing to kind of

25   work with the basic concept of putting together documents and

1    packets for its prosecution, but with the understanding that

2    no one's -- you know, that I'm not saying that we could, and

3    I'm certainly saying we would not rush in and say well, we

4    didn't get this in binder so and so on such and such a date.

5    That's not what we're after.  When -- and I -- and I look

6    forward to seeing what the government wants to discuss in

7    terms of documents.

8         What happens in these cases, particularly now in the

9    electronic age, is the United States attorney's office is very

10   well prepared, as always, and now they are prepared also with

11   very computer-savvy support staff that does a great job of

12   putting their documents up on the screen and then blowing this

13   up and then having all of that.  So without our knowing what

14   is going to be used --

15        THE COURT:  You're pretty good at that, too, though.

16        MR. GILLEN:  No, I'm not, frankly.  Mr. Lake is a

17   little better than I am, absolutely, you know, I -- in the

18   dinosaur era, if they found my bones, they would put me back

19   in the backroom.  Anyway, so it's easier for us because

20   they're going to go forward and that way for cross-examination

21   purpose, the efficiency of the running of the trial, judicial

22   economy, it makes sense to do this.  We're not trying to

23   freeze them.  That's all.

24        And if we can -- that's something that's really

25   important to us, it's important in this case, really important

1   to those antitrust cases because of the -- there's even more

2   documents in those cases than there are in this case.  And so

3   we spend most of -- or I spend most of my time just basically

4   reviewing things on my computer in my office, that's my

5   practice of having to do that.  That's fine.  That's the life

6   that we have chosen, profession we've chosen to live.

7           But I would like to have -- this one really is very

8   important conceptually to get this thing on track for the

9   defense.

10          MR. PHILLIPS:  Your Honor, may I respond briefly?

11          THE COURT:  You may, although I'm not sure you guys

12  are necessarily disagreeing too much right now with each

13  other.  I mean, I think you're saying look, we don't think

14  under Rule 16 we're required to do this, but yet our

15  procedures are in cases with lots of discovery and evidence

16  that we work with them and give them more guidance.  And he's

17  saying I've got this antitrust they gave us, we need more

18  information, and I'm trying hold them to it.

19          This really strikes me as something that maybe if you

20  spend 30 days sort of articulating to me what you're able to

21  offer them or what you have offered them and maybe talk with

22  each other a little bit more about how you're going to -- how

23  you're going to provide things voluntarily, let's say, maybe

24  it might narrow a little bit of what the request ultimately

25  is.  Because what I heard from you, Mr. Gillen, is a little

1  bit narrowing or a little bit more softer than what you're

2  asking for here, which is identification of case-in-chief

3  documents prior to trial.  Which, you know, if I order that,

4  then it -- the effect of that is to -- there would be an

5  argument you'd make, you could make, that if they failed to do

6  that, they couldn't add later.  That would be hard for me in

7  an order to fashion an out, do you know what I'm saying?

8           MR. GILLEN:  The phrase good faith, these -- I have

9  faith in these two gentlemen that they will act in good faith.

10          THE COURT:  Okay.

11          MR. GILLEN:  And so if they say in good faith we gave

12  you this, but now we've looked at something else, we want to

13  add this, then, you know, these aren't strangers.  I know

14  them.  And if they tell me something like that, then I'm going

15  to accept that representation.  This has to do with good

16  faith.  I'm not asking this Court to freeze their

17  case-in-chief documents.  I'm asking for a good-faith

18  production so that we can try to get as well organized for our

19  defense as possible.

20          THE COURT:  Okay.

21          MR. PHILLIPS:  Your Honor.

22          THE COURT:  You can respond.

23          MR. PHILLIPS:  This is not a case where we have an

24  uneducated, you know, illiterate defendant.  This is a super

25  smart guy, which he'll tell you, and he knows more about the

1   witnesses who are involved in this case and the documents than
2   anybody.  He can easily go through all of 302s and say this
3   witness, that witness, and this other witness all have to do
4   with the P-Card.  Here's a group of witnesses that have to do
5   with the consulting for the Spectra project.  He knows that
6   better than anybody.  He knows those people on a first-name
7   basis.  And so the defendant doesn't need us to point them in
8   the right direction.  Their client is capable of doing that
9   better than anybody.
10          THE COURT:  All right.  Well, let me -- let me -- let
11  me get a response from you on that, and then I'll have that
12  teed up.  Let's see.  It looks like the only thing left is the
13  motion to -- for leave to file additional motions, which I
14  will grant, based on it sounds like the hiccups which are
15  not -- which are, you know, expected in the ordinary course
16  sort of technical problems and accessing and getting
17  discovery, so it's not -- not at fault by any means and you're
18  not alleging it, but it's just in any complex case with
19  electronic discovery, there may be hiccups, and that's fine.
20          So let me use the same 30-day marker.  Obviously, at
21  any point, you can file a motion for leave to file additional
22  motions if you run out of time if there's a showing that could
23  be made why you couldn't have made the motion before, but --
24  but let me give you for now the same 30-day marker that I'm
25  giving the government for responses.  And if at that point you

```
 1   feel that you need still more time you can obviously file that
 2   at that time.
 3           MR. GILLEN:  Thank you, Your Honor.
 4           THE COURT:  All right.  Any experts that the
 5   government anticipates using?
 6           MR. PHILLIPS:  No, Your Honor.
 7           THE COURT:  And any 404P that y'all anticipate,
 8   obviously, you're not required at this point to disclose that
 9   but if you anticipate anything, it would help us to discuss
10   it.
11           MR. PHILLIPS:  We don't.
12           THE COURT:  All right.  Anything else for purposes of
13   today?  Obviously, this won't be the last time we speak.
14           MR. PHILLIPS:  No, Your Honor.
15           THE COURT:  Okay.  All right.  Very good, well, we'll
16   be in adjournment and we will talk to you again on November
17   the 4th if not before.  In the meantime have a happy Columbus
18   Day, and Halloween, and debate watching or whatever, and -- or
19   leaf collecting, all various fall activities, college
20   football, I do have a bone to pick about the Clemson game that
21   went very badly but that's all I have.
22           MR. PHILLIPS:  Thank you Your Honor.
23           MR. GILLEN:  Thank you, Judge.
24           THE COURT:  All right.  We'll be in recess.
25
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

1            (Whereupon, the proceedings were adjourned at 10:59

2    a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REPORTERS CERTIFICATE

 2

 3

 4          I, Jana B. Colter, Official Court Reporter for the

 5  United States District Court for the Northern District of

 6  Georgia, with offices at Atlanta, do hereby certify:

 7          That I reported on the Stenograph machine the

 8  audiotaped proceedings held in open court on SEPTEMBER 14,

 9  2016, in the matter of USA V. JAMES G. MALONEY, Case No.

10  1:16-CR-00237; that said proceedings in connection with the

11  hearing were reduced to typewritten form by me; and that the

12  foregoing transcript (37) is a true and accurate record of the

13  proceedings.

14          This the 2nd day of December, 2016.

15

16

17

18                            _____
                              /s/ Jana B. Colter, RMR, CRR, CRC
19                                Official Court Reporter

20

21

22

23

24

25
```