1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
2                  ATLANTA DIVISION

3    UNITED STATES OF AMERICA,        :
                                      :
4    vs.                              :   DOCKET NUMBER
                                      :   1:16-CR-0237-AT-JSA-1
5    JAMES G. MALONEY,                :
                                      :   ATLANTA, GEORGIA
6            DEFENDANT.               :   MARCH 7, 2018

7

8      **TRANSCRIPT OF AUDIO RECORDED STATUS CONFERENCE PROCEEDINGS**

9          **BEFORE THE HONORABLE JUSTIN S. ANAND**

10              **UNITED STATES MAGISTRATE JUDGE**

11

12   APPEARANCES OF COUNSEL:

13        **FOR THE GOVERNMENT:**

14        JOHN RUSSELL PHILLIPS
          STEPHEN H. MCCLAIN
15        UNITED STATES ATTORNEY'S OFFICE

16

17        **FOR THE DEFENDANT:**

          CRAIG C. GILLEN
18        ANTHONY C. LAKE
          GILLEN WITHERS & LAKE LLC

19

20

21

       *MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED*
22                  *TRANSCRIPT PRODUCED BY:*

23   *OFFICIAL COURT REPORTER:*        *SHANNON R. WELCH, RMR, CRR*
                                       *2394 UNITED STATES COURTHOUSE*
24                                     *75 TED TURNER DRIVE, SOUTHWEST*
                                       *ATLANTA, GEORGIA  30303*
25                                     *(404) 215-1383*

1        **P R O C E E D I N G S**

2    **(Atlanta, Fulton County, Georgia; March 7, 2018.)**

3            THE COURT:  This is the case of the *United States of*

4    *America vs. James Maloney*, 1:16-CR-237.  We had scheduled this

5    today for a conference on the pending discovery matter, the

6    motion -- defendant's motion to compel for which the parties

7    have filed supplemental briefs since the last time that we've

8    met.

9            And so the agenda for today is essentially to discuss

10   this outstanding discovery dispute and, if possible, also

11   schedule the Section 6 hearings, which are the next step in the

12   CIPA process.

13           So are y'all ready to discuss all that at this point?

14           MR. PHILLIPS:  Yes, Your Honor.

15           MR. GILLEN:  Yes, Your Honor.

16           THE COURT:  All right.  So I've received -- and by

17   the way, we're here obviously in open court.  Unfortunately,

18   the court reporter who has the classified clearance is not

19   available at this moment.  Judge Totenberg -- she is Judge

20   Totenberg's court reporter -- has another hearing for which she

21   needs her -- for which Judge Totenberg needs the court reporter

22   this morning.

23           And so it is my hope and expectation from looking at

24   the papers that we don't have to get into that level of detail

25   to discuss these matters.  If we do, we'll have to, you know,

1    potentially put this off until the afternoon or some other

2    future time.  I just -- I don't have the court reporter here to

3    take up classified discussions if we needed to at this time.

4    So that is why we are here in open court.  We'll just have to

5    cross that bridge as we come to it.

6              But I've read all the papers.  It was not my sense

7    that we needed at least for purposes of oral argument here to

8    get into that level of detail.  But it is what it is.

9              So I've looked at the supplemental briefs.  What I

10   had asked was the -- for the Government to provide more

11   information about the criteria or parameters by which it

12   searched the relevant CIA files for potentially relevant

13   information in order to make an assessment of whether there was

14   any further searches or analysis for the Court to order needed

15   to be done.

16             Generally speaking, I think as I have already

17   commented that in the defendant's motion to compel to the

18   extent it was worded as, as most of it was, civil-type document

19   demands, any and all documents relating to various subjects,

20   was not something that was supported under the criminal rules

21   and that I would -- are not things that I would order.

22             But I did want more information as to the nature of

23   the search that was undertaken in order to assess whether that

24   was a reasonable search.  So what I -- the Government filed

25   Document Number 63, supplemental brief, to explain the nature

4

```
 1   of the search that was done.
 2            It is not the most extensive level of detail here.
 3   But if -- what I understand this to say is that the prosecutors
 4   personally reviewed the entire contract file that is dedicated
 5   to this contract, the D6308 contract and, in addition to that,
 6   asked the relevant director at the agency to undertake a search
 7   including an electronic search -- I'm assuming including of
 8   emails, but that is part of my question to you -- for documents
 9   specifically related to the defendant and co-defendants.  And
10   then the prosecutors personally reviewed those hits.  And then
11   from that population of documents that you-all reviewed, then
12   you've made -- you determined what to be produced here in this
13   case.
14            So let me ask:  First of all, generally speaking, is
15   that an accurate statement?  Do I understand correctly --
16            MR. PHILLIPS:  Yes, Your Honor.
17            THE COURT:  -- what occurred here?  So when you say
18   you asked the relevant CIA director to undertake the search,
19   did that include an electronic -- search of electronic records,
20   including emails?
21            MR. PHILLIPS:  Yes, Your Honor.
22            THE COURT:  Okay.  The -- and then you reviewed the
23   contract file in addition to the hits.  Can you give -- I
24   understand to some degree when you look at documents you are
25   making individual decisions -- but what criteria you applied in
```

1    determining -- when you looked at the materials in the contract

2    file and the hits that came from the CIA search, what criteria

3    you applied in determining what was relevant?

4         The supplemental briefs continue to simply say the

5    Government reviewed what came out of the search and produced

6    what was relevant.  But part of what I had asked before was

7    some explanation of objective criteria that were applied so

8    that I and the defense know what would have been deemed

9    relevant and not at least to a certain level of detail.  If you

10   could provide more of an explanation.

11        MR. PHILLIPS:  Sure.  When this case started during

12   the investigation, we obtained all of the relevant materials

13   from GTRI.  And so everything that we were able to get our

14   hands on that we believe had anything to do with the charges in

15   the indictment we produced in the unclassified discovery at

16   arraignment.

17        And so when we went to the agency to review their

18   file, there were some things that we had already seen that were

19   duplicative of what had already been produced.  And so we

20   didn't see a need to just produce another copy of that.  But

21   everything that was -- that was different that we hadn't seen

22   before that was in any way relevant to the charges in the

23   indictment or the contract that was provided to us we produced.

24        And in addition to that, I think it is extremely

25   important to keep in mind the context of what we're talking

1    about.  We interviewed the specific individuals that the

2    defendant named in his CIPA filings saying that these people

3    are people who have knowledge and information that would

4    support his CIPA defense.  We provided those 302s to the Court,

5    as well as to the defense.

6            And the bottom line is they say it is putting sand in

7    the gears, that this is a classic graymail defense.  So you've

8    got to keep that in mind.  You can't ignore that and act like

9    it is a normal discovery case.  Because what he's asking for is

10   something that doesn't exist.

11           And so it is important to keep that in mind because

12   that governs the universe of the things that are available for

13   us to produce in the first place.

14           But what we were provided that was relevant to the

15   case we have already produced.

16           THE COURT:  So, for example -- well, maybe let me ask

17   it maybe perhaps a better way.  With regard first to the GTRI

18   files, are there categories of things that you did not produce

19   as deemed to be irrelevant, or did you -- you are continuing to

20   say things like we produced what was relevant.  I'm trying to

21   get some explanation of what -- how you defined that as you are

22   reviewing these documents.  I thought maybe the better way to

23   ask it is:  What have you -- are there things that -- are there

24   categories that you withheld that are not relevant?

25           MR. PHILLIPS:  Sure.  Because of the relationship

```
 1    that the defendant had at GTRI.  He was an employee there for a
 2    long time.  He worked on various Government contracts,
 3    including contracts for the agency, which have nothing to do
 4    with the charges in the indictment.  So they have documents
 5    that pertain to other things that are simply not relevant to
 6    this case.  His --
 7              THE COURT:  They dealt with this contract?
 8              MR. PHILLIPS:  No.  His legitimate work on other
 9    projects for the Government and for this agency.  Antenna work,
10    for example.  That was his specialty.  Those aren't related to
11    the charges in the indictment.  So we didn't see any need to
12    produce that.
13              Just because he worked for GTRI and GTRI had a
14    relationship with the Government on other matters that are not
15    relevant, that doesn't have anything to do with this case.  And
16    so we didn't produce that stuff.
17              THE COURT:  Okay.  But if it related to this contract
18    and specifically the materials that were procured and the work
19    that was being done with those materials under this contract,
20    you would have produced those?
21              MR. PHILLIPS:  Right.
22              THE COURT:  Okay.  With regard to the contract file
23    maintained by the CIA, what is your understanding -- what were
24    you told about what sort of documents are maintained in that
25    file?  Is that just literally the executed contract documents,
```

1   or does that include all correspondence?  What is maintained in

2   that contract file?

3            MR. PHILLIPS:  What we saw was the contract documents

4   and some correspondence going back and forth between the agency

5   and GTRI concerning that.

6            THE COURT:  Okay.

7            MR. PHILLIPS:  And we provided that along with the

8   detailed 302s that explained the role of each of the people

9   that the defendant identified as somebody that he believes

10  would have knowledge or information that would support his

11  defense.

12           And so those people were interviewed in great detail

13  about what their relationship was with him, what their role was

14  in that contract, what his role was, and questioned about the

15  allegations in the indictment.  Do you have any information

16  that supports this charge?  Do you have any information that

17  supports, you know, this defense?  Things like that.  And we

18  provided all of that.

19           THE COURT:  So -- but you don't -- you can't say from

20  a -- you weren't told from a document custodian standpoint the

21  sort of information as a policy matter that one would expect

22  that contract file to have?

