## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| v. | 1:16-cr-237-RWS-JSA |
| JAMES G. MALONEY, | |
| Defendant. | |

## ORDER

This case comes before the Court on Defendant James G. Maloney's Motion to Dismiss the Indictment Pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* [Dkt. 169]. Dr. Maloney moves to dismiss the Indictment in this case with prejudice on the ground that he has not been tried within the time mandated by the Sixth Amendment or the Speedy Trial Act. After reviewing the parties' briefs, the Court enters the following Order.

## BACKGROUND

Dr. Maloney was indicted on June 28, 2016 [Dkt. 1] and entered a plea of not guilty on June 30, 2016 [Dkt. 4]. On July 1, 2016, Dr. Maloney filed a Consent Motion for Extension of Time to File Pretrial Motions [Dkt. 7]. The Court granted that Motion, giving Dr. Maloney until September 12, 2016 to file any motions and

excluding the period between July 6, 2016 to September 12, 2016 from the Speedy Trial Act calculations [Dkt. 8].

On September 12, 2016, Dr. Maloney filed a series of motions, including a Motion for Leave to File Additional Motions [Dkt. 16], Motion for a Bill of Particulars Pursuant to Federal Rule of Criminal Procedure 7(f) [Dkt. 17], Motion for Identification of Documents Which the Government Expects to Rely Upon in Its Case-in-Chief at Trial [Dkt. 18], and Motion for Access of Witnesses [Dkt. 19]. The same day, Dr. Maloney also filed a Notice of Intent to Disclose, or to Cause the Disclosure of, Classified Information, Pursuant to the Classified Information Procedures Act ("CIPA") [Dkt. 22]. On September 14, 2016, and October 5, 2016, the Magistrate Judge held pretrial conferences regarding the pending motions and CIPA § 5(a) Notice, during which he ordered Dr. Maloney to particularize his CIPA § 5(a) Notice and granted extensions of time for the parties to complete their briefing [Dkt. 20, 24].

Over the next approximately two-and-a-half years, the parties continued briefing Dr. Maloney's CIPA § 5(a) Notice (which he supplemented twice), his related Motion to Compel, and other pretrial motions [Dkt. 25, 26, 28, 31, 39, 44, 45, 59, 63, 66, 77, 81, 83, 90, 92, 93, 96, 99]. Along the way, the Magistrate Judge held several status conferences and granted a series of extensions of time for the

parties to file their respective documents [Dkt. 27, 30, 33, 34, 37, 41, 43, 46, 47, 51, 54, 58, 61, 64, 68, 70, 73, 74, 76, 78, 80, 82, 87].  He also consistently and repeatedly stated in court and on the record that time was excluded under Speedy Trial Act calculations.  Finally, on April 8, 2019, the Magistrate Judge held a conference regarding Dr. Maloney's fully-briefed CIPA § 5(a) Notices and related Motion to Compel [Dkt. 100].  Shortly thereafter, on April 19, 2019, the Magistrate Judge issued Orders resolving those motions [Dkt. 101, 102].  The Government and Dr. Maloney both appealed portions of the Magistrate Judge's Orders [Dkt. 106, 107, 113, 116].

On November 5, 2021, while the appeals of the Magistrate Judge's Orders were still pending, this case was reassigned [Dkt. 139].  The reassignment caused a lengthy delay in the case because court staff had to obtain the appropriate security clearances through the U.S. Department of Justice.  On August 10, 2022, the Court issued an Order resolving the parties' appeals of the Magistrate Judge's Order [Dkt. 144].  The Court largely agreed with the Magistrate Judge's rulings.  The Court also set out a briefing schedule for any CIPA Section 6(c) Motion that the Government intended to file and noted that time continued to be excluded under Speedy Trial Act calculations.

On October 26, 2022, the Government filed its CIPA Section 6(c) Motion for Substitutions in Lieu of Disclosure of Classified Information [Dkt. 148].  The parties fully briefed the Motion [Dkt. 151, 152], and on December 14, 2022, the Court held a hearing, during which it issued preliminary rulings and took certain other disputes under advisement [Dkt. 155].  On January 26, 2023, the Court issued an Order resolving most of the CIPA 6(c) disputes and ordering the parties to confer on the outstanding issues [Dkt. 161].  On February 8, 2023, the Court held a hearing regarding the remaining issues [Dkt. 166].  The following day, the Court issued an Amended Order fully resolving the Government's CIPA 6(c) Motion [Dkt. 164].  In addition, the Court specially set the case for trial beginning on May 22, 2023 [Dkt. 163].

On March 3, 2023, Dr. Maloney filed his Motion to Dismiss the Indictment Pursuant to the Speedy Trial Act, asking the Court to dismiss his Indictment with prejudice on the ground that he had not been tried within the time mandated by the Sixth Amendment or the Speedy Trial Act [Dkt. 169].  The Government opposed Dr. Maloney's Motion, arguing that Dr. Maloney had not met his burden of showing that his Sixth Amendment rights or the Speedy Trial Act were violated, but even if he had, the facts and circumstances of the case would not warrant dismissing the indictment with prejudice [Dkt. 170].  Dr. Maloney filed a reply in

support of his Motion [Dkt. 173], and upon the Court's request, the Government

filed a surreply addressing specific arguments raised by Dr. Maloney in his reply

[Dkt. 174].

