IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>JAMES G. MALONEY | CRIMINAL ACTION NUMBER<br>1:16-cr-237-RWS-JSA |

**Government's Motion in Limine**

The United States of America hereby files its Motion in Limine to exclude inadmissible and irrelevant evidence at trial.

**Introduction**

Defendant James G. Maloney is charged with one count of conspiracy to commit mail fraud and wire fraud, 11 counts of mail fraud, and three counts of wire fraud. (Doc. 1). His trial is scheduled for May 22, 2023.

By this motion, the United States moves to preclude Maloney from presenting the following types of inadmissible and irrelevant evidence: (1) the "other people did it too" defense; (2) the penalties associated with the charged offenses; (3) evidence of Maloney's general good character and specific instances of good conduct; (4) evidence concerning the Government's charging decisions; (5) evidence concerning discovery disputes; (6) evidence intended to shift blame to the victims; and (7) cross-examining or seeking to impeach a witness with an investigative report that the witness has not signed or otherwise adopted by the witness.

## Analysis

The Constitution provides criminal defendants with the general right to present evidence and call witnesses in their own favor. *See United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004); *see also* U.S. CONST. amends. V, VI. However, such rights are not absolute. *See Hurn*, 368 F.3d at 1365-66. Indeed, it "is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Anderson*, 872 F.2d 1508, 1519 (11th Cir. 1989). Accordingly, defendants are only constitutionally entitled to present evidence that is relevant to an element of the charged offense or to an affirmative defense. *See Hurn*, 368 F.3d at 1365–66; *United States v. Masferrer*, 514 F.3d 1158, 1161 (11th Cir. 2008).

Evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401; *see* FED. R. EVID. 402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).

The purpose of a motion in limine is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Such motions allow "the Court to rule in advance of trial on the relevance of certain forecasted evidence . . . without lengthy argument at, or interruption of, the trial." *Palmieri v. Demaria*, 88 F.3d 136, 141 (2d Cir. 1996). "The

prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "An in limine ruling, made in a criminal case, serves to ensure that the jury will hear only that evidence which the district judge properly deems admissible." U*nited States v. Talley*, 194 F.3d 758, 763 (6th Cir. 1999). "The district court has wide discretion in determining the relevance of evidence produced at trial." *United States v. Roland*, No. 1:14-CR-291-SCJ, 2016 WL 11628078, at *1 (N.D. Ga. June 3, 2016) (quoting *Boyd v. Ala. Dep't. of Corr.*, 296 F. App'x 907, 908 (11th Cir. 2008)).

  **1.** **The "other people did it too" defense**

  The Government anticipates that Maloney may seek to offer evidence, elicit testimony, or make arguments and accusations that some of the Government's witnesses committed fraud but were not criminally charged. To the extent that such testimony or evidence is predicated upon a good-faith belief that such witness has committed a felony offense, it may be relevant to impeach and explore such witness's credibility or bias. But to the extent that such testimony or evidence is aimed at improper jury nullification, such as the suggestion that Maloney's misconduct should be excused because others were involved or that it is unfair for Maloney to have been charged when others were not, it should be excluded as irrelevant pursuant to Federal Rule of Evidence 403. *See, e.g., United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007) (affirming exclusion of evidence to support "others did it too" defense, reasoning that

"evidence of fraudulent acts by other employees including policy making executives, would have no tendency to show that the defendants' acts were innocent."); *see also United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995) ("The selective prosecution defense is an issue for the court to decide, not an issue for the jury."); *United States v. Hill*, 643 F.3d 807, 863 (11th Cir. 2011) ("Even if we assume that Wilson is every bit as guilty or innocent as Brown, the government's decision not to prosecute him does not entitle her to a judgment of acquittal. . . . . [T]he law accommodates imperfection and is home to the idea that it is better to have some justice than none.").

