IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| v. | 1:16-cr-237-RWS-JSA |
| JAMES G. MALONEY, et al., | |
| Defendants. | |

## ORDER

This case comes before the Court on Defendant James G. Maloney's Motion in Limine [Dkt. 197]. After reviewing the parties' briefs and conducting a pretrial hearing attended by Defendant and counsel for the parties, the Court enters the following Order.

### I.   Legal Standard

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" Gold Cross EMS, Inc. v. Children's Hosp. of Ala., 309 F.R.D. 699, 700 (S.D. Ga. 2015) (quoting Luce v. United States, 469 U.S. 38, 40 n.2, 105 S.Ct. 460 (1984)); see also United States v. Roland, 2016 WL 11628077, at *1 (N.D. Ga. June 1, 2016) ("A motion in limine is a pretrial motion by which a litigant seeks to exclude

inadmissible or prejudicial evidence before it is actually offered at trial.") (citation omitted).  It is "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings."  <u>Roland</u>, 2016 WL 11628077, at *1 (citation and quotations omitted).  "The district court has wide discretion in determining the relevance of evidence produced at trial." <u>Id.</u> (citations and quotations omitted).

## II.     Dr. Maloney's Motion in Limine [Dkt. 197]

Dr. Maloney's motion in limine seeks to exclude the alleged audio recordings taken by James Fraley on or about July 7, 2013, and the alleged transcripts of the recordings.  He contends that the recordings and transcripts should be excluded for a number of reasons, including because: the Government cannot provide clear and convincing evidence of their authenticity to establish that it is entitled to admit them in this case; no evidence exists concerning the alleged quality or fidelity of the recording equipment; the Government cannot establish that there are no material deletions, additions, or alterations in the relevant portions of the recordings; and the recordings would be unduly prejudicial, misleading, and confusing.

"Admitting sound recordings into evidence at a criminal trial presents discrete dangers to which courts have been justly sensitive." <u>United States v.</u>

Biggins, 551 F.2d 64, 66 (5th Cir. 1977) (citation omitted).  Given the concerns, in order to introduce a recording at trial, the Eleventh Circuit has concluded that "the government must establish that it is an accurate reproduction of relevant sounds previously audited by a witness."  United States v. Zada, 706 F. App'x. 500, 506 (11th Cir. 2017) (citing United States v. Reeves, 742 F.3d 487, 501 (11th Cir. 2014)).  To do so, "the government must prove (1) the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant portions of the recording; and (4) the identification of the relevant speakers."  Id.  (citation and quotations omitted).

That said, trial judges have broad discretion in determining whether to allow recordings to be played for the jury at trial.  Id. (citation omitted).  The standards outlined above "serve the paramount purpose of ensuring the accuracy of the recording," Biggins, 551 F.2d at 66-67, but they are not absolute.  Indeed, the Eleventh Circuit has acknowledged that the requirements "need not all be satisfied, if there is independent evidence of the accuracy of the tape recording." Zada, 706 F. App'x. at 506 (citation omitted); see also Biggins, 551 F.2d at 67 ("If the trial judge independently determines that the recording accurately reproduces the auditory evidence, however, his discretion to admit the evidence is not to be sacrificed to a formalistic adherence to the standard [the Eleventh Circuit]

3

establish[ed]. If there is independent evidence of the accuracy of the tape recordings admitted at trial, [the Eleventh Circuit] shall be extremely reluctant to disturb the trial court's decision."). This court has observed that one such way to prove a recording's accuracy and authenticity "would be through the testimony of [a witness], who could say he was a party to the conversations and the recordings accurately reflect those conversations." Unites States v. Van Buren, 2017 WL 11551849, at *2 (N.D. Ga. Oct. 11, 2017).[1]

Dr. Maloney does not challenge the Government's ability to prove the identification of the relevant speakers. However, he does challenge the other three factors—the competency of the operator, the fidelity of the recording equipment, and the absence of material deletions, additions, or alterations in the relevant portions of the recordings—so the Court will take each in turn. It will then address Dr. Maloney's additional argument for exclusion under Federal Rule of Evidence 403 and, if necessary, the admissibility of the transcripts. At the outset, though, the

---

[1] Dr. Maloney contends that the Government must put forth "clear and convincing evidence" as to the authenticity and accuracy of the recorded evidence, and he cites United States v. Wardlaw, 977 F. Supp. 11481 (N.D. Ga. 1997), in support of that position. [Dkt. 197 – Mot. in Limine, at 3, 5, 7-8]. After a review of the relevant case law, the Court is not convinced that the Eleventh Circuit has adopted such a stringent standard. Even if it had, though, the Court would find that the Government has nevertheless met that standard as applied in the cases cited by Defendant and proven the authenticity and accuracy of the recordings at issue.

