IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES G. MALONEY | CRIMINAL ACTION NUMBER<br>1:16-cr-237-RWS-JSA |

**Government's Sentencing Memorandum**

The United States respectfully files this Sentencing Memorandum in advance of Defendant Maloney's sentencing, which is set for October 30, 2023.

"[T]he district court must determine a reasonable sentence by considering the sentencing range provided by the Guidelines and the § 3553(a) factors." *United States v. Anderson*, 1:06-CR-0358-RWS, 2008 WL 1925084, at *2 (N.D. Ga. Apr. 29, 2008) (quoting *United States v. Williams*, 472 F.3d 835, 837 (11th Cir. 2006)).

Defendant Maloney was convicted of conspiracy to commit wire fraud and mail fraud under 18 U.S.C. § 1349. The PSR sets his Total Offense Level at 27 and places him in Criminal History Category I, which results in an adjusted guideline range of 70 months to 87 months. (PSR ¶¶ 67, 71; Part D. Sentencing Options). Neither party objected to these calculations.

In the Plea Agreement, the United States agreed to recommend that Defendant Maloney be sentenced within the adjusted guideline range. (Doc. 213-1 ¶ 37). Here, the § 3553(a) factors, especially the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, call for the Court to sentence Defendant Maloney at the high end of the adjusted guideline range.

Defendant Maloney has a Ph.D. in electrical engineering. He was the Chief Scientist at the Georgia Tech Research Institute. He held a top-secret security clearance that allowed him to work on government contracts, including classified contracts for the CIA. In 2007, Defendant Maloney's supervisor reprimanded him for engaging in outside consulting activity that violated Georgia Tech's conflict-of-interest policy. He admitted that he had used Georgia Tech's facilities and equipment for his own personal gain and benefit and promised that he would never do it again. But he never stopped doing it. He engaged in multiple schemes from 2007 through 2013, including a scheme to charge frivolous personal expenses to a Georgia Tech PCard. The total loss amount attributable to him is $1,972,543.61.

He also planned and directed a cover-up. More than three years before he was indicted, Defendant Maloney met with his two co-conspirators and suggested that they get their "story straight" and try to shut down Georgia Tech's internal investigation before it exposed their fraudulent scheme. One of Defendant Maloney's co-conspirators recorded the meeting. Those recordings were provided to the FBI. Among the many incriminating statements that Defendant Maloney made during the cover-up meeting was this:

> We got to come up with some story for why we bought the crazy shit, right? So we're just gonna blanket say that we had the super-friends [Maloney's term for CIA] project, which we don't really want to go into. That's what the contract was all about, evaluating consumer electronic devices for insertion of new functionalities.

A sentence at the high end of the adjusted guideline range would be in keeping with the § 3553(a) factors. *See United States v. Johnston*, 620 F. App'x 839, 857 (11th Cir. 2015) (holding that "a 78–month sentence reflected the seriousness of the offense and helped promote respect for the law, as the scheme involved a sophisticated, extensive, and coordinated scheme to defraud the government with significant intended and actual loss").

Moreover, Defendant Maloney asserted and persisted in a baseless defense that delayed the case for approximately seven years and caused the government and the judiciary unnecessary trouble and expense. The seven-year delay

between Defendant Maloney's 2016 indictment and his 2023 guilty plea is attributable almost entirely to his alleged need to introduce classified evidence, a baseless defense that was exposed by the audio recordings.

Where, as here, "a criminal defendant threatens to reveal classified information during the course of his trial in the hope of forcing the government to drop the criminal charge against him," that is known as "graymail." *United States v. Anderson*, 872 F.2d 1508, 1514 (11th Cir. 1989). Consistent with a graymail defense, Defendant Maloney took extraordinary steps to prevent or delay this case from going to trial. He filed numerous pretrial motions and sought continuances and extensions of time. He claimed that he needed to call as defense witnesses numerous current and former CIA employees and contractors, yet none of those individuals had anything to say that would have been remotely helpful to Defendant Maloney's defense. On the contrary, those individuals would have been some of the prosecution's best witnesses. Defendant Maloney knew that all along because he had copies of the FBI-302s documenting the government's interviews of those individuals. Defendant Maloney appealed the Magistrate Judge's Order concerning the admissibility of classified information, quibbling over minor details and further delaying the case unnecessarily. And finally, on the eve of trial, he filed a meritless Motion in Limine to exclude the

audio recordings and transcripts. In denying that Motion, the Court remarked that Defendant Maloney can be heard on the recordings "allud[ing] to the ultimate defense that he presents in this case." (Doc. 204 at 9).

In contrast, both of Defendant Maloney's co-conspirators, James Fraley and James Acree, pleaded guilty to a pre-indictment Information approximately seven years ago. They fully accepted responsibility for their actions and assisted the FBI in its investigation. They also provided truthful information in their proffers and were prepared to testify against Defendant Maloney at trial.

In fashioning a reasonable sentence under § 3553(a), it is appropriate for the Court to consider Defendant Maloney's graymail defense. *See United States v. Hyacinth*, 366 F. App'x 132, 135 (11th Cir. 2010). In *Hyacinth*, Judge Thrash imposed a sentence near the top of the guidelines range because Hyacinth—unlike his similarly situated co-defendants—"did not cooperate with the government and refused to accept responsibility." *Id*. In addition, "Hyacinth refused to stipulate to anything at trial, including the authenticity of several business records . . . , thus resulting in a lengthy and costly trial." *Id*. In affirming Hyacinth's conviction and sentence, the Eleventh Circuit held that the district court properly considered the defendant's "denial of culpability and lack of cooperation." *Id*.

## Conclusion

For these reasons, the government respectfully requests the Court sentence Defendant Maloney at the high end of the adjusted guideline range.

                          Respectfully submitted,

                          Ryan K. Buchanan
                          *United States Attorney*

                          /s/ John Russell Phillips
                          *Assistant United States Attorney*
                          Georgia Bar Number 576335

                          /s/ Stephen H. McClain
                          *Assistant United States Attorney*
                          Georgia Bar No. 143186

600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000

## CERTIFICATE OF SERVICE

I hereby certify that, on October 24, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.

/s/John Russell Phillips
*Assistant United States Attorney*
Georgia Bar No. 576335

600 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303
(404) 581-6000