23           What I'm trying to get at is:  Does that include all

24  the correspondence with GTRI or anyone -- or internal with the

25  CIA about GTRI's work on that contract?

1          MR. PHILLIPS:  That is what we asked for, and that is

2     what we were led to believe they produced.  That is what they

3     told us.

4          THE COURT:  Okay.  Because that is not the way I read

5     your brief that you asked for.  What the brief says is you

6     asked for the contract file, which I mean --

7          MR. PHILLIPS:  I thought that is what you just said.

8          THE COURT:  All right.  Let me back up and ask again.

9     So is it your understanding -- were you told that the contract

10    file would include all correspondence relating to the contract,

11    whether with GTRI or -- whether with Mr. Maloney or others?

12    All correspondence -- all material correspondence representing

13    to that contract, the file has that?

14          MR. PHILLIPS:  There was correspondence in the file

15    that had nothing to do with the defendant.  Was I specifically

16    told it in those terms?  I don't recall anybody saying it that

17    way.

18          But I inferred based on what I saw that it

19    included -- it was that broad.  Because it included

20    correspondence from other individuals at GTRI on which the

21    defendant was not copied back and forth with the agency.  So

22    there were other people at GTRI who worked on that matter other

23    than the defendant.  And sometimes they had correspondence back

24    and forth.

25          THE COURT:  Okay.  And so the -- separately from what

1   was in the file, you asked for all correspondence or other

2   documents that mentioned the defendant's name?

3           MR. PHILLIPS:  We did.  And Social Security number

4   and email address and home address and telephone number and

5   business telephone number as well, as well as for the two

6   co-conspirators who pled guilty.

7           THE COURT:  What about GTRI more generally?  I mean,

8   what if a piece of correspondence didn't happen to mention

9   someone's name but said the folks at GTRI we understand are

10  buying -- you know, picking one of the items of electronics or

11  otherwise that are subject of the indictment -- we understand

12  they are buying a tennis ball machine tomorrow and --

13          MR. PHILLIPS:  It is my understanding that our

14  request and the prudential search that was conducted was broad

15  enough to include all of that.

16          THE COURT:  Because that -- that wasn't -- what you

17  say here was that you asked for any information pertaining to

18  defendant Maloney or either to his co-conspirators and that the

19  search included their names, date of birth, Social Security

20  number.

21          What that didn't suggest to me was that -- what that

22  suggested to me was if there was an email that maybe didn't

23  mention their name or birthday but said -- referred to it more

24  as the folks at GTRI or GTRI is doing this --

25          MR. PHILLIPS:  Well, Your Honor --

1      THE COURT:  -- and that wouldn't include -- that

2  search wouldn't include that email as a hit.  Is that not true?

3      MR. PHILLIPS:  What I said earlier, I think, is

4  extremely important to keep in mind.  The person who was in

5  charge of this contract at the agency told us that he reviewed

6  the indictment.  He understands what Maloney is alleging in his

7  defense because he reviewed the CIPA Section 5 notices.  And he

8  said it is all bogus.  And he said none of that stuff that he

9  alleges happened.  It is not true.

10      So on the basis of that, why would there be any

11  expectation that there is a document between somebody other

12  than the defendant at GTRI and the agency that says you can buy

13  a tennis ball machine when the person who is in charge of the

14  contract says that is ridiculous, that did not happen?

15      To me, that is good enough to say there is no

16  document like that because it is simply -- it is a made-up

17  story.  It is graymail.

18      THE COURT:  Okay.  What about more generally emails

19  that discuss the procurement under the contract what items were

20  being purchased and for what purposes?

21      MR. PHILLIPS:  It is my understanding that we've

22  provided all of that.  Everything that has to do with the --

23      THE COURT:  But what search was done that would have

24  captured that?  Because, like, what I'm concerned about is if

25  it didn't literally list one of their names or birthdays, which

1    I don't know that it always would if it is worded as saying,

2    for example, here is what the folks at GTRI are purchasing, or,

3    here is the list of things, or, here is what we know they are

4    working on, or anything that reflects knowledge that they are

5    working with or buying some of these items.  If it doesn't

6    mention their birthday or Social Security number or name, then

7    why do we think that would have been captured in this search?

8            MR. PHILLIPS:  Because it is my understanding based

9    on the conversations that we had and what we asked about and

10   what we provided, here is the indictment, here is the CIPA

11   Section 5 defense, do you have anything that pertains to that?

12   And the answer was it doesn't exist.  But we also were told

13   here is the contract file.  Here is everything that governs

14   what actually happened between GTRI and the agency.

15           THE COURT:  But that is where I asked what your

16   understanding is of what is maintained in the contract file

17   and --

18           MR. PHILLIPS:  But if you're asking --

19           THE COURT:  What you said was that there were some

20   emails.  Like, what I was looking for is is there a -- I mean,

21   a policy that gives us some comfort about knowing what is

22   maintained and what is not so that we know, for example, if

23   there is material emails about the execution of the contract

24   that they are supposed to be in that file, that would give me

25   more comfort that looking at that file is the population of

1    potential documents.  Do you see what I'm saying?

2          But saying there were some emails doesn't tell me

3    why -- is that a reliable source of all emails on that subject?

4    I don't know.  That is why I am asking.

5          MR. PHILLIPS:  Well, if you're asking me was there a

6    checklist that said, does this file include all of the emails,

7    all contract documents, et cetera, et cetera, all down the

8    list, I never saw a checklist like that.  And to my knowledge,

9    there isn't one.

10          But based on the context of the conversations, the

11   things that were said, they certainly led me to believe that

12   they were giving me everything that they had that was relevant

13   to the issues in this case, period.

14          THE COURT:  Okay.

15          All right.  Mr. Gillen?

16          MR. GILLEN:  This is the real problem that we have

17   here.  They go to the CIA and they say, gee, do you have

18   anything?  Oh, no, no, Mr. Government, we think that

19   Mr. Maloney's -- Dr. Maloney's position is false.  And

20   therefore it is all made up.  Sand in the gears.

21          What we have done with incredible specificity is we

22   have -- and terms -- you know, we are somewhat handicapped here

23   in terms of talking around this issue, particularly on the

24   motion to compel, candidly.  And I want to make some general

25   comments.

1        But if we need to bear down into this with more
2  specificity, I would ask the Court to reschedule a hearing next
3  week on where we can -- where we can talk about our motion to
4  compel the detail and our supplemental pleading in light of
5  their one-and-a-half pager that was public.  We had to file
6  under seal for the reasons that would be obvious in terms of
7  the Court's reading our filing.

8        But to have them say no, no, we have decided that
9  Dr. Maloney's defense is meritless, therefore we are not going
10  to do any more -- what we have done is we have said, all right,
11  these are the projects -- this is -- you know, 6308 is one
12  thing.

13        What Dr. Maloney was doing in terms -- under the
14  umbrella of what he was directed to by the CIA is the relevant
15  part of this case.  We have put the Government and we have
16  given the Court extremely detailed notice of very specific
17  projects, of very specific things, and of very specific people.

18        And to come into court and to sit here and say, oh,
19  don't worry about it.  We didn't really do any more than our
20  page-and-a-half notice in terms of -- and they assured us.  I
21  feel so much better now knowing that the CIA has assured us
22  that the defense's position is meritless.

23        Well, I'm sorry.  That doesn't get it for us.
24  Because what we did is we have put them on notice and they have
25  not to my knowledge -- I think the relevant question should be

1    from the Court to the Government is:  You got this -- this

2    motion to compel.  Did you do anything with it?  Did you go

3    back to them and say, what about this project, that project,

4    this project, that project?  Was Dr. Maloney on that?  And if

5    so how, how did that -- what impact or under what umbrella were

6    these projects done?  And if they weren't under 6308, then what

7    were they done under?  Do you think they were doing it for fun

8    and for free?  How does he know about these projects if they

9    aren't related to 6308?

10           Listening to what the CIA has to say about this, it

11   causes me great trepidation not only as defense counsel but,

12   frankly, as an American citizen for them to flippantly give the

13   back of their hand, turn over a couple of documents, and say,

14   that is all that we have.  And by the way, we think it is sand

15   in the gears.  And therefore take our word.  Take it back to

16   court.  And he is not getting anything else.

17           When we have given to them dozens of specific

18   projects and dozens of names, to my knowledge they have done

19   nothing with.  So if we need to drill down into that -- and the

20   reason why I would ask that it not be this afternoon,

21   frankly -- I think I'm free all next week.  But my family is

22   waiting -- and this is a personal matter, but I'll just tell

23   you.  My family is waiting for me to get out of this hearing to

24   go back, and we are driving over to the coast for my

25   father's -- my father's -- we're all getting together for his

1    93rd birthday, which is actually on Friday.  But we're having a

2    family dinner this evening.  I would rather not do it this

3    afternoon.

4          I would like to -- if the Court feels it is necessary

5    to get into the written components of what we have done on our

6    motion to compel, let's do it.  Let's spend as long as

7    necessary to do it.  And let's do it in a classified

8    environment so that we can talk specifically.

9          Here we are handicapped by talking in generalities

10   about the assurances that we received from the CIA that there

11   is nothing more.  It is kind of like, you know, the old, you

12   know, comment about someone going by a wreck, "Nothing to see

13   here, folks.  Just keep moving."  That has been their attitude.

14         Have they done a single thing to go back with all of

15   the specificity that we have given to them on the projects and

16   on the individuals?