Despite his pending Motion to Dismiss, on March 24, 2023, Dr. Maloney

filed a Motion to Continue the trial in this case until November 2023 given defense

counsel's obligations in other cases [Dkt. 175].

## DISCUSSION

**I.    The Speedy Trial Act**

**A. Applicable Law**

"The dual purpose of the Speedy Trial Act is to protect a defendant's

constitutional right to a speedy indictment and trial, and to serve the public interest

in bringing prompt criminal proceedings." United States v. Saltzman, 984 F.2d

1087, 1090 (10th Cir. 1993) (citation omitted). Title 18, United States Code,

Section 3161(c)(1), a provision of the Speedy Trial Act, reads in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a
> defendant charged in an information or indictment with the commission
> of an offense shall commence within seventy days from the filing date
> (and making public) of the information or indictment, or from the date
> the defendant has appeared before a judicial officer of the court in
> which such charge is pending, whichever date last occurs. . . .

Id.

Subsection 3161(h) of the Speedy Trial Act, however, identifies numerous specific periods of delay which automatically toll the computation of time and are therefore not included in computing the time limits for trial.  18 U.S.C. § 3161(h); United States v. Beard, 41 F.3d 1486, 1488 (11th Cir. 1995) (citation omitted). Several categories of exclusions are relevant in this case: delays attributable to pretrial motions, delays in which matters are under advisement, and ends of justice continuances.  Importantly, the periods of delay listed in §§ 3161(h)(1)-(6) are automatically excluded from computation of the speedy trial time limit, regardless of the length of the delay.  Henderson v. United States, 106 S. Ct. 1871, 1875 (1986); United States v. Davenport, 935 F.2d 1223, 1228 (11th Cir. 1991) (citation omitted).  For these provisions of the Act, the Supreme Court held that Congress did not intend to require delays under §§ 3161(h)(1)-(6) to be subject to a reasonableness inquiry.  Henderson, 106 S. Ct. at 1875-77; Davenport, 935 F.2d at 1228.  In reaching this opinion, the Supreme Court contrasted the plain and unambiguous language found in §§ 3161(h)(1)-(6) excluding time for "any period of delay" with the language within § 3161(h)(7) expressly limiting excludable time to a "reasonable period of delay."  Id.  The Court generally describes each applicable exclusion below.

### 1. Pending Pretrial Motion Exclusion

First, 18 U.S.C. § 3161(h)(1)(D) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  This exclusion covers "all time between the filing of a pretrial motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is reasonably necessary," as well as "time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion."  Henderson, 106 S. Ct. at 1872, 1877.

### 2. Matter "Under Advisement" Exclusion

In addition, 18 U.S.C. § 3161(h)(1)(H) excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  18 U.S.C. § 3161(h)(1)(H).  "This means that once the court has everything it needs to issue a ruling, it enjoys a thirty-day window of excludable time in which to consider the matter and issue that ruling."  United States v. Hill, 2021 WL 5238202, at *3 (N.D. Ga. July 19, 2021) (citing Davenport, 935 F.2d at 1228).  "When a pretrial motion has been referred to a magistrate judge to issue a report and recommendation, then,

there are two such thirty-day periods: one thirty-day excludable period for the

magistrate judge to issue a report and recommendation, and a second thirty-day

period for the district judge to take the report and recommendation and any

objections thereto under advisement." Id. (citation omitted).[1]

### 3. "Ends of Justice" Exclusion

Finally, the Speedy Trial Act also excludes delay due to the grant of a

continuance on the court's own motion "or at the request of the defendant or his

counsel or at the request of the attorney for the Government" when "the ends of

justice served by taking such action outweigh the best interest of the public and the

defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The court must identify

"either orally or in writing, its reasons for finding that the ends of justice served by

the granting of such continuance outweigh the best interests of the public and the

defendant in a speedy trial." Id. If the pertinent findings are made, the duration of

the continuance is excluded from speedy trial calculation. § 3161(h)(7);

Davenport, 935 F.2d at 1229 (excludable time calculated from date of order

granting continuance until date on which order terminates continuance). In other

---

[1] In this case, although it does not change the speedy trial analysis, the undersigned
subsequently construed the Magistrate Judge's Section 5(a) CIPA Order [Dkt. 102] as a
Report and Recommendation ("R&R") and Dr. Maloney's "appeal" [Dkt. 106] of the
Order as objections for purposes of 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72. The
terms are used interchangeably in this Order.

words, there is no time limit on the length of continuance and no reasonableness

requirement imposed for an "ends of justice" continuance.