Federal courts have universally excluded evidence and arguments that encourage jury nullification. *See United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("[Defendant's] jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("categorically reject[ing] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2d Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Demarais*, 938 F.2d 347, 350 (1st Cir. 1991) (holding that it is "improper to urge the jury to nullify applicable law"); *United*

*States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983) ("[F]ederal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed.").

In that regard, the Eleventh Circuit stated that:

> A jury has no more "*right*" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (citing *United States v. Washington,* 705 F.2d 489, 494 (D.C. Cir. 1983)); *see* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases), Basic Instruction No. 2.1 (2010) ("You must follow the law as I explain it—even if you do not agree with the law.").

Therefore, "defense counsel may not argue jury nullification during closing argument." *Trujillo*, 714 F.2d at 105-06; *Muentes*, 316 F. App'x at 926 ("[D]efense counsel may not raise arguments that would encourage jury nullification."); *United States v. Hall*, 188 F. App'x 922, 925 (11th Cir. 2006) ("[A] criminal defendant is not entitled to either an instruction or an argument for jury nullification."); *see United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (finding that jury nullification is not to be sanctioned by instructions, but is to be viewed as an aberration under our system).

Accordingly, the Court should carefully limit testimony, cross-examination, statements of counsel, and arguments to exclude any suggestion

that the prosecution of Maloney is selective, unfair, or that he should be acquitted because "others did it too" and were not charged.

### 2. Penalty Evidence

Second, the United States requests that Maloney be prohibited from attempting to introduce evidence or arguments about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well-settled that arguments or evidence regarding punishment are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[A] jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). Indeed, the Eleventh Circuit has unequivocally stated that the "question of punishment should never be considered by the jury in any way in deciding the case." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *accord* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases), Basic Instruction No. 10.2 (2010) ("You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide.").

This analysis applies equally to the collateral penalties associated with a felony conviction—such as being prohibited from certain types of employment, losing the rights to possess firearms and vote, and any family or business-related hardships caused by a federal conviction. *See United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment."); *United States v. Thigpen*, 4 F.3d 1573, 1579 (11th Cir. 1993) ("We . . . hold that the general rule against informing jurors of the consequences of a verdict governs such cases."); *United States v. Del Rosario*, No. 12-CR-81, 2012 WL 2354245, at *1 (S.D.N.Y. June 14, 2012) (excluding evidence related to immigration consequences); *United States v. Johnson*, No. 08-CR-466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) (precluding argument or evidence about the "hardship" defendants' families would face if the defendants were convicted); *see generally Richardson v. Ramirez*, 418 U.S. 24, 54–56 (1974) (affirming power of the states to deny the right to vote because of participation in a crime under the Fourteenth Amendment); 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person . . . who has been convicted [of a felony to] possess . . . any firearm or ammunition. . . .").

And the rationale for excluding penalty evidence is plain—the penalties associated with a conviction are not probative of guilt or innocence. *See Rogers*, 422 U.S. at 40 ("[T]he jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed."). Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to

compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See McDonald*, 935 F.2d at 1222; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." (quoting Advisory Committee's Notes on FED. R. EVID. 403)).

As a result, the United States moves to preclude Maloney from arguing or introducing evidence regarding the potential penalties he faces if convicted, including: (a) the maximum penalties associated with the charged offenses; (b) that Maloney could be sentenced to prison; (c) that Maloney may face adverse employment consequences, including being prohibited from obtaining government contracts; (d) that Maloney will no longer be able to vote or possess a firearm; and (e) that a conviction may cause his family hardship. *See Rogers*, 422 U.S. at 40.

### 3.     Good Character Evidence

Third, the United States moves to exclude all evidence of Maloney's general good character and evidence of specific instances of good conduct.

Under the Federal Rules of Evidence, a defendant may present character evidence via reputation or opinion testimony regarding lawfulness and often regarding truthfulness—and the prosecution can rebut the same. FED. R. EVID. 405(a); *United States v. Reed*, 700 F.2d 638, 645 (11th Cir. 1983); *see United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981 (Unit A)) (lawfulness is a pertinent trait in

all criminal prosecutions).[1] Conversely, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." FED. R. EVID. 404(a). Accordingly, when character is not an essential element of the offense, character evidence may only be presented through "testimony as to reputation or by testimony in the form of an opinion." FED. R. EVID. 405(a); *accord United States v. Solomon*, 686 F.2d 863, 874 (11th Cir. 1982).