Court notes that the Government has represented that Mr. Fraley (and potentially Mr. James Acree) will testify at trial and authenticate the recordings at issue. The Court's ruling below is based on that representation and is of course contingent on the Government successfully laying a foundation for the admission of the recordings at trial.

First, Dr. Maloney argues that the Government cannot show that Mr. Fraley "was a competent operator of the recording equipment—a voice memo application (app) on his cellphone," in part because the recordings contain gaps of indeterminate length and portions of the recordings are inaudible and unintelligible. [Dkt. 197 – Mot. in Limine, at 4]. "Tapes are not *per se* inadmissible because they are partially inaudible." United States v. Trent, 306 F. App'x. 482, 484 (11th Cir. 2009) (citations and quotations omitted); see also United States v. Fields, 490 F. App'x. 307, 308 (11th Cir. 2012) ("The district court has broad discretion in deciding whether to admit a recording into evidence, even one containing inaudible or unintelligible portions.") (citations omitted). To the contrary, "[t]he district court may admit into evidence a recording containing inaudible or unintelligible portions unless those portions are so substantial as to render the recording as a whole untrustworthy." Fields, 490 F. App'x. at 308

5

(citation and quotations omitted); see also Zada, 706 F. App'x. at 506 (applying same standard to recordings with gaps).

The Court has listened to the full set of recordings and finds that the inaudible or unintelligible portions and gaps are not substantial and do not render the entire recordings untrustworthy or unreliable. The audio itself is remarkably clear and understandable, such that there are only a handful of instances in approximately 90 minutes of recording that the speakers could not be fully heard and understood. In addition, any inaudible or unintelligible portions lasted no more than a few seconds each. And any pauses within or between the recordings, which Dr. Maloney refers to as gaps, seemed to occur at natural breaks in the conversations as, for example, Dr. Maloney and Mr. Fraley moved locations to check information on their computers or meet with other individuals. Dr. Maloney does not genuinely contest any of these points or identify specific examples in the recordings to show how any inaudible or unintelligible portions affected the overall trustworthiness of the recordings. Under these circumstances, the Court concludes that the Government has shown that Mr. Fraley was a competent operator of the recording equipment.

Second, Dr. Maloney argues that "no evidence exists concerning the alleged quality or fidelity of the recording equipment." [Dkt. 197 – Mot. in Limine, at 5].

6

He contends that the cell phone that Mr. Fraley used to make the recordings was just a telephone and was "not a recording instrument designed to capture and record non-electronic communications between parties," there is no evidence about the app that he used to make the recordings other than his own testimony, and neither the cell phone nor the original files are still in his or the government's possession.  [Id. at 5-6].  However, the fact that the cell phone Mr. Fraley used to make the recordings was not professional and no longer exists is not an automatic basis to exclude the recordings.  See U.S. v. Carriles, 2010 WL 4918770, at *7 (W.D. Tex. Nov. 19, 2010) (noting that the fact that recording device was "inexpensive" and "not professional grade" was "not sufficient to find recordings inauthentic") (citation omitted).  Indeed, "[t]he existence of the recordings themselves with the conversations they contain demonstrates, in the least, some evidence of the fidelity of the equipment." Id.  Moreover, the Government has represented that it intends to call Mr. Fraley as a witness, and he can testify about how he made the recordings.  Dr. Maloney is also welcome to probe the question of the fidelity of the recording equipment during cross-examination of Mr. Fraley at trial, and this issue ultimately goes to the weight that the jury gives the recordings.  However, the Court finds that the concerns about the fidelity of the

7

recording equipment are not sufficiently significant to warrant a finding of a lack of authenticity.