17         THE COURT:  Let me ask this though.

18         MR. GILLEN:  No.

19         THE COURT:  If -- irrespective of the names of the

20   particular projects, they, what I'm hearing, have reviewed the

21   contract file, which is the contract at issue here and done a

22   search -- had the CIA do the search and then they reviewed the

23   hits of the search -- that was partially subjective.  I'll give

24   you that.  In other words, saying anything you think, CIA, is

25   relevant to these charges.  But also partly objective.  In

1   other words, anything in your files that relates to the

2   defendant or the co-defendants or co-conspirators and then they

3   reviewed those themselves.  And so if there was a document

4   under Project A or C or D or whatever that referenced

5   Mr. Maloney, what I'm hearing is that that would have been

6   manually reviewed not just by the CIA but by the prosecutors.

7   And I can only presume -- and I think Mr. --

8                MR. GILLEN:  Phillips.

9                THE COURT:  I was going to say Vineyard because of

10  the Russell -- Mr. Phillips.

11               MR. GILLEN:  You have been promoted to judge.

12               MR. PHILLIPS:  Getting a status.

13               MR. GILLEN:  Yeah.  Exactly right.  We're having the

14  robing ceremony this afternoon.

15               THE COURT:  Mr. Phillips confirmed that -- that if

16  there was something along the lines of reflecting the CIA's

17  knowledge or understanding of any procurement of -- and I used

18  the tennis ball machine as an example -- but procurement or use

19  of any of these items that are the subject of the indictment

20  then that would have been produced, whether the -- regardless

21  of the project specifically under which it was done.

22               So why wouldn't that be -- why wouldn't that be

23  sufficient?

24               MR. GILLEN:  Well, it is not sufficient because what

25  they have done -- the CIA, it sounds like they have got a file

```
 1   about that -- about an inch or two thick up there on 6308,
 2   which -- but -- and they go, this is all we have.  But --
 3              THE COURT:  They searched beyond that file --
 4              MR. GILLEN:  But --
 5              THE COURT:  -- for documents relating to the
 6   defendant and the co-conspirators is what their representation
 7   is.
 8              MR. GILLEN:  We -- the co-conspirators we have said
 9   from jump street had very little to do with the classified
10   component of 6308.  You can look at their time sheets.  They
11   spent very little time at all on it.  They are really, frankly,
12   irrelevant.  And whether they pled guilty or not, that is their
13   problem.  But they really are irrelevant to the classified
14   nature of this proceeding.
15              How do we know about -- I mean, doesn't it cause one
16   to wonder how Dr. Maloney would know about all these specific
17   projects that he asserts to the Court that he worked on under
18   the umbrella of dealing with them and then this loosey-goosey
19   way that they handled 6308?  How would he know about these
20   projects?  Do they exist?  Yes, they do.
21              But what the CIA is saying is, oh, no.  Just look at
22   our little file here.  And what has happened here -- how
23   difficult would it be -- how difficult would it be for the
24   Government to actually do what we think is the right thing and
25   to go to them and say, look, here is their motion to compel.
```

1    Do you have a project named A, B, C, and D?  Do you have a
2    project named --
3              THE COURT:  But suppose they do.  What does that --
4    what does that -- does that mean that what is in there is Brady
5    or discoverable?  No, it would still have to relate to
6    procurement of items or the sort of items that are covered by
7    the indictment.
8              MR. GILLEN:  Well, what it means -- what it would
9    mean is this:  If they have the project -- they just said they
10   have run everything that had anything to do with Dr. Maloney.
11   Well, why -- if he is involved in those projects, query, why
12   wouldn't those projects have been identified during the
13   perfunctory review that the Government has outlined in its
14   page-and-a-half notice?  Why wouldn't we have heard about them?
15   If they did a search on Maloney, then all of this should have
16   been -- should have been revealed.
17             Our position is that they were -- they were directing
18   and allowing Dr. Maloney to do a number of different things
19   under their rubric of 6308.  And so for them to say -- they
20   come in and they say, well, under 6308, we have given you
21   everything.  And, you know, we have run his name and his Social
22   Security number.  And that is about it.  Nothing else.  Keep on
23   moving, folks.  Nothing to see here.
24             But if he were involved in all the projects that we
25   have named, which we believe are relevant to this indictment

1    and relevant to 6308, then their query should have triggered

2    that discovery.  And if it doesn't exist, why won't they come

3    into court and say as to Project 1, 2, 3, doesn't exist.  As to

4    Project A, B, C, and D, maybe that exists, but we don't know

5    how he knows about it.  He didn't have anything to do with

6    that.

7              We have been so specific.  They have been generalized

8    and flippant in my opinion.  When I say flippant, I don't mean

9    the prosecutors.  I mean the CIA.  They have been apparently

10   flippant in their -- in their -- the way that they have handled

11   the inquiries.

12             Remember how we started out here in this case way,

13   way back when when we indicated and notified to the Court that

14   this case would involve classified information.  What was the

15   Government's response?  Do you remember?  I do.  The response

16   was there is no classified information involved in this case.

17   We have been assured of that.  It doesn't -- there is no

18   classified information involved.

19             And only after we pushed, then suddenly, oh, well

20   maybe this and maybe that and maybe -- yeah, maybe now we need

21   to have classified proceedings.  We started out.  And, again,

22   all these gentlemen can do -- and they are fine professionals

23   and honorable men.

24             THE COURT:  He is a judge after all.

25             MR. GILLEN:  Yeah.  I know.  That is why I'm being so

1    kind to him now, and I'm going to laugh at all of his jokes.

2         But all they can do is tell you what they have been

3    told.  And I understand that.  But what they have been told and

4    what was told to the Court -- and I don't have the transcript

5    of when we started this journey.  But it is around somewhere.

6    And I can -- and my general but not specific recollection is we

7    were assured by the prosecution in this case there was nothing

8    to do with classified information.  That is the first step on

9    the journey.

10        THE COURT:  To some degree though aren't I also

11   limited to what I'm told?  I mean, I can ask specific questions

12   and try to make an assessment of what -- whether a reasonable

13   search has been done.  But aren't I also limited to the

14   representations I get in that regard without proof otherwise?

15        MR. GILLEN:  Well, what you are not limited to is we

16   have a motion to compel saying we think the following

17   individuals and the following projects are relevant.  And so

18   you are not in our view limited to say, fine, Mr. Government,

19   tell us.  Respond to the motion to compel.  It is granted.  I

20   want to know the names of the individuals, who they are, were

21   they involved in the following projects.  Tell us yes or no in

22   writing whether or not these projects exist or don't exist;

23   whether or not these people -- and many of whom came up -- a

24   lot of people that we noticed and our motion to compel asked

25   for additional information on have come from reviewing

1   materials that have been produced to us pursuant to this CIPA

2   proceeding and process.

3           And so all we're doing to a large extent is taking

4   information that has been -- that has been produced back to

5   step one that we were assured, you know, didn't involve

6   classified information.  And now, yeah, now maybe it does.

7           So we know that whoever was representing to these

8   gentlemen in this courtroom that this had nothing to do with

9   classified information -- that was inaccurate.  Why they did

10  it, who they did it -- they never did it from a witness stand.

11  They never did it in this courtroom.  They have never -- they

12  have never -- I have never seen an affidavit.

13          All we get is the 302s assuring us flippantly that it

14  is all -- the defense is a bunch of nonsense.  Why doesn't the

15  Court, I ask, grant our motion to compel?  Tell them, you go

16  back to the CIA, and we want answers.  Do these people exist?

17  Were they working on these projects?  Do these projects exist?

18  Was Dr. Maloney involved in these projects?

19          And then we'll -- rather than -- then we'll have an

20  answer that we can deal with in terms of whether or not -- and

21  how that is relevant or not relevant to the defense in this

22  case.

23          But right now, I mean, it was in a way -- reading the

24  procedure that the Government outlined in terms of what it has

25  done in its page-and-a-half notice confirmed to us our worst

1  suspicions, that virtually nothing in any depth or any detail

2  has been done.  It confirmed at least to me that our motion to

3  compel hasn't even been specifically addressed item by item and

4  name by name with the intelligence community.

5       And, again, without getting into any -- you know, our

6  motion to compel deals largely with the CIA but not exclusively

7  with the CIA.  They have -- the Government has chosen

8  unilaterally to make a determination that any other inquiry is

9  irrelevant and they are not going to do it and haven't done it.

10      So yes, Your Honor.  You can tell them we need to do

11 this the right way.  Because we remember, Mr. Government, how

12 we started down the road when you assured the Court there was

13 no classified information relevant to this case.  And we have

14 come a long way since then.  So --

15      THE COURT:  Well, I don't know that they would agree

16 even today there is classified information relevant to this

17 case.  I think that is yet to be argued.  I think their

18 position is very little, if any, is ultimately relevant to the

19 case.  But that is for a Section 6.

20      MR. GILLEN:  Well, we all remember what was said when

21 we started down -- you know, we don't need to go -- we don't

22 need even to have any of the CIPA proceedings.  We don't need

23 to have any of that.  We don't need to have any background

24 checks.  We don't need to have clearances.  We don't need that.

25 It is all irrelevant.

1          I think that I'm correctly summarizing what was

2     represented to the Court.  If I'm not, then I can stand

3     corrected.  It is my general but not specific recollection that

4     that is exactly what was said.  If I'm wrong, then the record

5     speaks for itself.  But I think I'm right.  And what -- what --

6     you know, I know that -- and, frankly, everyone in this room --

7     I think we disagree on a lot of things.  But we do agree on one

8     thing I hope.  And that is that we all believe that the work of

9     the intelligence community is vital, vital to the security of

10    our nation.  Everyone on the defense believes that.  And I know

11    everyone in the Government does.