Section 3161(h)(7)(B) provides a non-exhaustive list of factors the court

"shall consider" when evaluating whether a continuance should be permitted under

§ 3161(h)(7)(A).  The factors most relevant in this case follow:

>        (i) Whether the failure to grant such a continuance in the
> proceeding would be likely to make a continuation of such proceeding
> impossible, or result in a miscarriage of justice.
>
>        (ii) Whether the case is so unusual or so complex, due to the
> number of defendants, the nature of the prosecution, or the existence
> of novel questions of fact or law, that it is unreasonable to expect
> adequate preparation for pretrial proceedings or for the trial itself
> within the time limits established by this section.
>                                . . .
>        (iv) Whether the failure to grant such a continuance in a case
> which, taken as a whole, is not so unusual or so complex as to fall
> within clause (ii), would deny the defendant reasonable time to obtain
> counsel, would unreasonably deny the defendant or the Government
> continuity of counsel, or would deny counsel for the defendant or the
> attorney for the Government the reasonable time necessary for
> effective preparation, taking into account the exercise of due
> diligence.

18 U.S.C. § 3161(h)(7)(B)(i), (ii), and (iv).

Federal prosecutions implicating classified information and the CIPA are

"unusual" and "complex" and require significantly more time to bring the case to

trial than other federal criminal cases.  § 3161(h)(7)(B)(ii).  There are several

reasons for this, beginning with the laborious yet necessary protections and procedures outlined by the CIPA.  First, the existence of classified information in a criminal case requires the prosecutors, defense counsel, and assigned court personnel to obtain special security clearances, which takes an inordinate amount of time and depends upon the ability of the DOJ and FBI to conduct background checks and interviews and meet with the individual applying for clearance.  See, e.g., United States v. Tao, 2021 WL 5415281, at *3 (D. Kan. Nov. 19, 2021) (when a party files a CIPA motion or notice, "the Court will need to review the classified information at issue—a process that may require a court staff member to obtain security clearance."); United States v. Warsame, 2007 WL 748281, at *3 (D. Minn. Mar. 8, 2007) (discussing need for defense counsel and court staff members to obtain security clearances and noting that completion of the required background investigation may take many months); 28 C.F.R. § 17.41(b) (eligibility requirements for security clearance).  Second, as discussed in greater detail below, CIPA protections are taken in stages: the first stage resolves questions of admissibility, and the second stage relates to substitutions for classified information deemed admissible at trial.  Hearings are typically necessary at each step.  Each CIPA-related discovery phase and procedure builds extra time—an

unusual amount of time—into pretrial proceedings.  See, e.g., United States v. Raymond, 2023 WL 2043147, at *3 (D.D.C. Feb. 16, 2023).

In order to meet its discovery obligations, the prosecution may be required to coordinate and "consult with various intelligence agencies" to obtain approval for the declassification of materials or proposed substitutions for classified information deemed admissible at trial.  United States v. Brown, 2014 WL 1572553, at *1, 5 (E.D.N.C. Apr. 18, 2014) (discussing CIPA procedural framework generally, CIPA § 4, and the "wide latitude" granted to trial courts in "deal[ing] with thorny problems of national security in the context of criminal proceedings") (citation omitted); see also Warsame, 2007 WL 748281, at *3 (describing process whereby prosecution prepares summaries of classified documents that contain information relevant to the defense, the court reviews the summaries, and the court requires the prosecution to modify summaries, all of which requires cooperation of individuals from multiple governmental agencies).

**B. Analysis**

Dr. Maloney's central argument for dismissal is that "the exclusions from the Speedy Trial Act under section 3161(h) contain no exception for CIPA [proceedings]."  [Dkt. 169 – Mot. to Dismiss, at 7].  In other words, he argues that his CIPA § 5(a) Notice neither constituted a pretrial motion sufficient to exclude

time under 18 U.S.C. § 3161(h)(1)(D) nor was complex enough to amount to an ends of justice continuance under 18 U.S.C. § 3161(h)(7)(A).  [Id. at 7-8].  The Court disagrees.

### 1. CIPA's Procedural Framework

The CIPA establishes the procedures for pretrial rulings on the disclosure and admissibility at trial of classified information in federal criminal proceedings. See United States v. Libby, 453 F. Supp. 2d 35, 37 (D.D.C. 2006) (citation omitted).  "The statute was designed to reconcile, on the one hand, a criminal defendant's right to obtain prior to trial classified information and introduce such material at trial, with, on the other hand, the government's duty to protect from disclosure sensitive information that could compromise national security."  Id. (citation omitted); see also 18 U.S.C. App. III, § 1(a) (defining classified information as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security").  Courts follow and apply a multi-step process for making rulings pursuant to the CIPA.

First, Section 5(a) of the CIPA requires a defendant to file a notice describing the classified information he "reasonably expects to disclose or to cause

the disclosures of" at trial.  18 U.S.C. App. III, § 5(a).  Second, at the

government's request, the Court must hold a pretrial hearing to address the "use,

relevance, or admissibility" of the classified information identified in the

defendant's Section 5 notice.  Id. at § 6(a).  After that hearing, the Court must "set

forth in writing the basis for its determination" as to each piece of classified

information that was at issue during the hearing.  Id.  And third, if the Court finds

that certain classified information is admissible at trial, the government may move

(1) to replace the classified sections of the information at issue with "a statement

admitting relevant facts that the specific classified information would tend to

prove," or (2) to substitute "a summary of the specific classified information."  Id.

at § 6(c)(1)(A)-(B).  "The court shall grant such a motion . . . if it finds that the

statement or summary will provide the defendant with substantially the same

ability to make his defense as would disclosure of the specific classified

information."  Id. at § 6(c)(1).