As it follows, a defendant may not present evidence that he possesses a generally good character. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly excluded proffered testimony "to portray [defendant as having] a good character"); *United States v. Cochran*, 4:14-CR-022-HLM, Doc. 44 at 13 (N.D. Ga. Nov. 17, 2014) ("preclud[ing the] Defendant from presenting evidence of his general good character"); *cf. Hewitt*, 634 F.2d at 280 (prevailing view is that Rule 404(a) precludes a defendant from offering reputation or opinion testimony regarding his "general good character").

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *See United States v. Ellisor*, 522 F.3d 1255, 1270–71 (11th Cir. 2008) ("[S]pecific acts of good character were inadmissible under [the] Rules"); *see also United States v. Marrero*, 904 F.2d 251, 259-60 (5th Cir.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.

1990) (court properly excluded evidence that defendant did not overcharge in certain instances because such evidence is improper under Rule 405 as specific acts of good character); *see also United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("[T]estimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)."); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught."); *United States v. Morgan*, 2000 WL 1622748, at *10 (E.D. Pa. Oct. 20, 2000) (excluding evidence of lack of criminal history because: (1) "whether the defendant has broken the law before has virtually no bearing on whether he did so this time," (2) "such evidence may mislead the jury," and (3) the evidence may "improperly cause the jury to be sympathetic").

Similarly, it is well-established that "[e]vidence of good conduct is not admissible to negate criminal intent." *Camejo*, 929 F.2d at 613 (citing *Michelson v. United States*, 335 U.S. 469, 477 (1948)) (drug trafficking defendant's refusal to work in one narcotics business was irrelevant and inadmissible prior "good act"). The Eleventh Circuit has consistently affirmed the exclusion of defendants' prior good conduct evidence when offered to support a defense of lack of criminal intent. *See, e.g.*, *Ellisor*, 522 F.3d at 1270 (concluding that purported legitimate business activities were inadmissible in a fraud case); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.") (quoting *United*

*States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978)); *see also United States v. Marley*, 621 F. App'x 936, 941 (11th Cir. 2015) (finding that defendant's attempt to justify his firm's fraudulent invoices by asserting that he had also performed "unbilled" work was inadmissible to negate his fraudulent intent); *United States v. Ly*, 543 F. App'x 944, 946 (11th Cir. 2013) (finding evidence that doctor had "properly" treated certain patients was inadmissible to demonstrate his state of mind in improperly dispensing controlled substances).

Judged by these principles, Maloney should not be permitted to introduce evidence that he possessed a generally "good" character, such as that he is any of the following:

    a.    A good husband and father who provides for his family. *See United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a good family man because it was not a trait relevant to the offense); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (finding that district court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy); *cf. Solomon*, 686 F.2d at 873-74 (excluding evidence of defendant's military service and number of children as an improper attempt to interject specific instances of conduct);

    b.    Religious. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Goxcon Chagal*, 885 F. Supp. 2d 1118, 1158-59 (D.N.M. 2012) ("[R]ule

610[ ] is . . . designed to avoid a jury drawing improper inferences about a witness' character or credibility in light of the witness' religious beliefs. . . ."); *see also* FED. R. EVID. 610;

c. A community participant. *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (evidence of "bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010-11 (D. Md. 1985) ("patriotism" not relevant trait to charge); and

d. A kind, moral, or hard-working person. *See Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a kind man).