Third, Dr. Maloney contends that "[t]he government cannot establish that there are no material deletions, additions, or alterations in the relevant portions of the recording." [Dkt. 197 – Mot. in Limine, at 6]. Once again, the Court listened to the entire set of recordings while it simultaneously read the accompanying transcripts. The subject conversations proceeded naturally and cohesively, and the Court did not identify any spots at which it seemed like the audio may have been edited or manipulated. Nor has Dr. Maloney pointed out any such points in the discussions that alter the conversations as he remembers them. In any event, "the possibility of alterations to the tape need not be eliminated absolutely, but only as a reasonable possibility." United States v. Bright, 630 F.2d 804, 819 (5th Cir. 1980) (citation omitted). Here, there is no evidence whatsoever of alteration, and the Court will not exclude the recordings simply on the grounds that Mr. Fraley *could* have edited them or had a motive to do so.[2] As with some of the other alleged

---

[2] Dr. Maloney's suggestion that Mr. Fraley may have altered the recordings because of his "motive to conceal his unlawful conduct and to preserve his employment at Georgia Tech and . . . present what he believed were the most favorable portions of his conversations with Acree and Dr. Maloney" falls a bit flat when one actually listens to the recordings. Throughout the recordings, Mr. Fraley repeatedly speaks in a way that paints him in a particularly bad light and provides support for the allegations of impropriety against him. It is hard to believe that he

shortcomings of the recordings, Dr. Maloney may address and probe this issue during cross-examination of Mr. Fraley.

Finally, Dr. Maloney argues that the recordings should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial, misleading, and confusing. [Dkt. 197 – Mot. in Limine, at 8-9]. Specifically, he contends that the conversations in the recordings related to an audit by Georgia Tech and nothing in them is probative of the fact that the alleged conspiracy actually existed. [Id.]. The Court disagrees. Even if the conversations stemmed from or primarily discuss the Georgia Tech audit, it is incorrect to assert that nothing in the recordings relates to the criminal charges at issue here. To the contrary, the parties directly discuss their allegedly improper purchases of consumer products and how they will explain away or justify those purchases. At one point, Dr. Maloney even alludes to the ultimate defense that he presents in this case. Those discussions are clearly relevant to the charges against Dr. Maloney.[3]

---

would have taken the time to alter the audio but left his many incriminating statements in the recordings.

[3] Even though the remainder of the discussions do not directly relate to the charges in this case, that does not mean they have no relevance here. To the contrary, much of the discussions seem to focus on the alleged misappropriation or wrongful expenditure of funds, which is arguably consistent with and relevant to the charges at issue here.

9

Moreover, the probative value of these recordings is not substantially outweighed by the risk of unfair prejudice to Dr. Maloney. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Patrick, 513 F. App'x. 882, 886 (11th Cir. 2013) (citation and quotations omitted). "In criminal trials relevant evidence is inherently prejudicial and, thus, the rule permits exclusion only when unfair prejudice substantially outweighs probative value." Id. (citation and quotations omitted); see also United States v. Richardson, 518 F. App'x. 708, 711 (11th Cir. 2013) ("In recognition that all incriminating evidence is inherently prejudicial, Federal Rule of Evidence 403 excludes evidence of only scant or cumulative probative force and is not designed to permit the court to even out the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none.") (citations and quotations omitted). Here, there is no question that the recordings are prejudicial, but they are not *unfairly* prejudicial. The Court will not exclude the recordings on this basis.

Now that the Court has determined that the audio recordings are admissible, it must next turn to the admissibility of the transcript of those recordings, which the Government prepared with the assistance of Mr. Fraley and Mr. Acree, the other two participants in the conversations that are the subject of the recordings. "The

district court has discretion to provide transcripts to the jury as an aid in listening to a recording." Fields, 490 F. App'x. at 309 (citation omitted). "If a defendant is unsatisfied with a transcript's accuracy, he may produce his own version of the whole transcript or of the disputed portions." Id. (citations omitted). Here, Dr. Maloney has not pointed to specific portions of the transcript that he contends are inaccurate and has not provided his own version of any disputed portions of the transcript. Regardless, the Court reviewed the proposed transcript at the same time as it listened to the recordings and concludes that the transcript very accurately reflects the recorded conversations themselves. Accordingly, the Court finds that, during the playing of the audio recordings at trial, the Government may distribute copies of the transcript to the jury. However, the transcript will not go to the jury room along with the jury during deliberations, as the transcript itself is not substantive evidence.

Accordingly, Dr. Maloney's request to exclude the video recordings taken by Mr. Fraley and the corresponding transcripts of those recordings is denied.

## Conclusion

For the foregoing reasons, Defendant James G. Maloney's Motion in Limine [Dkt. 197] is **DENIED**. The Government is permitted to use the recordings and transcripts during trial, subject to the clarifications and restrictions outlined in this Order.

**SO ORDERED** this 16th day of May, 2023.

_____
**RICHARD W. STORY**
United States District Judge