12          That -- having said that, I also hope and believe

13    that everyone agrees that because this is a criminal

14    proceeding, that this is an indictment brought by the United

15    States Government specifically as it related to 6308, that the

16    due process considerations afforded to the defense are also

17    highly relevant and necessary to the administration of justice

18    in this -- in our country.

19          So I don't want the intelligence community -- I'm not

20    here to bash the intelligence community.  I'm thankful that we

21    have a strong intelligence community.  But I don't want the

22    intelligence community to simply give the back of its hand to

23    our specific request that we have made by saying, well, no, it

24    is meritless, and we don't -- we think everything he said is

25    nonsense.

1          Let's get what they have and get it in writing one

2     way or the other or have them come down and testify in a

3     hearing about what they have done and not done.  We have heard

4     nothing from them other than representations which have been

5     made to them to the Department of Justice representatives.  And

6     that is all that we have.  So I think we deserve more.

7          And if the Court needs for us to go in more detail,

8     then I would welcome that opportunity and think we should

9     probably do that.  This motion to compel is very important.  We

10    can just go wherever we need to go.  I would also, as I

11    mentioned earlier, hope that we don't have to do that this

12    afternoon for personal reasons.  I think I'm wide open next

13    week.  And we can come back and roll our sleeves up and go

14    wherever we need to go and get down into the details about why

15    this motion to compel should be granted and not summarily

16    dismissed by the intelligence community and the Department of

17    Justice.

18          MR. PHILLIPS:  Your Honor, may I respond very

19    briefly?

20          THE COURT:  Yes.

21          MR. PHILLIPS:  Your Honor, the reason D6308 is the

22    contract that is relevant in this case and not these other

23    contracts that the defendant worked on is because D6308 is the

24    contract that involved the testing of the small electronic

25    devices, like iPods and laptops, things like that.

1            And so our theory is -- and we believe we have

2    evidence to support this -- that the reason the defendant

3    purchased these items and then billed them to D6308 is because

4    they were substantially similar to the things that he was

5    legitimately working on.  He bought some Apple computers and

6    iPods for legitimate work on D6308.  But then he went beyond

7    that and bought those same types of items for personal use.

8    And that is what is detailed in the indictment.

9            When Mr. Gillen says, you know, how would he know

10   about these other contracts if they are not related to D6308?

11   That is conflating two separate issues.  The other contracts

12   that the defendant worked on in his area of expertise in

13   antennas didn't require the defendant to buy small electronic

14   devices like iPods and laptops.  It had nothing to do with

15   that.

16           So that's the reason we believe those other contracts

17   are irrelevant.  They have nothing to do with the charges in

18   the indictment.

19           THE COURT:  But let me just make sure I understand

20   though.  You -- what you asked the CIA to gather and give to

21   you for your review would have included anything not limited to

22   just D6308 that related to the defendant or the co-defendants;

23   correct?

24           MR. PHILLIPS:  Social Security number, name, address,

25   telephone number, and so forth.

```
 1              THE COURT:  So if it --

 2              MR. PHILLIPS:  Broadly.

 3              THE COURT:  If it related arguably to a different

 4   project that didn't come under in your view the umbrella of

 5   D6308 but yet it mentioned Mr. Maloney's name, that would have

 6   been included in the objective criteria that you asked the CIA

 7   to gather and give to you; correct?  Is that right?

 8              MR. PHILLIPS:  First of all, the defendant doesn't

 9   even allege that these other contracts that he worked on

10   required him to buy and test small electronic devices.  He has

11   never made that allegation.

12              THE COURT:  Well, let me just get an answer to my

13   question first.  So am I right that would have been among what

14   you had asked the CIA to gather for you and that you would have

15   then reviewed?  If it -- if it related to his name or for that

16   matter -- although I don't know how much that would have added

17   Mr. Fraley's or Mr. Acree's name -- and you would have expected

18   based on what you asked the CIA to search for and give to you

19   that that would have been among what you looked at regardless

20   of whether that particular email related specifically to D6308

21   or some other project; is that correct?

22              MR. PHILLIPS:  I was told -- I was told what we put

23   in the supplemental brief that we filed is accurate.  Because

24   that is the way it was told to me.  That they searched for his

25   name, address, telephone number, and Social Security number
```

1    broadly.  And they said we have very little information that is

2    responsive at all.  And here is the file -- the contract file

3    on D6308.

4              Remember, most of what we found was unclassified.

5    There was very little material that was classified.  And none

6    of it was at the top secret level.  A small amount of it was at

7    the secret level.  We produced that.

8              But in addition to interviewing the specific

9    individuals who were in charge of this contract, who were in

10   charge of the money that the Government paid to Georgia Tech,

11   to GTRI, and this defendant, we interviewed those people.  And

12   they said nothing like that what he is alleging took place.

13   That is a fantasy.  It did not happen.

14             That is also supported by the fact that, Your Honor,

15   we produced a transcript of the recorded co-conspirator coverup

16   meeting where the defendant and his two convicted

17   co-conspirators said this is how we're going to get around

18   this.  We're going to bill this to D6308, and it is a

19   classified contract, and nobody can ask any questions.

20             THE COURT:  In asking those questions to the relevant

21   folks at the agency, did you make specific reference to the

22   individuals and the names of the projects that the defendant

23   had listed in his Section 5 notice?

24             In other words, he's made reference to X, Y, Z.  Does

25   that ring any bells as to whether that also involved

1    procurement of small electronics or whether there was anything

2    that he would have been purchasing these materials for?  Did

3    you make specific reference to those matters in asking that to

4    those people?  Or was it just put more generally, here is the

5    indictment.  Is all this true?

6              MR. PHILLIPS:  I know from being present during those

7    interviews that the person who was in charge told us that the

8    contract that dealt with the issues that are involved in our

9    indictment is D6308.

10             THE COURT:  Okay.

11             MR. PHILLIPS:  That does not mean that the defendant

12   never worked on any other matter that might have been related

13   to a CIA contract.  But it had nothing to do with buying and

14   testing small electronic devices like the ones described in the

15   indictment.

16             This contract that is referred to in the indictment

17   is the one that covers all of that.  And we talked to the man

18   who was in charge, who also has a Ph.D. in electrical

19   engineering from Georgia Tech at the same time Dr. Maloney got

20   his, and they were friends, and he knows him personally and

21   said it didn't happen.  He is putting sand in the gears.  It is

22   bogus.

23             THE COURT:  Okay.  Just give me a second here.

24             **(There was a brief pause in the proceedings.)**

25             MR. GILLEN:  Your Honor, if I may just add one point.

```
 1              THE COURT:  Sure.
 2              MR. GILLEN:  Without getting into different names,
 3    you know, part of our specific -- our additional motion to
 4    compel has to do with production of additional -- I don't want
 5    to say diaries but notebooks from a particular individual.  I
 6    believe that individual indicated that he had -- that he was
 7    communicating via emails.
 8              We don't have any of those emails from that
 9    individual.  And a lot of our supplemental notice and our
10    motion to compel actually come from our initial request
11    regarding that individual.  We never had that before we made
12    our request.
13              And if you look at -- and if you look at what that
14    gentleman was saying, I believe that there is a reference in
15    there to communicating via emails.  We don't have any of those
16    emails.  And again to state what should be the obvious and that
17    is, if they say, well, we ran all these tests on the Social
18    Security number, on the phone, on the address, and all that,
19    and this is all we have, can that possibly be true?  When we
20    are saying no, we want you -- because in our view all of this
21    is relevant to this case.  But did this project -- does it
22    exist?  Was Dr. Maloney working on that project?  And if so,
23    they can say yes or no.
24              And you know what?  If he was, I submit they should
25    be able to produce a supplemental or an additional contract
```

1    that would cover that work.  Because if not, then what they are

2    really saying is, well, yeah, he was doing this work.  But we

3    didn't have a -- we didn't really have any other contract with

4    him because we were really paying him under 6308.

5            But what they want to do is they want to come in to

6    court and say no, no, our 6308 file is just right here.  And we

7    have run these tests.  And one worries about the competency of

8    the computer system at the CIA if they come up with this paltry

9    production and they don't have the emails referencing the --

10   the discovery that was actually given to us.  And they don't

11   have him popping up in these other, you know, dozens of

12   projects that we have listed.

13           How can that be?  I mean, are they -- are they not

14   running their computers correctly?  Are they doing things off

15   the book where they don't -- they don't have anyone in their

16   computer because they are working on these projects and being

17   paid under 6308, which is, you know, frankly I think probably

18   the way that it was working?

19           But, you know, if they have got -- if they say, well,

20   you know, Mr. Gillen, you noticed up the Project A, B, C, and D

21   and here is the -- here is a contract that we have for Projects

22   A, B, C, and D.  And that is what Dr. Maloney was doing.

23           But they don't seem to have that.  So that -- their

24   nonresponse and their inability to produce that kind of

25   material, frankly, supports our position about how they ran

1  6308.

2       So, again, if we need to go into deeper more

3  specifics on this, which is an important matter, again I would

4  ask the Court do it, you know, at a closed session sometime

5  next week when I return from Charleston.

6       THE COURT:  It is not my belief that we need to do

7  that at this time.  I mean, I have reviewed all the materials

8  including the filings that have been made on the classified

9  basis.

10      The way I see it is this:  The particular projects

11  that are named are not inherently relevant simply because the

12  defendant was involved in some capacity.  The relevance comes

13  from there being some relationship to the charges in the

14  indictment meaning that there was procurement of particular

15  devices for purposes of work to be done for the CIA, whether

16  under the name of a particular project or not.

17      And so the majority of the defendant's document

18  requests -- I mean, that is how I refer to it.  It is styled as

19  a motion to compel, but it reads more like a document request

20  in a civil case where -- reads as any and all documents

21  relating in any way to the following matters naming individual

22  projects or individuals or things of that sort.