In sum, then, in cases where classified information may be at issue,

invocation of the CIPA and implementation of its protections is both necessary and

time-consuming.

### 2.  Dr. Maloney's CIPA § 5(a) Notices Are Construed as Pretrial Motions

Here, the Court finds that Dr. Maloney's CIPA § 5(a) Notices, which triggered layers of prescribed CIPA procedures, briefings, and hearings, is the functional equivalent of a pretrial motion.  The Court so finds primarily because the CIPA 5(a) Notices (and subsequent CIPA hoops through which the parties and Court have to jump), in practice, operate in much the same way as, and are akin to, motions *in limine*.  After all, the objective of a CIPA § 5(a) Notice is to obtain a determination from the trial judge as to the admissibility of evidence—evidence that is also classified.[2]  However, as discussed *supra*, before considering how admissible evidence may be presented at trial while not running afoul of national security interests, there is also a discovery component.  The Government cannot "legally comply with its discovery obligations" without also complying with CIPA. Warsame, 2007 WL 748281, at *3.

Dr. Maloney's CIPA filings, notwithstanding label or title, clearly sought specific relief from the Court, namely, access to classified information and authorization to admit or disclose the same at trial, and also required extensive

---

[2] See United States v. Gavegnano, 2012 WL 1884136, at *2 and n.1 (W.D. Va. May 22, 2012) (citations omitted) (in habeas action, describing CIPA proceedings initiated by defendant's "motion in limine" giving "notice of his intent to disclose classified information pursuant to CIPA").

briefing and multiple hearings.  United States v. Pappas, 94 F.3d 795, 799 (2d Cir.

1996); see also United States v. Naseer, 38 F. Supp. 3d 269, 276 n.9 (E.D.N.Y.

2014) (assuming government's CIPA motion was a pretrial motion under §

3161(h)(1)(D)).  The Tenth Circuit stated that, when characterizing a proceeding as

a pretrial motion for purposes of § 3161(h)(1)(D) and the Speedy Trial Act, "[t]he

focus . . . is whether the court's intervention is required or whether a hearing must

be held." United States v. Loughrin, 710 F.3d 1111, 1120 (10th Cir. 2013)

(construing a notice of change of plea as a pretrial motion for purposes of §

3161(h)(1)(D) and Speedy Trial Act because court intervention and a hearing on

the merits with defendant's participation were required); see also United States v.

Williams, 2021 WL 3860511, at *1 (D.N.M. Aug. 30, 2021) (construing notice of

appeal of magistrate judge detention order as "pretrial motion" tolling speedy trial

clock under § 3161(h)(1)(D) given appeal was supported by "factual and legal

argument," requested relief, i.e., release from detention, and authorized court to

hold hearing and make findings of fact and conclusions of law).

In this case, Dr. Maloney's CIPA 5(a) Notices put into motion a statutory

machinery that required judicial action, all of which took time.  Indeed, the

decisions issued by the Magistrate Judge (and later by the undersigned) required

the Court to balance the competing interests of the parties and engage in tedious,

fact-intensive evidentiary analyses for each item containing classified information, including, among other things, evaluating the probative value of classified information, whether proposed redactions or substitutions for classified information provide defendant with "substantially the same ability" to pursue his defense and theory of the case, see CIPA § 6(c), and eventually whether admissibility of evidence in a given form comports with FED. R. EVID. 403.

While there is no controlling authority in the Eleventh Circuit squarely addressing or permitting the treatment of a CIPA § 5(a) Notice as a pretrial motion for purposes of the Speedy Trial Act,[3] there is ample persuasive authority to

---

[3] The only case cited by Dr. Maloney in support of his argument, namely, United States v. Brown, 285 F.3d 959 (11th Cir 2002), is not on point.  In Brown, the United States filed a "Motion for Determination of Speedy Trial Status and/or Trial Setting," advising the court that no trial date had been set and asking it either to set a hearing to determine the Speedy Trial Act status of the case or to set a trial date in compliance with the Act. Id. at 960.  The court set the case for trial, and the defendant moved to dismiss the indictment pursuant to the Act, which the court denied.  Id.  The defendant appealed, arguing that the government's Motion for Determination was *not* a motion within the meaning of 18 U.S.C. § 3161(h)(1)(F), such that the delay resulting from its filing and resolution should not have been excluded from calculations under the Act.  Id. at 961. The Eleventh Circuit held that the Government's Motion "was a reminder to the court to set a timely trial date" and "served the function of the status reports required by the local rule," but did *not* present any dispute to the court or require anything from it other than the setting of a time for trial within the time limits of the Act.  Id.  Accordingly, the Court held that "a document that does nothing more than remind the court that it must set a case for trial under the terms of the Speedy Trial Act is not a motion within the meaning of 18 U.S.C. § 3161(h)(1)(F), resulting in time excluded from that set forth in 18 U.S.C. § 3161(c)."  Id. at 962.  Brown's holding simply does not apply here, since Dr. Maloney's CIPA § 5(a) Notice was much more than a "reminder to the court" and instead required the Court to resolve disputes presented to it.

support this commonsense approach.  [Dkt. 170 – Response, at 8 (listing cases

construing other types of "notices" as "pretrial motions" for purposes of speedy

trial clock); Dkt. 174 – Surreply, at 7-9 (listing cases)].  And see United States v.