Similarly, Maloney should not be permitted to put on evidence of specific acts of good conduct—such as incidents of (a) of public service, charitable work, or church work/activities; (b) honesty; (c) lack of prior bad acts; or (d) any other specific instances of "good" conduct. *Ellisor*, 522 F.3d at 1270; *see, e.g.*, *Camejo*, 929 F.2d at 613 ("[The] proffered testimony was merely an attempt to portray [the defendant] as a good character through the use of prior 'good acts.'"); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) (stating that, "although [defendant] was entitled to present character evidence, she could not do so by offering evidence of specific instances of his conduct"); *United States v. Washington*, 106 F.3d 983, 999–1000 (D.C. Cir. 1997) (holding that defendant police officer's commendations were properly excluded because they were neither "pertinent" nor probative of an essential element); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his

innocence, however, through proof of the absence of criminal acts on specific occasions."); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (finding that it was inappropriate in bribery case to permit testimony that defendant honestly performed his duties in specific instances); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("A defendant cannot establish his innocence of crime by showing that he did not commit similar crimes on other occasions."); *see also* FED. R. EVID. 404(a); *cf. Barry*, 814 F.2d at 1404 (finding that "letters of commendation were hearsay").

### 4. Charging Decisions

Fourth, the United States moves to exclude all evidence and arguments regarding its charging decisions.

The Eleventh Circuit has recognized that the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Cespedes*, 151 F.3d 1329, 1332 (11th Cir 1998) (internal quotations omitted); *accord United States v. Armstrong*, 517 U.S. 456, 464 (1996). United States Attorneys "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take care that the laws be faithfully executed." *Cespedes*, 151 F.3d at 1332 (internal quotations omitted); *accord* U.S. CONST. art. II, § 3; *see* 28 U.S.C. §§ 516, 547.

As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury,

generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *accord Cespedes*, 151 F.3d at 1332; *see also United States v. Batchelder*, 442 U.S. 114, 124-25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").

The claim that others "could have been charged but were not" is not a factual defense that bears upon whether the defendant is guilty of the crimes charged by the grand jury. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). As it follows, evidence that some other individual is currently uncharged has no probative value to the issues at trial and serves only to confuse or mislead the jury. *See* FED R. EVID. 402 and 403.

Judged under these legal principles, Maloney should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States. To the extent that Maloney seeks to present evidence or arguments that other individuals have not been charged for related conduct or that it is unfair that Maloney has been charged, while other individuals involved in related criminal conduct were not charged, such evidence is irrelevant and only serves to focus the jury's attention on matters unrelated to Maloney's guilt or innocence.

**5.    Discovery Issues**

Fifth, to the extent that any discovery-related issues arise at trial, the United States requests that those matters be addressed outside the presence of the jury.

Discovery-related comments are irrelevant to the jury's function and may create the impression that one party has suppressed information to seek an unfair tactical advantage at trial. *See United States v. Dochee*, 08-CR-108–4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (excluding "commentary on discovery matters by either party in the presence of the jury [because it] could create the impression that the opposing party is withholding information"). Furthermore, the parties can address any discovery-related issues outside the presence of the jury with no resulting prejudice. *See United States v. Cochran*, 4:13-CR-022-HLM-WEJ, 2014 WL 12695800, at *4 (N.D. Ga. Nov. 17, 2014) ("The Court will require the Parties to take up any comments or issues relating to discovery outside the presence of the jury."); *United States v. Gray*, 2:07-CR-166, 2010 WL 1258169, at *3 (N.D. Ind. Mar. 26, 2010) (granting "motion to preclude requests of discovery from witnesses or opposing counsel, moving the court for such discovery or otherwise commenting on discovery matters in the presence of the jury. Any necessary requests for or comments about discovery can be made outside of the jury's presence."); *see also Thompson v. Glenmede Trust Co.*, No. 92-5233, 1996 WL 529693, at *2 (E.D. Pa. Sept. 17, 1996) ("[T]he Court will not permit either party to refer to the discovery process in the presence of the jury.").

As a result, the United States requests that the Court require that all comments relating to discovery issues be made outside the presence of the jury.