23      And that is significantly overbroad in the context of

24  what is allowed in criminal discovery.  Because, again, the

25  relevance of files does not turn on the fact that the defendant

1    may have had some involvement in a particular project.  It

2    becomes relevant and particularly arguably Brady information

3    only if it relates much more specifically to the matters that

4    are alleged.  I'm not identifying this as the only thing that

5    would potentially be Brady.  Brady is to some degree in the

6    eyes of the beholder.  You have got to look at it and make an

7    assessment.  You cannot predict ex ante what is all going to be

8    there.

9           But the quintessential example of what I could think

10   of would be an email that involved -- to Mr. Maloney or

11   involving Mr. Maloney or that even just refers to the CIA's

12   knowledge that Mr. Maloney or the others at GTRI are purchasing

13   and working on these particular devices.  They are aware that,

14   for example, but not limited to, the tennis ball machine is

15   being procured.  And/or that he is working with a tennis ball

16   machine for a particular purpose.  That is an example.  The

17   tennis ball machine is but one example.

18          But the idea being correspondence or documents

19   reflecting the knowledge that the defendant or the others at

20   GTRI are engaged in work that involve the use of this equipment

21   and the purchase and procurement of this equipment.  Whether

22   that is under the specific auspices of 6308 or an email subject

23   header that says project so-and-so and then it is debatable

24   whether, well, was that part of 6308 or not or did someone

25   perhaps -- is there a misunderstanding of whether that is part

1   of 6308 or whether, as Mr. Gillen puts it, he was told to bill

2   everything under 6308 even though it may not technically have

3   been -- to me, the project is less important -- the project

4   name than the subject matter of the email.  Does it reflect

5   knowledge or even more directly constitute a communication with

6   the defendant, knowledge that he was working with or constitute

7   a communication with him directly telling him to procure or

8   work with particular items for particular purposes.

9          So it is not pertinent and warranted in my view to

10  simply produce all of the files relating to any of these

11  projects or to go through in interrogatory style and say

12  one-by-one we have confirmed the existence of these projects

13  and here is what the details were.

14         The inquiry in my view is:  Is there evidence in the

15  CIA's files that they knew that GTRI was procuring and/or

16  working with these devices for particular purposes?  If so,

17  that is arguably -- I don't know if it would be Brady or

18  relevant or not.  I mean, that is something that I would have

19  to look at and assess.  But it would be within that cone of

20  seeming to be -- at least arguably relevant in the case and

21  potentially supportive of a defense.

22         And that is what I'm looking for in terms of was a

23  reasonable search done to gather and identify those documents

24  to the extent they might exist.  None of us can whether it is

25  similar criminal discovery necessarily obtain or know for sure

1    that we have everything.  It is a question of doing a

2    reasonable search to get the population of documents that need

3    to be reviewed and then have people who are knowledgeable of

4    and responsible for the legal issues and the discovery

5    decisions in this case being the ones to look at those.

6         I think the CIA obviously can implement an objective

7    search.  Give us documents that meet these hits.  But it

8    ultimately falls to the prosecution team, the folks who know

9    the case better, and the law on this subject as to what is and

10   what is not discoverable to actually make those hard decisions.

11   So I mean, those are the principles that I see here.

12        Looking specifically at the issues, certainly the

13   prosecutor is looking at the contract file that is the contract

14   at issue here is important.  And that was I'm being told done.

15   I think it is important to search beyond the contract file in

16   the CIA's files, including electronic files, to make sure that

17   we've done what we can -- what is reasonable to identify

18   correspondence or other documents that fall under the

19   categories I have described before that may or may not have

20   been filed physically with the contract file, in part because I

21   heard from Mr. Phillips that he doesn't know for sure what

22   criteria was used in actually deciding what email or piece of

23   correspondence goes into the contract file or not.

24        Is that everything, or is it just something --

25   someone decides this one maybe should get put in and this one

1   shouldn't and there is no real rhyme or reason.  We don't

2   really know the answer to that.  We don't have a definitive

3   word or affidavit from the document custodian at the CIA to say

4   this is the policy.  This is how the file is maintained.  If we

5   had that, that might be more helpful.

6       But what I'm hearing is the Government didn't just

7   rely on the contract file.  They asked the CIA to go beyond

8   that.  And part of that was subjective.  In other words,

9   explaining to the people that are knowledgeable about the

10  projects and the documents therein what the defendant is

11  generally alleging is his defense as it has been articulated in

12  the Section 5 submissions and asking their reaction to what may

13  be relevant in the files and the reaction to that generally

14  being there is nothing because it is all sand in the gears.

15      I agree with Mr. Gillen that that wouldn't be a

16  sufficient search.  But it was a necessary part of it.  In

17  other words, going to the people that are knowledgeable about

18  the facts and running by them the specific defenses to see what

19  they -- what guidance they can give, that was an important step

20  to be done, not sufficient.

21      But what I'm hearing is that the Government also had

22  an objective part of the document search process, which was to

23  say give us all documents electronic and otherwise that

24  reference -- that relate to Mr. Maloney by name, address,

25  Social Security number, et cetera, as well as the

1    co-conspirators and that they personally then reviewed the,

2    quote-unquote, hits.

3           And what is being represented is the way the criteria

4    by which that was asked and gathered was not limited

5    specifically to the 6308 contract but rather any documents

6    within that director's possession, for example, any emails that

7    would have hit Mr. Maloney's name.  So whether it related

8    specifically in someone's view to 6308 or to Project X, Y, Z or

9    otherwise, what I'm understanding is would have been hit in

10   that search and reviewed manually by the prosecutors, those who

11   are knowledgeable about the issues in the case and the legal

12   standards of discovery.

13          So all of that is a, I think, generally viable

14   approach to this process.  I do think we need a little bit more

15   concreteness about whether all those assumptions I just stated

16   really are true.  Was that the scope of what the CIA actually

17   searched for?  All documents, emails relating to Mr. Maloney's

18   name, whether they believe specifically related to 6308 or not.

19   And I believe that the search -- I'm not sure it is quite

20   enough to just have it be by his name.  Because I'm envisioning

21   the possibility of an email that would have referred to GTRI

22   but not to Dr. Maloney personally or to the others.

23          So, again, the hypothetical smoking gun Brady

24   email -- I'm just hypothesizing this -- they are going out and

25   getting a tennis ball machine so that they can do X, Y, and Z

1    steps to it, that could have easily been written as to, say,

2    the folks at GTRI or GTRI is doing this and were -- may not

3    have used Dr. Maloney's name personally.  But yet that email

4    would be pretty helpful to his defense obviously.

5            Now, I have no idea.  It is speculative whether that

6    exists.  And the folks that the Government has interviewed say

7    that is hogwash.  But Mr. Gillen is generally correct that just

8    because the witnesses say that is hogwash doesn't necessarily

9    completely absolve the Government of the need to kick the tires

10   on whether there would be some documentary support or evidence.

11   And it wouldn't be the first time, of course, that a witness

12   thinks of something some way but there is an email there that

13   at least could be read in a certain way to support the case.

14           And the witnesses are not knowledgeable about the

15   legal standards of Brady and may not be always understanding or

16   thinking about whether something that may be written may be --

17   even that could be interpreted a certain way even if not in the

18   witness' view really meaning it that way that that could be at

19   least arguably Brady.

20           So the bottom line is I'm generally comfortable from

21   what I have heard with the structure of what the Government did

22   here, which is to say we looked at the contract file for this

23   contract.  We interviewed the relevant people and presented to

24   them the theories that the defendant is alleging and got their

25   feedback about whether and, if so, where evidence would be to

1     support that.  Their feedback was there was nothing.  And then

2     did the objective search.  Asked the CIA to gather files that

3     my understanding was not limited specifically to 6308 but would

4     have broadly -- more broadly picked up hits that discussed

5     understanding of procurement and use of electronic items along

6     this -- or the other issues that are in the indictment

7     regardless of whether it was specific under 6308 during the

8     time frame of the indictment.

9            So I would like -- and it may be that the Government

10    needs to go back and just confirm these things.  But get an

11    assurance that what I have just described is what has happened

12    and I do think we need to broaden the objective search, the

13    hits, the search terms, if you will.

14           I'm not quite comfortable with it just being name and

15    Social Security number literally of the defendant and the

16    co-defendants.  I think it has to be more broader because of

17    that -- if there is someone in the agency that knew and sent an

18    email reflecting knowledge that they were working on -- I keep

19    using the tennis ball machine.  I'll keep using that because it

20    is in a way the most extreme item alleged in the indictment.

21    Then whether it mentioned his name or not sounds to me like

22    Brady or potentially Brady, I mean, depending on exactly what

23    is said.

24           So I think what I would like -- I'm going to deny in

25    large part but grant in part at least the motion to compel.

UNITED STATES DISTRICT COURT
OFFICIAL CERTIFIED TRANSCRIPT

1    And I'm going to issue a written order in part because I want

2    to also discuss the legal issues with regard to going outside

3    the particular agencies that are represented as part of the

4    prosecution team, which I am -- and I think I mentioned

5    before -- denying that.  But I want to explain that as a legal

6    matter.

7           But -- so I'm going to issue my ruling in writing.

8    But what I'm going -- what I'm asking the Government to do is

9    provide a more concrete verification of the nature of the

10   search that was done and broaden it in terms of the search

11   terms.

12          I can't micromanage that in terms of specific terms

13   because I don't know the case as well.  I mean, I'm relying on

14   the folks, whether it is at the Government or the CIA or

15   certainly suggestions from the defendant, about what would be

16   the pertinent terms to use.