Richardson, 421 F.3d 17, 28-29 (1st Cir. 2005) ("pretrial motion" to be read

"broadly to encompass all manner of motions for purposes of tolling the speedy

trial clock," including informal requests for information or relief, letters, etc.)

(citations and internal quotation marks omitted); Williams, 2021 WL 3860511, at

*1 (defendant's notice of appeal of magistrate judge's detention order is in effect

the same as pretrial motion).

The Magistrate Judge explained a similar view early in the case in stating

that the CIPA proceedings "are simply phases of the same ***interrelated motion***

***practice*** begun by the Defendant's notices to introduce classified evidence."  [Dkt

112 – Order, at 2 (emphasis added)].

Arguably, this is already the law of the case since the Magistrate Judge

consistently treated the CIPA § 5(a) Notices as pretrial motions *without objection*

from Dr. Maloney.  The Magistrate Judge's reasoning follows:

> So for Speedy Trial purposes, I have been considering and treating the
> Section 5 notices that have been filed as motions because—and the
> Government's responses to those notices because those are requests
> for action from the Court to make findings as to the admissibility or
> non-admissibility—is that a word?—to exclude evidence. And many

of these also included requests for production or discovery or resistance—opposition to requests that have been made for discovery.

And so as early as—the defense filed its first notice of intent on September 12, and I think the Government responded shortly thereafter, and I'm treating all of those notices and responses thereto as motions. Because for the reasons I have explained, they are requests for action and relief from the Court and contested requests— very contested. . . .

So now there have been supplemental requests—I mean notices and responses, all of which have been perfecting this basic motion of the defense's request to use certain specific classified information and the Government's opposition to that in whole or in part, again all of which is akin to or even if not styled literally as they're evidentiary motions for which we had beg[u]n the hearing this morning but again is not complete.

So on that basis, Speedy Trial is not—has tolled under the pending motion provision during this entire time.

[Dkt. 89 – Transcript, at 7:7-8:6].

For these reasons, the Court construes Dr. Maloney's CIPA § 5(a) Notices and the CIPA proceedings that ensued as pretrial motions for purposes of § 3161(h)(D)(1) of the Speedy Trial Act. Accordingly, the speedy trial clock was tolled during the pendency of the motion, beginning September 12, 2016, the day Dr. Maloney filed his initial CIPA § 5(a) Notice of Intent to Disclose Classified Information [Dkt. 22] through *at least* April 19, 2019, when the Magistrate Judge's

Orders as to the Admissibility of Classified Information [Dkt. 102] and

Defendant's Motion to Compel [Dkt. 101] were docketed.[4]

It is not entirely clear from Dr. Maloney's briefing whether he concedes that

the period of time between the filing of his appeal of (or objections to) the

Magistrate Judge's April 2019 Order and this Court's February 2023 Order—the

lengthiest period of delay in the case—is excludable for purposes of the Speedy

Trial calculation under one or more exclusions.  As best the Court can tell, the

parties agree that this delay is excludable.  In his Motion to Dismiss, Dr. Maloney

points to record findings that time was excludable under the Speedy Trial Act and

then states:

> The defense was unable to find any exclusion of time pursuant to the
> Act after August 10, 2022. . . .  Even considering excludable time, Dr.
> Maloney still will not be tried within the time required by the Act, and
> the Act has been violated.

[Dkt. 169 – Mot. to Dismiss at 3].  But in his Reply, Dr. Maloney only identifies

seven specific date ranges, none of which fall between April 29, 2019 and

February 9, 2023, and states that, "[a]t minimum, the Government cannot show

---

[4] Both Orders were filed with the CISO on April 12, 2019 so the Court will refer to this
date rather than April 19, 2019, when entered on the docket.

that the following periods are properly excludable from the time requirements of the Act[.]" [Dkt. 173 – Reply, at 1-2].[5]

Deeming Dr. Maloney's CIPA § 5(a) Notice as a "pretrial motion" for purposes of § 3161(h)(1)(D) renders much of the defense argument moot and resolves the first five date ranges identified in the Reply brief.  [Dkt. 174 – Surreply, at 5].  The remaining date ranges pose no speedy trial problem.[6]  And it

---

[5] Immediately following the list of date ranges, Dr. Maloney then states that, his trial "should have begun by January of 2019, or sometime shortly thereafter, at the latest." [Dkt. 173 – Reply Br., at 2].

[6] The date range enumerated as "6" from April 13, 2019 through April 29, 2019 represents the day after the Magistrate Judge's April 12, 2019 Orders through the day before Dr. Maloney filed his appeal or objections on April 30, 2019, for a total of sixteen days. The date range enumerated as "7" from February 9, 2023 through March 2, 2023 represents the day after the February 8, 2023 Status Conference and the day the Court specially set the case for trial through the deadline for completing the exchange of defense witness information [Dkt. 163], for a total of twenty days (that is, *if* Dr. Maloney's argument is accepted).