### 6. Blaming the victims

Sixth, "defendants in fraud cases may not adopt the 'blame the victim' theme in attacking the government's case." *United States v. June*, No. 10-CR-30021-MAP, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012). Such evidence is irrelevant and should be excluded. *United States v. Nicoletti*, No. 15-20382, 2017 WL 1382290, at *2 (E.D. Mich. Apr. 18, 2017) (granting government's motion in limine to preclude any evidence and argument by defendant that the victim bank "did not care whether representations in loan applications were accurate so long as the representations qualified the applicants for the loans that they were seeking"); *see also United States v. Leadbeater*, No. CRIM.A. 13-121-1 JBS, 2015 WL 567025, at *9 (D.N.J. Feb. 10, 2015) (holding that "Defendants may not argue in opening statements, or elicit testimony on direct examination, about the lack of diligence on the part of the victim lenders . . . or suggest that the banks or mortgage companies were not sufficiently careful or prudent in protecting themselves from fraud"); *see also United States v. Higgins*, No. 3:18-CR-186, 2022 WL 36511, at *6 (S.D. Ohio Jan. 4, 2022) (holding that the "victim's negligence is not a defense to mail fraud and does not negate any of the elements of the mail fraud statute"). "The laws protecting against fraud are most needed to protect the careless and the naive from lupine predators, and they are designed for that purpose." *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980).

### 7. Impeachment via Investigative Reports

Seventh, the United States moves to preclude Maloney from cross-examining or seeking to impeach a witness with an investigative report that the witness has not signed or otherwise adopted.[2]

Under the Federal Rules of Evidence, a witness may only be cross-examined and, where appropriate, impeached with his or her own prior statements. *See* FED. R. EVID. 613. Indeed, the Supreme Court has long recognized that it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959). After all, in preparing investigative summaries, law enforcement officers necessarily exercise discretion in drafting reports. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (recognizing that FBI 302s "have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds*, *United States v. Booker*, 543 U.S. 222 (2005); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.").

---

[2] The Government's motion does not seek to proscribe or limit the use of investigative reports to refresh the recollection of a witness.

Investigative reports are not the "statements" of the interviewed individuals.[3] *See United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("[FBI 302s] are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness."). As a result, courts have routinely held that these types of law enforcement reports cannot be used to cross-examine or impeach interviewed parties if they are called as witnesses. *See, e.g.*, *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (same); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (affirming refusal to admit FBI interview report as a prior consistent statement because it was "not attributable to" the witness); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (holding

---

[3] Consequently, investigative reports are also not discoverable under the Jencks Act, although the United States has already and will continue to produce such reports. *See United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that, absent evidence of adoption, FBI 302s "are not discoverable under . . . the Jencks Act"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) (affirming ruling that "FBI 302 Report was not a Jencks Act statement"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) (holding that FBI reports "are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary"); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) (stating that "302s are not substantially verbatim recitals . . . and recorded contemporaneously").

that defense could not use FBI reports to cross-examine witnesses because "reports did not come within the rule authorizing the use of prior statements"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (same); *United States v. Rizza*, 2:14-CR-002-SPC, 2014 WL 3747624, at *2 (M.D. Fla. July 29, 2014) ("Defendants are precluded from depicting such 302s and summary reports as witness statements during the trial.").

As a result, the United States seeks to preclude Maloney: (a) from cross-examining or seeking to impeach witnesses with non-verbatim reports that have not been signed or adopted by the witness; and (b) from quoting, publishing, or suggesting to the jury that the contents of an investigative report is a statement of the witness.

## Conclusion

WHEREFORE, the United States requests that its Motion be granted.

Respectfully submitted,

Ryan K. Buchanan
*United States Attorney*

/s/ John Russell Phillips
*Assistant United States Attorney*
Georgia Bar No. 576335

/s/ Stephen H. McClain
*Assistant United States Attorney*
Georgia Bar No. 143186

600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000

**Certificate of Service**

I hereby certify that, on May 2, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

/s/ John Russell Phillips
*Assistant United States Attorney*
Georgia Bar No. 576335

600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000