17          But it would strike me at a minimum that not just

18   communications involving Mr. Maloney -- Dr. Maloney but GTRI

19   more generally would be among the things that should be

20   personally reviewed.

21          MR. PHILLIPS:  I understand.  I will do that.  I'll

22   go back and make sure that the search is broad enough to

23   include any correspondence or communications of any kind

24   between GTRI and the agency pertaining to the purchase or

25   testing of the types of electronic devices and other items that

1    are described in the indictment.

2          THE COURT:  And I think within the agency.  Not

3    just -- not just with GTRI.  But within the agency reflecting

4    knowledge of the procurement and use of the products.  Because

5    that would strike me as potentially Brady too.  If there is --

6    from, you know, Joe Schmo to whoever.

7          Obviously I'm not good with names even though I have

8    known you for many years.  I called you Russell Vineyard.  So

9    I'm going to be embarrassed about that for a long time.

10          But from Joe Schmo to Jane Schmo down the hall in the

11    CIA saying, I spoke to so-and-so, and I understand GTRI is

12    underway with putting the antenna in the tennis ball machine or

13    they are going out to buy it.

14          So that would not be a communication directly with

15    GTRI.  But it would seem like Brady to me.  So communications

16    not just with GTRI but about GTRI and knowledge that they are

17    using those -- engaged in that kind of work --

18          MR. PHILLIPS:  Sure.

19          THE COURT:   -- and buying -- and/or buying those sort

20    of devices.

21          MR. PHILLIPS:  Okay.  And just to give the Court some

22    comfort that we're on the right track and that we have been

23    following that type of an investigation all along, when we

24    produced the unclassified discovery at about the time of

25    arraignment and the subsequent follow-up discovery, part of

1    what we produced is FBI 302s of employees at GTRI.  One of whom

2    is Mr. Baker who took over as the project director on D6308 and

3    who was defendant Maloney's right-hand man during the time that

4    defendant Maloney was there in terms of working on this

5    project.  He was the guy who did the day-to-day testing of

6    these devices.  He is the one who is putting it together.

7              Dr. Maloney was the big picture guy who is the

8    supervisor who is over that.  But the one who did the actual

9    work -- the legitimate work on the project is Mr. Baker.  And

10   Mr. Baker says in his 302 the same thing that we were told at

11   the CIA and that is this is bogus.

12             THE COURT:  Okay.

13             MR. PHILLIPS:  The kinds of things that are listed in

14   the indictment, we didn't do that.

15             THE COURT:  Okay.  And just so you know and just

16   so -- because I know what Mr. Gillen's response is on that.

17   The interviewing of the folks involved is a critical part of

18   this process but not sufficient for the reasons I have said

19   before.  Because the witnesses may --

20             MR. PHILLIPS:  Well, unless there is some giant

21   conspiracy between GTRI and the CIA and the U.S. Attorney's

22   Office to hide these documents, we have been told they don't

23   exist.

24             THE COURT:  Okay.  I appreciate that.

25             MR. PHILLIPS:  But I understand the Court's direction

1  to go back and firm it up and put it in more concrete terms.
2  And I will do that.
3          THE COURT:  Okay.  Mr. Gillen?
4          MR. GILLEN:  Yes, Your Honor.  I assume that is the
5  same Mr. Baker that assured -- the Government used him as a
6  source of the information when they assured the Court that
7  there was no classified information involved in any of this.
8  We see -- we see where the road has come on that.  That is the
9  same man that was -- my recollection -- specific recollection
10 is that the Government used him to try to stop this entire
11 process in terms of looking at classified information by
12 assuring us that no classified information was involved.  So we
13 kind of get a real good idea about him, Number 1.
14         Number 2, we would ask the Court to specifically
15 direct the Government when it gets back with the CIA in terms
16 of broadening its inquiry -- just go ahead and say here are the
17 projects that have been noticed up.  Also check for those.
18         Why not?  Why not say, we know the defense has
19 noticed up the following projects.  All right.  Check this when
20 you run your computer at the CIA.  Number 1, we would ask the
21 Court do that.
22         THE COURT:  Well, my -- my -- my impression of what
23 the Government has done already and what I'm envisioning that
24 they broaden is that they did not limit the objective search
25 for documents, specifically emails, to specific projects.

1          So to say what about this -- what about emails under

2    this project, that would actually be narrowing, if you will,

3    when they have just looked so far at everything that has his

4    name on it, which would seem to by definition include anything

5    that would be under Project X, Y, Z versus Project -- and I

6    understand that you sound distrustful of that representation.

7    But I don't know what else to do -- I mean, I can't -- I'm not

8    flying up to Langley and doing it myself, if you will.

9          So the -- that's where I guess I'm fundamentally

10   misunderstanding your focus on the project names because what I

11   think I'm ordering and what I hear represented is that their

12   search in many ways has been broader and not limited to project

13   names.

14         MR. GILLEN:  My response is this:  This is the

15   conundrum for us.  One, the Court said, well, your request is

16   for any and all.  It is too broad.  But then when we get

17   specific, the Court said no, I don't want to -- I mean, why not

18   give them including but not limited to the following projects?

19   Lay it out for them rather than having them come back

20   without -- well, gee, we didn't know about A, B, C, and D

21   projects.

22         THE COURT:  So you would rather me -- instead of

23   saying, which I have already said, that they should do a search

24   that is not limited to particular projects at all, you would

25   rather me say including but not limited to specific names even

 1    though --

 2            MR. GILLEN:  Including but not limited to.  So that

 3    would catch everything.  But it would put them on notice that

 4    you need to search for these particular projects, Number 1.

 5            And Number 2, how can they possibly say that they

 6    don't have emails when their discovery -- my recollection is

 7    that the discovery from the gentleman who was doing the

 8    note-taking of the meetings talked about communicating in

 9    emails.  We need to have his name sent up and his -- and his

10    emails located because he was communicating apparently with the

11    CIA via email about the very things that we talk about in our

12    Section 5 notice.

13            And to say that -- do they have those emails or not?

14    I mean, how can they say in their discovery, this is how I

15    passed on information?  And we have turned over in discovery a

16    series of notes taken by this individual.  Never came out

17    initially.

18            But when we identified him, then they said, oh, yeah,

19    well, yeah, well, here you go.  But here is some of the -- but

20    that doesn't even cover it because that doesn't even cover the

21    time period of the 6308 project.  So what happened?  Did

22    somebody eat the homework?  Did they destroy the other

23    notebook?  Did it not exist?  What about the emails that this

24    gentleman was communicating with with the CIA on the very

25    meetings that we're talking about?

1          Why don't they run email -- a search for the emails

2     of that individual with the CIA?  That is another specific.

3     Because we know that he was communicating with the CIA via

4     emails.  Right.  And if that is the case, how can they come

5     back and say, we don't have any emails?

6          The more specific we give to them, that is, the CIA,

7     the better because then they have to answer, we either have it,

8     or we don't.  And if they don't have it, one wonders what

9     happened to it.

10          I mean, this gentleman who is getting or taking all

11    these notes of these meetings is communicating with them

12    electronically.  This wasn't communicated, to be facetious,

13    through smoke signals.  It was done electronically.  Where is

14    the electronic register or the database of that, and why wasn't

15    that done initially?

16          I mean, that is something that would have been -- you

17    know, for any, you know, investigator at the CIA or anybody

18    following up on this, that one would think would be the very

19    first thing they would do.  But they haven't even done it.  So

20    why don't we say, you run the email from this gentleman that we

21    have -- because we know that he was taking notes.  We've got at

22    least one of his notebooks and his communication with the CIA

23    and see whether he's talking about projects that Dr. Maloney

24    was involved in and whether he was talking about 6308.

25          One would imagine he was in light of the notebooks

 1    that have already been produced.  And then what about the other

 2    notebooks?  Again facetiously, did the dog eat that homework?

 3    It has got to be somewhere, either destroyed or in somebody's

 4    file that they don't want to go to the trouble of finding.

 5              So, again, this isn't a conspiracy between the -- you

 6    know, it bears repeating.  These gentlemen in the courtroom

 7    representing the United States Attorney's Office have

 8    outstanding reputations for integrity and honesty.  That is a

 9    given.  They can only bring into court what they are told, what

10    they are told by Mr. Baker or what they are told by the CIA.

11    And we know what they were told initially.  And I respectfully

12    submit what they were told initially has proven to be

13    inaccurate.

14              So why don't we just give them the specifics and say

15    including but not limited to and lay it out for them and then

16    see what they say.

17              THE COURT:  Mr. Phillips?

18              MR. PHILLIPS:  Just briefly, Your Honor.  First of

19    all, the notebook that Mr. Gillen keeps referring to is

20    unclassified.  We produced that.  Special Agent Law from the

21    FBI and I went to that gentleman's home where he lives in that

22    city -- rather at the FBI office.  And we interviewed him.  And

23    there is nothing in his interview that supports this idea that

24    there is any classified information that supports the

25    defendant's defense.  Nothing.  And so this is all just a big

1    wild goose chase.

2         And just one more thing.  Nowhere in any of the

3    documents that the defendant has filed with this court in his

4    Section 5 notices and all of the amendments to those has he

5    alleged that here is a specific item that is referred to in the

6    indictment.  I was authorized or directed by the CIA by this

7    specific individual to buy that item or test that item.  That

8    doesn't exist.

9         And so he wants us to go on this big fishing

10   expedition and try to get the CIA all riled up in hopes that

11   they will stop cooperating with us and just say, you've got to

12   shut this down.  We've got other things to do.  We're not going

13   to be involved in this nonsense any more.  That is what he

14   wants.