But the Court's February 9, 2023 Order [Dkt. 163] expressly found that the time between the Court's February 8, 2023 Status Conference and May 22, 2023, is excluded from calculations under the Speedy Trial Act, 18 U.S.C. § 3161, and that the ends of justice outweigh the best interests of the public and the defendant in a speedy trial, specifically because the time is "reasonable . . . [and] necessary for effective preparation by counsel, taking into account the exercise of due diligence." § 3161(h)(7)(A) & (h)(7)(B)(iv).

As detailed in the Government's filings, most of the delay in the case is excludable under more than one provision of the Speedy Trial Act. Throughout the record, the Court explicitly found that the ends of justice—the need for time for adequate preparation and to engage in due diligence—required a tolling of the Speedy Trial Act. For the reasons discussed herein, the nature of this prosecution involving CIPA is both "unusual" and "complex" sufficient to require multiple ends of justice continuances under 18 U.S.C. §

is undisputed that there was a period of delay totaling less than 10 days at the outset of the case, between Dr. Maloney's initial appearance and arraignment on June 30, 2016 and the Court's July 6, 2016 Order excluding time from that day through September, that was not excludable.

Given the Court's analysis, even accepting the speedy trial calculation proffered by Dr. Maloney, the non-excludable time is less than the prescribed statutory 70-day period, and there is no violation of the Speedy Trial Act.

### 3.   Even If the Court Found a Speedy Trial Act Violation, Dismissal Without Prejudice Is Appropriate

As discussed, the Court finds that no statutory violation of the Speedy Trial Act occurred.  For this reason, dismissal of the Indictment against Dr. Maloney is not warranted, and the Court need not reach the question of whether dismissal with or without prejudice would be the more appropriate sanction.  However, for the benefit of the parties (and in the event there is appellate review of the Court's ruling), the Court finds, alternatively, that if a violation did occur, the proper

---

3161(h)(7)(A).  See Raymond, 2023 WL 2043147, at *3 (speedy trial clock tolled by court *sua sponte* given unusual and complex nature of prosecution and finding that statutory time limits were "unreasonable to expect adequate preparation for pretrial proceedings [or] for the trial itself") (citations and internal quotation marks omitted). Dr. Maloney's claim that the Magistrate Judge attempted to exclude periods of delay "retroactively" is not accurate.

remedy in this case would be dismissal without prejudice.  It explains its reasoning below.

"In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).  "A step-by-step analysis of each factor is necessary."  United States v. Palmore, 2023 WL 205202, at *2 (M.D. Ga. Jan. 17, 2023) (citation omitted).

The first factor—the seriousness of the offense—clearly weighs in favor of the Government.  In his initial Motion to Dismiss, Dr. Maloney does not really contest this factor, noting that "[t]he offenses charged in the Indictment are serious, alleging the charging of more than $250,000 worth of personal expenses on a Georgia Tech purchasing card, and approximately $696,000 in alleged fraudulent consulting fees."  [Dkt. 169 – Mot. to Dismiss, at 7-8].  He later attempts to backtrack on that concession, "disput[ing] that the alleged offenses are serious enough that the public allegedly possesses an interest in his prosecution," at least as compared to the prosecutions of large-scale drug smugglers.  [Dkt. 173 – Reply Br., at 12].  That argument is not convincing.  Dr. Maloney is charged with

perpetrating 15 counts of fraud on a government agency that is tasked with the responsibility of enhancing the country's national security.  He faces up to 20 years in prison on each count.  By any objective measure, the crimes Dr. Maloney is charged with committing are serious.  See United States v. Hunter, 319 F. App'x. 758, 760-61 (11th Cir. 2008) (affirming dismissal without prejudice where defendants were charged with 25 counts of fraud).

"The second factor looks to whether the Government had a legitimate reason for failing to bring Defendant to trial," focusing "on the culpability of the delay-producing conduct."  Palmore, 2023 WL 205202, at *3 (citation and quotations omitted).  "[T]he burden is on the prosecution to explain the cause of the delay." Id. (citation omitted).  "The Government must demonstrate some affirmative justification to warrant dismissal without prejudice."  Id. (citation and quotations omitted).  Here, the Government explains that the delay is primarily attributable to Dr. Maloney's assertion—through the filing of his CIPA § 5(a) Notices—that he needed to introduce classified information into the case, his appeals of the Magistrate Judge's rulings on the admissibility of that information, and his claim that he needed to call current and former CIA employees and contractors as witnesses at trial.  [Dkt. 170 – Opp. Br., at 12].  Moreover, courts have consistently held that CIPA-related delays were "largely inevitable given the unusual and

complex nature of cases that implicate national security interests." Warsame, 2007 WL 748281, at *5.  The Court agrees with the Government and concludes that there is no evidence that the Government intentionally delayed bringing Dr. Maloney to trial.