15        He has not come forward with any suggestion that any

16   one of those items listed in the indictment is something that

17   he was authorized or directed by the CIA to test or to purchase

18   with Government money.  Not one.  Not the tennis ball machine.

19   Not the purchase of his personal rental properties that were

20   paid for through PayPal and then charged to the Government.

21   How is that related to testing electronic devices on D6308?

22   That is nonsense.

23        And the other thing, Mr. Gillen keeps saying that I

24   stood up here and said that this case doesn't involve

25   classified information.  I'll say it again.  It doesn't.  There

1   is nothing about this case that is classified that is necessary

2   to the prosecution of this case or this man's defense.

3        None of the small subset of classified information

4   that we have produced changes the outcome of this case.  Not

5   one bit.  There is nothing in any of that that says that there

6   is any merit whatever to his defense that he was authorized and

7   directed by the CIA to do what the Government has charged him

8   in the indictment with doing.

9        THE COURT:  All right.  Okay.  So I'm going to leave

10  it the way that I had it.  In my view what I've already -- the

11  guidance I have already provided is broader than names of

12  specific projects.  I can't -- I'm not going to order search

13  terms based on specific projects when I think what I'm asking

14  for is broader that if there were communications with

15  Mr. Maloney or GTRI that reflect knowledge that Mr. Maloney or

16  GTRI was working with or procuring these items.

17       To me it is only narrowing that if we limit that to

18  specific project names, which I don't see the need to do.  I do

19  think though it would be prudent for the prosecution to, much

20  like it sounds like they have done before with the information

21  in the Section 5 notice, pass along and discuss with the folks

22  at the CIA who are knowledgeable about this work and about the

23  documents that these are particular projects and particular

24  people that the defendant has noted as being in some way

25  relevant to these allegations and see what -- if that reveals

1    more information.

2         But the search that I'm anticipating and that I

3    believe it sounds like has already been done is more broad than

4    just particular projects.  So I think I'm going to leave it at

5    that.

6         With regard to the particular emails of the one

7    individual who referenced emails in the log, that is not

8    possible for me to assess.  That someone sent emails doesn't

9    make those emails necessarily relevant.  So I don't know

10   whether those emails exist or don't exist or simply are not

11   relevant.

12        But I would ask the Government to -- we have a

13   particular individual who has referenced emails in the log or

14   in a diary to double-check whether or not there are emails from

15   that person and look at that a little more specifically.  That

16   is a worthwhile and prudent exercise.

17        I can't necessarily find from what I have heard that

18   there is something pertinent there that has not been produced.

19   But it is a prudent exercise to do that.  And then to -- then

20   explain the results to the defendant:  We have looked into

21   this.  There are no emails, or we have looked into it, and we

22   have -- they are irrelevant, and we're not -- I think just

23   explaining the situation would be prudent.

24        All right.  I'm going to issue a written order

25   because I do want to discuss the legal issues with regard to

1    discovery going beyond the so-called prosecution team to other

2    agencies.  But is what I've said sufficiently clear to at least

3    allow the Government to take the next step and get going on

4    this before I formally issue an order?

5            MR. PHILLIPS:  Yes, Your Honor.

6            THE COURT:  Okay.  I do, notwithstanding the

7    possibility that there may be additional things produced, which

8    is always going to be there, that possibility, want to go ahead

9    and schedule the Section 6 hearing because we've got to move

10   this along -- this case and because there is quite enough in my

11   view information to tee up the basic admissibility

12   determinations that have to be made.  And we can handle

13   additional things that come up in the future.

14           It is possible that whatever -- if there are

15   additional things to be produced through this process or

16   otherwise that it would -- those things would not be classified

17   and it doesn't -- we don't -- it wouldn't -- it was possible it

18   wouldn't be classified.  It is possible it is classified, and

19   we can deal with that as it comes, have a supplemental

20   Section 6 for something new that is produced.  But I think

21   we've got to go ahead and schedule the basic hearing here if

22   we're ever going to move this case forward.

23           So in other words, this would be -- this would be

24   based on the material that has been identified by the defendant

25   in its Section 5 -- in its Section 5 notice as his intention to

1   disclose at trial.  The Government -- I'm understanding that

2   they are requesting a Section 6 proceeding to argue and

3   adjudicate evidentiary objections, relevance, hearsay, and the

4   like -- principally relevance is what I think we're talking

5   about here -- as to the matters that the defendant proposes to

6   disclose.

7               MR. PHILLIPS:  Classified matters.

8               THE COURT:  Classified matters.  Right.

9               So what would be the next step in that?  Is the next

10   step for the Government to actually tell us what is classified

11   and what is not or -- because I don't know that we have gotten

12   that formal yet.

13               MR. PHILLIPS:  We have already done that, Your Honor.

14   The documents that we produced to the defendant are marked.

15   They say whether they are classified and, if so, at what level.

16               THE COURT:  Okay.  The actual documents?

17               MR. PHILLIPS:  The documents themselves are stamped.

18   If they are classified, they are stamped classified.  And they

19   were produced with a classified cover sheet and so forth to

20   keep them separate from the unclassified materials that were

21   produced.

22               THE COURT:  Okay.

23               MR. PHILLIPS:  And there are not many of them.

24               THE COURT:  Right.  But what about the potential

25   testimony that would discuss the different projects or matters

1    or work that was described in the Section 5?  Is that

2    something --

3              MR. PHILLIPS:  Well, that is much broader.  Some of

4    the 302s that were produced are classified secret.  And some of

5    the matters that were discussed in there we don't think are

6    relevant, and we would be asking the Court to exclude them from

7    the trial to prevent the defendant from mentioning those at the

8    trial.  They have nothing to do with his defense.

9              THE COURT:  But that would be what we have to argue

10   and hash out at a Section 6 argument?

11             MR. PHILLIPS:  That is right.

12             MR. GILLEN:  Your Honor, Carli was indicating to me

13   that as it relates to our Section 5 and our supplemental

14   Section 5 that it has not yet been marked up yet.

15             THE COURT:  Okay.  That is, I guess, what I was --

16   that is what I was wondering, whether that -- when I said that

17   we haven't had a formal adjudication, if you will, of what is

18   classified or not, I guess that is what I meant.  The agency

19   going through the Section 5 and telling us what is and what is

20   not.

21             MR. GILLEN:  That hasn't happened yet.  So that would

22   have to happen obviously before we could have the hearing.

23             THE COURT:  All right.  Is that -- Carli, that

24   usually happens before the hearing or --

25             MS. RODRIGUEZ-FEO:  So it wouldn't necessarily have

1    to happen to have the hearing.  We could have a hearing and

2    have it under the presumption that everything is presumably

3    classified at this point.  If you wanted to have the hearing to

4    only govern what you know to be classified, then you would have

5    to submit that material for classification review to find out

6    what is and what isn't specifically and then have the hearing.

7            So there is not a right or wrong way to do it.  You

8    can have the hearing.  But you have to have the hearing in

9    knowing that you may actually be essentially not wasting time

10   but speaking about things that could be spoken about in an

11   unclassified setting without knowing fully.

12           THE COURT:  How long would that take to get that

13   feedback?

14           MS. RODRIGUEZ-FEO:  So that -- normally it would be

15   something that the Government would need to take back a

16   timeline to the intelligence community.  I would assume that

17   the Court could predict a timeline.  If the intelligence

18   community has an issue with how long they believe it would

19   take, for instance, three weeks opposed to two months, based

20   on, you know, the information that has been filed by the

21   defense, the Government would then reserve the right to

22   normally come back and explain on behalf of the intelligence

23   community why it would take longer.

24           But a deadline on the classification review process

25   would need to be in place in order to kind of have all of the

1    defense material classified or declassified or unclassified

2    essentially prior to the Section 6.

3            It is not required to have the Section 6 though.  You

4    can have the Section 6 and just discuss everything presumably

5    that it would be treated as classified.

6            THE COURT:  What y'all's position?

7            MR. PHILLIPS:  When she says the defense material, I

8    assume what she's talking about is what the defendant has

9    alleged in his Section 5 notices and the amendments; right?

10           THE COURT:  That is my understanding, yes.

11           MR. PHILLIPS:  Is that what you --

12           MS. RODRIGUEZ-FEO:  Yes.

13           THE COURT:  So what is, Mr. Gillen, your preference

14   on --

15           MR. GILLEN:  My preference is I would like to find

16   out what we're actually talking about here.  And so I say the

17   Court give the intelligence community a deadline about when it

18   can mark up the material, and then we can find out what we're

19   actually having a hearing about.

20           THE COURT:  I certainly think the ideal would be to

21   know the answers to that before we get underway.  And it

22   certainly would make these proceedings more efficient.

23           So I think what I'll do is this.  Let's go ahead and

24   set a hearing but set it a certain amount of time out.  And

25   then if we don't get -- well, but then I'll ask for a status

1  update from the Government at a certain time prior to that

2  hearing about what the agency -- what the agency's position is

3  on the timing of the redactions or the marking-up and then we

4  can -- not redactions -- the marking-up.  And if we need to

5  adjust the hearing date, then we can.  Or we can take that up

6  as it comes.

7           But I want to go ahead and set a hearing just so we

8  can put it on our calendars for speedy trial purposes and all

9  that so it doesn't fall through the cracks.

10          MR. PHILLIPS:  Excuse me just one minute.

11          THE COURT:  Uh-huh (affirmative).

12               **(There was a brief pause in the proceedings.)**

13          MR. PHILLIPS:  Your Honor, we think it might be

14  helpful if the Court would go ahead and set a deadline for us

15  to --

16          THE COURT:  Produce?  Okay.

17          MR. PHILLIPS:  -- to tell the Court this is

18  classified at this level and this other thing is classified at

19  a different level.