Finally, the Court considers the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice.  This factor "tends to be a neutral factor because a defendant can always argue that the minimal sanction of dismissal without prejudice takes the teeth out of the Act's requirements while the government can argue that reprosecution furthers the public's interest in bringing criminals to trial." Palmore, 2023 WL 205202, at *4 (citation omitted).  Under this factor, the Court can "consider the length of the delay, the prejudice suffered by the Defendant due to the Act's violation, and whether the delay caused by the Government was intentional." Id. (citations omitted).

Dr. Maloney contends that he will be prejudiced by any re-prosecution of the charges against him because two witnesses have since died and two more may be mentally impaired or seriously ill.  [Dkt. 169 – Mot. to Dismiss, at 3-4, 8-9; Dkt. 169-1 – Lake Aff., at ¶¶ 4-7].  Dr. Maloney does not identify the two witnesses

who may be mentally impaired or ill, so the Court cannot assess their relevance to this case and whether or not their absence would impair Dr. Maloney's defense.

The other two witnesses that Dr. Maloney identified fare no better. First, Dr. Maloney notes that the grandmother of one of his alleged co-conspirators apparently passed away in November 2019. [Dkt. 169-1 – Lake Aff., at ¶ 5]. But Dr. Maloney does not explain what testimony she would have offered, much less how that testimony would have helped his defense. He simply claims that she "was the property manager for the real property referenced in the Indictment." [Id.]. Without more, that statement falls far short of the level needed to show how her absence would prejudice Dr. Maloney's defense.

Similarly, Dr. Maloney states that his former boss, John Meadors, died in October 2020, a loss that impairs his ability to defend himself because Mr. Meadors "would have testified that Dr. Maloney . . . [was] authorized to do consulting by the Georgia Tech Research Institute for Spectra Research, Inc., and others." [Id. at ¶ 6; Dkt. 173 – Reply Br., at 13]. The Government calls Dr. Maloney's assertion about Mr. Meadors' presumed testimony into question, stating that it is "speculative and conclusory, at best." [Dkt. 174 – Surreply, at 17]. Moreover, the Government makes clear that Mr. Meadors' testimony likely would have hurt Dr. Maloney's defense, not helped it. [Id.]. Indeed, Mr. Meadors

apparently told the FBI that Dr. Maloney had "no moral or ethical conscience[,] . . .  [was] obsessed with being wealthy[, and] spen[t] a lot of time trying to figure out how to game the system for his own gain." [Id.].  That does not sound like the testimony of someone that Dr. Maloney would have wanted to testify in his defense, and Dr. Maloney did not seek leave to counter that statement. Accordingly, Dr. Maloney has not shown that, as a result of the delay in his case, he has suffered prejudice, and this factor does not favor him.

The Court found that a Speedy Trial Act violation did not occur in this case. However, even if it did, weighing the statutory factors and the parties' arguments, the Court would find that the proper remedy would be dismissal without prejudice.

## II.    Sixth Amendment

The fact that the calculations of the Speedy Trial Act do not warrant dismissal is not the end of the Court's analysis.  The Sixth Amendment more broadly guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ."  U.S. Const. Amend. VI.

Compared to the strict mathematical analysis often required under the Speedy Trial Act, the courts employ a more subjective balancing test to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated. The Supreme Court has identified four factors to balance: (1) the length of the

delay; (2) the reasons for the delay; (3) the defendant's timely assertion of his speedy trial right; and (4) any actual prejudice suffered by the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972) (citations omitted).  "The first factor, length of the delay, serves a triggering function: it must first be satisfied for the court to analyze the other factors."  United States v. Oliva, 909 F.3d 1292, 1298 (11th Cir. 2018) (citations omitted).  If it is satisfied and the court considers the other factors, "the last factor (actual prejudice) is often considered to be the most important."  United States v. Battle, 2022 WL 17812842, at *4 (N.D. Ga. Apr. 19, 2022).  The Eleventh Circuit has stated that "a defendant generally must show actual prejudice unless the first three factors all weigh heavily against the government."  United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003) (citation, punctuation, and quotations omitted).  The defendant bears a "heavy burden" to show that dismissal is appropriate.  Battle, 2022 WL 17812842, at *4 (citing United States v. Foxman, 87 F.3d 1220, 1222 (11th Cir. 1996)).

"As to the first factor—the length of the delay—any delay that exceeds one year is presumptively unreasonable."  Id. (citation omitted).  "The pertinent time period for determining the delay is the period between the date of the indictment and the trial date."  United States v. Knight, 2006 WL 8440547, at *2 (N.D. Ga. Nov. 21, 2006) (citations omitted).  Here, Dr. Maloney was indicted in June 2016,

and trial is calendared for May 2023, amounting to a delay of nearly seven years. The length of the delay here is thus presumptively unreasonable, and since this factor is satisfied, the Court will turn to the other factors.

The second Barker factor—the reason for delay—does not weigh in favor of a speedy trial violation (and in fact arguably tilts in favor of the Government). This factor "is the flag all litigants seek to capture." United States v. Kuciapinski, 2022 WL 3081928, at *20 (D. Colo. Aug. 3, 2022) (citation and quotations omitted). "In evaluating this factor, the Court must assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." Id. (citation and quotations omitted). "The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay." Id. (citations and quotations omitted). "Continuances and other motions filed by the defendant do not weigh against the government." Id. (citations and quotations omitted). Overall, though, "pretrial delay is often both inevitable and wholly justifiable, such as when the government needs time to collect witnesses against the accused and to oppose his pretrial motions." United States v. Jumaev, 20 F.4th 518, 534 (10th Cir. 2021) (citation, punctuation, and quotations omitted).