20          THE COURT:  Okay.  Okay.  That is fine.

21          MR. PHILLIPS:  I'm not sure what the official name of

22  that is.  But whatever that --

23          THE COURT:  Marking up sounds as official --

24          MR. PHILLIPS:  Marking up.

25          THE COURT:  So -- all right.

57

1         MR. PHILLIPS:  Classification review, Your Honor.

2         THE COURT:  Classification review.

3         Carli, without this being binding because you don't

4    know the answer, but what would be a potentially realistic time

5    frame that it could be --

6         MS. RODRIGUEZ-FEO:  I can't remember -- recall off

7    the top of my head.  Was there a Section 5 and a supplemental

8    Section 5?

9         THE COURT:  Yes.

10        MR. PHILLIPS:  A couple of different amendments or

11   supplemental Section 5s.

12        MS. RODRIGUEZ-FEO:  Right.  So without speaking on

13   behalf of the intelligence community, they typically ask for

14   about three to four weeks --

15        THE COURT:  Okay.

16        MS. RODRIGUEZ-FEO:  -- for a review process.  They

17   may be able to do it a lot faster, or they may come back and

18   say that is --

19        THE COURT:  And I think -- are we on the same page?

20   We're really talking about the -- for this purpose the

21   defendant's submissions, not really the Government's responses,

22   which are more legal in nature.

23        MS. RODRIGUEZ-FEO:  Right.  Just so that we are

24   aware, the Government's responses would already essentially

25   have gone through the classification review process.

```
 1              THE COURT:  Okay.  All right.  All right.  So why

 2   don't we give them the deadline of four weeks, which would be

 3   April 4 by my math.  April 4.  That is for the classification

 4   review.  And then for the hearing -- I'm a little tied up in

 5   April.

 6              MR. PHILLIPS:  Your Honor, just so I make sure we're

 7   clear about this, when we talk about the intelligence community

 8   doing the classification review for this case, we're just

 9   limiting that to the CIA?

10              THE COURT:  I don't know.  I mean, whoever is the

11   classifying agency.  That is not for me -- that is for the

12   owner of the information, who I assume is -- I don't know the

13   answer to that.

14              MR. PHILLIPS:  I agree with you.  But the defendant

15   has made some allegations in his Section 5 notices that there

16   are other agencies that were involved.  But my understanding

17   from the previous status conference we had was the Court had

18   determined that those -- the Government was not joined at the

19   hip with those other agencies.  They are not part of the

20   prosecution team, and we weren't required to go look in their

21   files to see what they might have.

22              THE COURT:  Well, yeah.  For purposes of the motion

23   to compel, yes.  For purposes of the Section 6 hearing and the

24   CIPA analysis and the -- I don't know how to answer that

25   question.
```

```
 1              To the extent the defendant is giving notice that he
 2    intends to take the stand and discuss information or call other
 3    witnesses to -- whether he's going to get more information from
 4    you through a motion to compel or not, he is either personally
 5    or through others going to disclose the following information
 6    in the Section 5.  Then --
 7              MR. PHILLIPS:  I understand now.
 8              THE COURT:  That is what -- we need to know whether
 9    that is classified or not so we can know whether or not you
10    have an objection and whether or not there is an evidentiary
11    basis to exclude it or not.
12              MR. GILLEN:  So what they need to do is they need to
13    run it through the intelligence community, everybody that would
14    have a need to make an assessment on the classification.
15    Whether it is the CIA or other agencies, it is their job to do
16    that.
17              And the Court is right.  The distinction is earlier
18    as it related to the motion to compel the Court expressed an
19    intention to limit our ability to compel and the Government to
20    go seek.  But that does not -- it is not a ruling on what the
21    defense can -- we have told them what we are -- what we intend
22    to --
23              THE COURT:  It is not an admissibility ruling at this
24    point.  Like, for example, hypothetically -- and this is just
25    like the hypothetical tennis ball machine.  If the defendant
```

1    could take the stand and say, the reason I did this conduct was

2    because I had a contract with this other agency unbeknownst to

3    the CIA, I may have made a ruling that you're not required to

4    go to that other agency for Brady review.  That in and of

5    itself doesn't restrict his ability to say that.

6           Now, you may say that is irrelevant.  I may agree

7    with you ultimately.  I don't know.  But that is the Section 6

8    hearing that we are saying in the ideal world will occur only

9    once we know what is classified and what is not.

10          So to answer your question, I guess the information

11   in the Section 5 notice, whoever has to pass on that, which I

12   don't know the answer to, would be what we're looking to have

13   passed on before we begin the Section 6 hearing.

14          If that is not manageable timingwise, then I'm not

15   against the idea of going forward with the Section 6 in the

16   meantime.  It just would not be preferable to do that.

17          MR. PHILLIPS:  Understood.

18          THE COURT:  Okay.  All right.  So my April is a

19   little tied up.  What about -- I could do just about most days

20   the weeks of April -- May 14 or 21st.  I hate -- just out of

21   picking something out of the hat, Tuesday, the 15th, 9:30, that

22   looks open to me right now -- of May.

23          And that gives us a little wiggle room too if the

24   disclosure is not ready on the 7th or 4th and it slips by a

25   week or two it still strikes me that May 15 would be enough

1    time.

2           Now, it also could be -- you know, frankly, while

3    this is just going to be legal argument, it could be that we

4    also have submission -- that we have briefs as well.  But that

5    could be done after the hearing, if the parties want to brief,

6    which I imagine you likely would.

7           MR. PHILLIPS:  Would that be 10:00, Your Honor, on

8    the 15th?

9           THE COURT:  Let's say 9:30 just in case we need more

10   time than the average.  Does that sound -- is that available?

11          MR. PHILLIPS:  Yes, Your Honor.

12          MR. GILLEN:  Yes, Your Honor.

13          THE COURT:  Okay.  All right.  Very good.

14          All right.  Anything else then we need to take up

15   today?

16          MR. PHILLIPS:  Not for the Government, Your Honor.

17          MR. GILLEN:  No, Your Honor.

18          THE COURT:  All right.  Very good.

19          So I've given some homework to the Government.  When

20   do you think you would be able to conduct any further review

21   and produce what, if anything, additional would need to be

22   produced?

23          MR. PHILLIPS:  I'm going to go talk to the lawyers at

24   the NSD this afternoon, try to round them up, and get on it

25   immediately.

1           THE COURT:  How about -- I mean, we have the date of

2    April 4 anyway for the -- why don't I as a default have that be

3    your deadline.  But if you end up based on the feedback you get

4    or other information need to adjust that, then you can ask for

5    that.  But just so we have something in place and it is not

6    left hanging, I'll put that as sort of the default deadline.

7           MR. PHILLIPS:  That is --

8           THE COURT:  April 4.

9           MR. PHILLIPS:  -- April 4?

10           THE COURT:  So the same day as the classification

11   review.

12           MR. PHILLIPS:  All right.

13           THE COURT:  I do think -- and maybe this is just me

14   overthinking the speedy trial issues.  But to the extent I

15   issue a written order ruling on the discovery motion, the

16   motion to compel -- and I mean, there are a few other

17   housekeeping matters that we have to formally rule on, but

18   there wouldn't be a formal motion pending per se.  And I

19   don't -- the Speedy Trial Act doesn't specifically include CIPA

20   proceedings as an automatically excludable event the way it

21   does, for example, competency proceedings.

22           And so I think it would be -- I think it would make

23   sense to begin the Section 6 process with a motion, like a

24   motion for Section 6 hearing.  Or really functionally this is a

25   motion in limine to preclude evidence is what functionally this

```
 1   is.  And really that is the legal standards we will be
 2   applying.  Because whether it is classified or not, the way I
 3   understand the law is you apply -- this is just a process by
 4   which you bring forward evidentiary disputes that would
 5   otherwise perhaps be dealt with at or in the middle of trial.
 6   But it is the same legal standards that govern the
 7   admissibility of the evidence that apply regardless.  So it
 8   would be a motion in limine is how I think of it to preclude
 9   certain evidence.
10          So I don't need to micromanage what it is styled as.
11   But I think it would make sense for there to be a motion.  I
12   think that would be the proper way to proceed and from a Speedy
13   Trial Act standpoint probably prudent for there to be some
14   motion for the Government to begin this process, if that makes
15   sense.
16          MR. PHILLIPS:  We could do that.
17          THE COURT:  Okay.  All right.  That is all I had.
18   Thanks very much.
19          MR. GILLEN:  Thank you, Your Honor.
20          THE COURT:  We're adjourned.
21              (The proceedings were thereby concluded at
22              11:49 A.M.)
23
24
25
```

1                    C E R T I F I C A T E

2


3    UNITED STATES OF AMERICA

4    NORTHERN DISTRICT OF GEORGIA

5


6        I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of

7    the United States District Court, for the Northern District of

8    Georgia, Atlanta Division, do hereby certify that the foregoing

9    63 pages constitute a true transcript of proceedings had before

10   the said Court, held in the City of Atlanta, Georgia, in the

11   matter therein stated.

12       In testimony whereof, I hereunto set my hand on this, the

13   11th day of April, 2018.

14

15

16

17   _____
     SHANNON R. WELCH, RMR, CRR
18   OFFICIAL COURT REPORTER
     UNITED STATES DISTRICT COURT
19

20

21

22

23

24

25

                        UNITED STATES DISTRICT COURT
                        OFFICIAL CERTIFIED TRANSCRIPT