As the Court has mentioned, the delay in this case was principally attributable to the filing of Dr. Maloney's CIPA § 5(a) Notice. Indeed, Dr.

Maloney filed his first CIPA § 5(a) Notice on September 12, 2016 [Dkt. 22], just over two months after he was indicted.  He then supplemented his CIPA § 5(a) Notice twice more, on April 13, 2017 [Dkt. 39] and July 14, 2017 [Dkt. 45].  The filing of these CIPA § 5(a) notices unsurprisingly initiated a lengthy briefing and review process which took years to resolve.  See Warsame, 2007 WL 748281, at *5 (explaining how CIPA-related delays were "largely inevitable given the unusual and complex nature of cases that implicate national security interests") (citation omitted).  In addition, both parties requested multiple continuances and acquiesced to the continuances sought by the other party.  And once the Magistrate Judge was finally able to rule on the relevance and admissibility of the classified information at issue, Dr. Maloney promptly appealed the majority of that Order.  His appeals of the Magistrate Judge's Order were then not resolved by this Court until August 2022.[7]

---

[7] The Court acknowledges that at least part of the delay between June 2019 and August 2022 could be reasonably attributable to the Court since the parties' CIPA-related filings were complete and ready to be ruled on by the Court.  However, a few factors make this case unique and minimize any such fault on the Court's behalf.  First, the motions at issue centered around the relevance and admissibility of classified information, which required the Court and its staff to adhere to strict security precautions when reviewing the material and preparing any orders.  Second, beginning in March 2020, the COVID-19 pandemic significantly interrupted daily life, limiting access to the Court and the classified material and inhibiting court staff's ability to work collaboratively.  Third, and finally, the case was reassigned in November 2021, requiring staff for the newly-assigned judge to undergo a lengthy security clearance process before they could work on the case.

The Court of course recognizes that Dr. Maloney had a right to file his CIPA § 5(a) Notices and appeal any parts of the Magistrate Judge's Order with which he disagreed, and it takes no issue with the fact that he chose to exercise that right. However, "[w]hen a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim." United States v. Young, 657 F.3d 408, 415 (6th Cir. 2011) (citation omitted).  The Court finds that the Government did not cause the delay in this case, and in fact acted with reasonable diligence in working through the issues initiated by the filing of Dr. Maloney's CIPA § 5(a) Notices.  Accordingly, the second factor does not weigh against the Government.

The third factor—the defendant's timely assertion of his Speedy Trial Act rights—weighs strongly in the Government's favor.  Dr. Maloney did not assert his right to a speedy trial until March 2023, a fact that he admits in both his Motion and Reply.  [Dkt. 169 – Mot. to Dismiss, at 7 ("Dr. Maloney also acknowledges that he has not previously asserted his constitutional right to a speedy trial in this action."); Dkt. 173 – Reply Br., at 12 ("Dr. Maloney has acknowledged that he did not assert his right to a speedy trial prior to the filing of his Motion to Dismiss.")].  That means that the case against him proceeded for nearly seven years before he raised any concerns.  In addition, as the Court has noted, much of the delay was caused by Dr. Maloney's filing of his twice-supplemented CIPA § 5(a) Notice and

the lengthy review and briefing process that it triggered.  The Court again acknowledges that Dr. Maloney had a right to file his CIPA § 5(a) Notices.  But it will not ignore the fact that that decision delayed the trial in this case for years, and during that time, Dr. Maloney never once took issue with that delay.  Accordingly, the Court finds that factor three weighs strongly in the Government's favor.

As for factor four—actual prejudice to the defendant—the courts generally look to whether a defendant has shown harms such as "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) possibility that the accused's defense will be impaired."  Dunn, 345 F.3d at 1296 (citation and quotations omitted).  "[T]he most important of these potential harms is the third one."  Battle, 2022 WL 17812842, at *5 (citation omitted).  Dr. Maloney has not been incarcerated during the pendency of his case, and he has not asserted that he has suffered from any particular anxiety or concern as a result of the lengthy delay.  And as the Court has already concluded, Dr. Maloney's contention that the delay has impaired his defense and caused him to suffer actual prejudice because two witnesses have since died and two more may be mentally impaired or seriously ill is without merit.

Dr. Maloney has not met his heavy burden to show that dismissal of his indictment is appropriate.  The Court finds that the delay in bringing him to trial did not violate his Sixth Amendment right to a speedy trial.

## CONCLUSION

For the foregoing reasons, the Court concludes that there is no violation of the Speedy Trial Act and no constitutional violation of Dr. Maloney's Sixth Amendment right to a speedy trial.

It is **ORDERED** that Defendant James G. Maloney's Motion to Dismiss the Indictment Pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* [Dkt. 169] is **DENIED**.


**SO ORDERED** this 30th day of March, 2023.

_____
**RICHARD W. STORY**
United States District Judge